# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| SUNPOWER CORPORATION, *et al.*,[1] | ) Case No. 24-11649 (CTG) |
| Debtors. | ) (Joint Administration Requested) |
| | ) **Objection Deadline:** |
| | ) **August 21, 2024 at 4:00 p.m.** |
| | ) **Hearing Date:** |
| | ) **August 29, 2024 at 10:30 a.m.** |

**MOTION OF DEBTORS FOR ENTRY OF
AN ORDER (I) AUTHORIZING AND APPROVING THE
SALE OF TCU SOLAR LOANS AND RIC DEPOSITOR MEMBERSHIP INTERESTS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully state the following in support of this motion:

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Sale Order</u>"),[2] (a) approving the Purchase Transaction by and between Debtor SunPower Capital Services, LLC (the "<u>Seller</u>"), and GoodFinch SPV WL IV (SPWR), LLC and Solar Securitization Master Fund II, LP (each, a "<u>Purchaser,</u>" and together, the "<u>Purchasers</u>") for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335). The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

[2] Capitalized terms used in this motion that are not defined herein shall have the meanings ascribed to them in that certain term sheet attached as <u>Exhibit 1</u> to the Sale Order (the "<u>Term Sheet</u>").

RLF1 31322106v.1

(i) the TCU Solar Loans, and (ii) 100% of the limited liability company membership interests in SPWR RIC Depositor 2022-1, LLC (the "RIC Depositor Membership Interests," and together with TCU Solar Loans, the "Assets"), substantially in accordance to the terms contained in the Term Sheet; (b) authorizing and approving the Debtors to enter into the loan sale and purchase agreements attached to the Sale Order as Exhibit 2-A and Exhibit 2-B and the membership interest purchase and transfer agreement attached to the Sale Order as Exhibit 3 (together with all schedules, exhibits, and ancillary documents related thereto, as amended, modified, or supplemented from time to time, the "Purchase Agreements"); (c) authorizing the Debtors to sell each Asset to the applicable Purchaser free and clear of liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (as defined herein) and the terms set forth in the Purchase Agreements; and (d) granting related relief.

**Jurisdiction and Venue**

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28. U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 6004(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

### Proposed Sale

5.      As set forth in the *Declaration of Matthew Henry, Chief Transformation Officer of SunPower Corporation, in Support of the Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of TCU Solar Loans and RIC Depositor Membership Interests Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Henry Declaration"), in the weeks preceding these chapter 11 cases, the Debtors and the Purchasers engaged in good faith, arms'-length negotiations on a purchase transaction for the TCU Solar Loans in the ordinary course of business. As negotiations progressed, the Purchasers also expressed interest in acquiring the RIC Depositor Membership Interests as part of the overall Purchase Transaction for additional consideration as more fully described herein. The Debtors and the Purchasers engaged in good-faith, arms' length negotiations around the terms of the Purchase Transaction, the key terms of which are set forth in the Term Sheet. The Debtors and the Purchasers intend to use commercially reasonable efforts to negotiate and finalize the terms of the Purchase Agreements in the days following the date hereof and intend to file the Purchase Agreements as soon as reasonably practicable following the filing of this motion and in advance of the objection deadline with respect to this motion.

6.      The proposed Purchase Transaction, if approved, will provide the Debtors with an expedient injection of $11,867,301 of incremental liquidity. Importantly, the Debtors seek to fund the administration of these chapter 11 cases on cash collateral alone, and, consequently, believe that an infusion of over $11.8 million within approximately the first month of these chapter 11

3

cases is essential to support the costs and expenses of these chapter 11 cases for the benefit of all stakeholders and justifies the need to move quickly towards closing the proposed purchase transactions. Specifically, the Cash Consideration for the Assets is (i) $11,367,301 for the TCU Solar Loans and (ii) $500,000 for the RIC Depositor Membership Interests, for an aggregate amount of $11,867,301. As part of the purchase consideration, the Term Sheet also contemplates the termination of Debtor SunPower Corporation's guaranty of the approximately $53 million RIC Warehouse Facility (the "RIC Depositor Debt Consideration"). The Debtors believe that the purchase consideration is the best available for the Assets, and the Debtors have not received a higher or better offer for the Assets.

7.      Additionally, the Debtors, in consultation with their advisors, do not believe that the cost and delay of running an auction process for the Assets would be outweighed by any marginal increase to the sale proceeds, particularly in light of the Debtors' constrained liquidity position and the benefit to the estates the Debtors would obtain with an additional injection of $11,867,301 in the initial weeks of these chapter 11 cases. Importantly, however, the Term Sheet includes a standard "fiduciary out" provision to ensure the Debtors are free to pursue alternative value maximizing transactions, should any arise.

8.      The Debtors believe that entering into the Purchase Transaction and consummating the sale of the Assets is fair, reasonable, represents a sound exercise of the Debtors' business judgment, and is the best available option to maximize value for the Debtors and all stakeholders.

## Summary of Key Sale Terms

9. The following is a summary of the material terms of the Term Sheet:[3]

| Provision | Summary Description |
|---|---|
| **Seller** | SunPower Capital Services, LLC, a Delaware limited liability company |
| **Purchasers** | GoodFinch SPV WL IV (SPWR), LLC, a Delaware limited liability company, and Solar Securitization Master Fund II, LP, a Delaware limited partnership.<br><br>Each Purchaser will purchase 50% of the TCU Solar Loans and 50% of the RIC Depositor Membership Interests. |
| **Assets** | TCU Solar Loans: $19,592,553 outstanding principal amount of Solar Loans owned by the Seller and mutually designated by the Purchasers and the Seller.<br><br>RIC Depositor Membership Interests: 100% of the limited liability company membership interests in SPWR RIC Depositor 2022-1, LLC, a Delaware limited liability company. |
| **Proposed Purchase Price**<br><br>**Local Bankr. R. 6004-1(b)(iv)(N)** | The consideration to be paid to Seller with respect to the Purchase Transaction shall consist of:<br><br>Cash in an aggregate amount equal to $11,867,301 (the "Cash Consideration"), which will be allocated (a) $11,367,301 in the aggregate to the purchase of the TCU Solar Loans (the "TCU Loan Cash Consideration") and (b) $500,000 in the aggregate to the purchase of the RIC Depositor Membership Interests (the "RIC Depositor Cash Consideration").<br><br>$53,524,187 of outstanding principal amount of the Existing RIC Warehouse Facility that has a lien on all the assets of the Borrower, the wholly-owned subsidiary of the Depositor, which shall remain outstanding (the "RIC Depositor Debt Consideration"). |
| **Releases**<br><br>**Local Bankr. R. 6004-1(b)(iv)(C)** | To come.[4] |

---

[3] This summary is provided for the convenience of the Court and parties in interest and describes, generally, the terms contained in the Term Sheet. To the extent there is any conflict between this summary and the Term Sheet, the Term Sheet shall govern in all respects.

[4] The Debtors intend to supplement this summary of key terms at a later date.

5

| | |
|---|---|
| **Private Sale / No Competitive Bidding**<br><br>Local Bankr. R. 6004-1(b)(iv)(D) | The Assets will be sold via private sale.  There will not be an auction. |
| **Closing and Other Deadlines**<br><br>Local Bankr. R. 6004-1(b)(iv)(E) | As soon as reasonably practicable following entry of the Proposed Order. |
| **Good Faith Deposit**<br><br>Local Bankr. R. 6004-1(b)(iv)(F) | None. |
| **Tax Exemption**<br><br>Local Bankr. R. 6004-1(b)(iv)(I) | To come. |
| **Requested Findings as to Successor Liabilities**<br><br>Sale Order ¶ F<br><br>Local Bankr. R. 6004-1(b)(iv)(L) | Neither the Purchasers nor any of their affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliates thereof) or any Debtor's estate, except to the extent expressly provided in the Purchase Agreements. |
| **Sale Free and Clear**<br><br>Sale Order ¶ 6<br><br>Local Bankr. R. 6004-1(b)(iv)(M) | Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Assets shall be free and clear of liens and all interests, liabilities, obligations, or claims (including all "claims" within the meaning of section 101(5) of the Bankruptcy Code). |

## Basis for Relief

**I.     The Purchase Transaction is a Sound Exercise of the Debtors' Business Judgment, is Appropriate Pursuant to Bankruptcy Rule 6004(f), and Should Be Approved.**

10.     Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  In determining whether to authorize the use, sale, or lease of property of the estates under section 363 of the Bankruptcy Code, "courts require the

debtor to show that a sound business purpose justifies such actions." *The Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see*, *e.g.*, *In re ICL Holding Co., Inc.*, 802 F.3d 547, 551 (3d Cir. 2015); *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983). The "sound business purpose" test requires a debtor to establish that: "(1) a sound business purpose [for the sale] exists; (2) the [total consideration] is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). The Debtors submit that the Purchase Transaction satisfies each of these elements.

11. Once a debtor articulates a valid business justification, then the burden of rebutting the "strong presumption . . . that the agreement at issue was negotiated in good faith and in the best interests of the estate" falls to parties opposing the transaction. *In re Filene's Basement*, No. 11-13511 (KJC), 2014 WL 1713416; *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor satisfies the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

12. Moreover, Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction. *See* Fed. R. Bankr. P. 6004(f)(1). Courts generally afford debtors in possession broad discretion in determining the manner in which estate property is sold. *See*, *e.g.*, *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998). Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of

7

the Bankruptcy Code. *See In re Stephens Indus., Inc.*, 789 F.2d 386, 390 (6th Cir. 1986) (holding a debtor may sell property via private sale "when a sound business purpose dictates such action); *In re Schipper*, 933 F.2d 513 (7th Cir. 1991) (approving private real estate sale by debtor when purchase price was the same as independent appraisal); *Penn Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991) (noting that, with respect to sales of estate property, "[t]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction."); *In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. M.D. Penn. 1986) (permitting the private sale of certain of the debtor's assets); *In re Paper Corp. of Am.*, 138 F.Supp. 29 (S.D.N.Y. 1956) (holding that the trustee's inability to sell the property after "many months . . . was sufficient to warrant the private sale."); *see also In re Blue Coal Corp.*, 168 B.R. 553, 564 (M.D. Penn. 1994) ("[A] larger measure of discretion is available to the court in considering whether a private bid should be approved or confirmed.").

13. Selling the Assets by private sale is in the best interests of the Debtors' estates and should be approved. The Debtors believe that the Purchasers are uniquely positioned to fully appreciate the value in the Assets and that it is unlikely another purchaser would come forward within a reasonable time frame with a higher and better offer. After engaging in good-faith, arms' length negotiations with the Purchasers, the parties agreed on the applicable purchase price in cash for each Asset, which totals approximately $11,867,301 in the aggregate. The Debtors believe that this incremental injection of liquidity in the early stages of these chapter 11 cases, in combination with the RIC Depositor Debt Consideration, will be essential to support and strengthen the Debtors' ability to administer these chapter 11 cases for the benefit of all stakeholders, including the Debtors' auction process for the essential going-concern aspects of their businesses.

14. The Debtors believe that a public auction for the Assets would require the Debtors' estates to incur substantial additional costs and create undue delay. The Debtors do not believe an auction would result in incremental value sufficient to justify the incurrence of such costs and delay, particularly in light of the Debtors' liquidity constraints. As set forth herein, however, the Debtors will evaluate any and all alternative proposals and act in accordance with the fiduciary out set forth in the Term Sheet. For these reasons, the Purchase Transaction is a sound exercise of the Debtors' business judgment and should be approved.

15. Courts in this and other jurisdictions have routinely authorized private sales pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. Mar. 27, 2023) (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 24, 2023); *In re Boy Scouts of Am.*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 22, 2022) (same); *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Feb. 1, 2021) (same); *In re Comcar Indus., Inc.*, No. 20-11120 (LSS) (Bankr. D. Del. July 21, 2020) (same).

II. **The Sale Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) of the Bankruptcy Code.**

16. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interests;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because these requirements are listed in the disjunctive, the Debtors only need to satisfy one of the five requirements to permit the Property to be sold "free and clear" of liens and interests. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002). The Debtors submit that each lien or interest in the Assets (other than any assumed liability or permitted encumbrance) satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code.

17. Specifically, the First Lien Agent, who will be among the ultimate beneficiaries of these sales, does not object to the proposed Purchase Transaction (and indeed supports the transaction), satisfying section 363(f)(2). To the extent any other prepetition secured lenders have a prepetition security interest in and liens upon the Assets, these creditors can be compelled to accept a monetary satisfaction of their interests or are adequately protected by having their claims that constitute interests in the Assets, if any, attached to the proceeds of the Purchase Transaction with the same priority that existed immediately prior to the closing. Thus, section 363(f)(5) of the Bankruptcy Code is satisfied and any existing interests in the Assets will be adequately protected through attachment to the proceeds of the sale. *See In re Katy Indus.*, No. 17-11101 (KJC), 2017 WL 5434578, at *5 (Bankr. D. Del. 2017) (finding that holders of liens against property sold free and clear of all liens are "adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale attributable to the Purchased Assets in which such holder alleges an Encumbrance"); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."). Accordingly, the Debtors request that the Assets be transferred to

the Purchasers free and clear of liens, claims, and encumbrances, with any such liens, claims, and encumbrances attaching to the net sale proceeds realized from the applicable private sale.

**III.     The Purchasers are Good-Faith Purchasers and are Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code.**

18.     Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith[.]"  11 U.S.C. § 363(m).  Although good faith is not specifically defined in the Bankruptcy Code, one court has stated that the "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal quotations omitted).  Within the Third Circuit, a good faith purchaser is one who purchases assets for value and in good faith.  "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies of Pa.,* 788 F.2d 143, 147 (3d Cir. 1986).

19.     The Term Sheet and Purchase Transaction contemplated herein are the product of good-faith, arm's-length negotiations.  There is no indication of fraud or any improper insider dealing.  Further, the consideration to be received by the Debtors for the Assets is fair and reasonable, and the Debtors are not aware of any other actionable competing offers.  The First Lien Lenders' support for this transaction further supports the conclusion that this sale has been done

11

without any insider dealing or collusion.  Accordingly, the Debtors request that the Court enter an order entitling each Purchaser to the full protections of section 363(m) of the Bankruptcy Code.

### Waiver of Bankruptcy Rule 6004(h)

20. To implement the foregoing successfully, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

### Notice

21. The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware;  (e) the Internal Revenue Service;  (f) the United States Securities and Exchange Commission; (g) the United States Department of Justice;  (h) the First Lien Agent and counsel thereto; (i) the Second Lien Agent and counsel thereto; (j) the L/C Secured Party; (k) all parties who have expressed a written interest in some or all of the Assets, if any; (l) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (m) all applicable state and local taxing authorities; (n) each governmental agency that is an interested party with respect to the proposed Purchase Transaction; and (o) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1(b) (collectively, the "Notice Parties").  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

22. No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Sale Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:   August 6, 2024
         Wilmington, Delaware

*/s/ Jason M. Madron*

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.** | **KIRKLAND & ELLIS LLP** |
| Kevin Gross (DE Bar No. 209) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Mark D. Collins (DE Bar No. 2981) | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Jason M. Madron (DE Bar No. 4431) | Zachary R. Manning (admitted *pro hac vice*) |
| 920 N. King Street | 601 Lexington Avenue |
| Wilmington, Delaware 19801 | New York, New York 10022 |
| Telephone:   (302) 651-7700 | Telephone:   (212) 446-4800 |
| Facsimile:   (302) 651-7701 | Facsimile:   (212) 446-4900 |
| Email:   gross@rlf.com | Email:   joshua.sussberg@kirkland.com |
|    collins@rlf.com |    zach.manning@kirkland.com |
|    madron@rlf.com | |
| | - and - |
| | Chad J. Husnick, P.C. (admitted *pro hac vice*) |
| | Jeffrey Michalik (admitted *pro hac vice*) |
| | Robert Jacobson (admitted *pro hac vice*) |
| | 333 West Wolf Point Plaza |
| | Chicago, Illinois 60654 |
| | Telephone:   (312) 862-2000 |
| | Facsimile:   (312) 862-2200 |
| | Email:   chad.husnick@kirkland.com |
| |    jeff.michalik@kirkland.com |
| |    rob.jacobson@kirkland.com |
| *Proposed Co-Counsel to the Debtors and Debtors in Possession* | *Proposed Co-Counsel to the Debtors and Debtors in Possession* |