**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| SUNPOWER CORPORATION, *et al.*,[1] | ) Case No. 24-11649 (CTG) |
| Debtors. | ) (Joint Administration Requested) |
| | ) Re: D.I. 58 |

**DECLARATION OF MATTHEW HENRY, CHIEF
TRANSFORMATION OFFICER OF SUNPOWER CORPORATION,
IN SUPPORT OF THE MOTION OF DEBTORS FOR ENTRY OF
AN ORDER (I) AUTHORIZING AND APPROVING THE SALE OF TCU
SOLAR LOANS AND RIC DEPOSITOR MEMBERSHIP INTERESTS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

I, Matthew Henry, hereby declare under penalty of perjury:

1. I am the Chief Transformation Officer of SunPower Corporation (collectively, with its Debtor affiliates, the "Debtors" and, together with their non-Debtor affiliates "SunPower" or the "Company"). SunPower is a publicly-traded company based in Richmond, California, organized under the laws of Delaware, and a debtor and debtor in possession in the above-captioned cases along with nine of its direct and indirect subsidiaries.

2. I am authorized to submit this declaration in support of the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of TCU Solar Loans and RIC Depositor*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition Holdco, Inc. (3335). The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

*Membership Interests Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Motion")[2].

## Professional Background and Qualifications

1. As a Managing Director at Alvarez & Marsal North America, LLC ("A&M"), I began working with SunPower in November 2023 and was appointed Chief Transformation Officer in August 2024. I have spent over sixteen years at A&M advising distressed companies in their restructuring efforts. I also spent nearly three years with a middle-market investment bank, where I advised on acquisitions by private equity groups and publicly-traded conglomerates. I hold a bachelor's degree in finance from the University of Nevada and an MBA from the W.P. Carey School of Business at Arizona State University.

2. Each of the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), with the United States Bankruptcy Court for the District of Delaware (the "Court") on August 5, 2024 (the "Petition Date"). I submit this declaration (the "Declaration") to assist the Court and the parties in interest in understanding the circumstances that compelled the filing of the Motion.

3. As Chief Transformation Officer of SunPower, I am familiar with the day-to-day operations, business and financial affairs, and books and records of SunPower. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information provided by other members of the Debtors' management team and advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or that certain term sheet attached as Exhibit 1 to the Sale Order (the "Term Sheet").

I am over the age of 18 and am authorized to submit this Declaration on behalf of the Debtors. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

### Entry into the Purchase Transaction is a Sound Exercise of the Debtors' Business Judgment

3.  As further described in the Motion, the Purchase Transaction between SunPower Capital Services, LLC (the "Seller"), and GoodFinch SPV WL IV (SPWR), LLC and Solar Securitization Master Fund II, LP (each, a "Purchaser," and together, the "Purchasers") involves the sale of (i) the TCU Solar Loans, and (ii) 100% of the limited liability company membership interests in SPWR RIC Depositor 2022-1, LLC (the "RIC Depositor Membership Interests," and together with TCU Solar Loans, the "Assets"), substantially in accordance to the terms contained in the Term Sheet. The cash consideration for the Assets is (i) $11,367,301 for the TCU Solar Loans and (ii) $500,000 for the RIC Depositor Membership Interests, for an aggregate amount of $11,867,301. As part of the purchase consideration, the Term Sheet also contemplates the termination of Debtor SunPower Corporation's guaranty of the approximately $53 million RIC Warehouse Facility.

4.  Beginning in May of 2024, the Purchasers and the Debtors began discussions on a potential purchase transaction for the TCU Solar Loans. The approximately $19.6 million portfolio of TCU Solar Loans is comprised of solar loans originated and funded by Technology Credit Union and repurchased by the Seller. The Debtors had also entered into discussions on a potential purchase transaction with at least two other potential purchasers for the TCU Solar Loans; however, neither of these purchasers were willing to transact due to various factors, including the risk profile given the circumstances leading to these chapter 11 cases outlined in the First Day Declaration. Accordingly, the Debtors and the Purchasers negotiated a purchase transaction for the TCU Solar Loans in the ordinary course of business. As negotiations progressed, the

3

Purchasers also expressed interest in acquiring the RIC Depositor Membership Interests as part of the overall Purchase Transaction for additional consideration. The RIC Depositor holds a portfolio of approximately $113.1 million in solar retail installment contracts. These negotiations resulted in the execution of the Term Sheet, and I believe the Debtors and the Purchasers engaged in good-faith, arms' length negotiations around the terms set for therein. I understand that the Debtors and the Purchasers intend to use commercially reasonable efforts to negotiate and finalize the terms of the Purchase Agreements in the days following the Petition Date and intend to file the Purchase Agreements as soon as reasonably practicable.

5.  The proposed Purchase Transaction, if approved, will provide the Debtors with an expedient injection of over $11.8 million of incremental liquidity within approximately the first month of these chapter 11 cases. Importantly, the Debtors seek to fund the administration of these chapter 11 cases on cash collateral alone, and, consequently, I believe that this liquidity infusion is necessary to support the costs and expenses of these chapter 11 cases. Consummation of the Purchase Transaction will inure to the benefit of all stakeholders, and I believe the Debtors' constrained liquidity position justifies the need to move quickly towards closing the proposed transaction.

6.  I believe that the purchase consideration for the Assets is reasonable under the circumstances, and I do not believe that the potential harm to the Debtors' estates which could result from the costs and delay of running an auction process for the Assets would be outweighed by any marginal increase to the sale proceeds. To the best of my knowledge, neither of the Purchasers has colluded with the Debtors on the purchase. Rather, I believe that the Purchasers have negotiated the Purchase Transaction, including the terms and conditions of the Term Sheet, with the Debtors at arm's length and in good faith. Moreover, the Term Sheet allows the Debtors

to pursue alternative value maximizing transactions, including a higher bid from a potential new purchaser of the Assets, should any arise within a timeframe that is reasonably accommodating to the realities of the Debtors' liquidity position.  At this time, the Debtors have not received a higher or better offer for the Assets, and I am not aware of any other parties that have expressed a current interest in purchasing the Assets.

### Conclusion

7.  Accordingly, for all the foregoing reasons, I believe that the proposed Purchase Transaction is a sound exercise of the Debtors' business judgment and that the Purchase Transaction was negotiated at arms' length and in good faith by all parties.  Given the details described above and based on my experience as a restructuring professional and involvement in other sale transactions, I believe that the Court should approve the sale of the Assets.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 6, 2024
Richmond, California

*/s/ Matthew Henry*
Matthew Henry
Chief Transformation Officer
SunPower Corporation