## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNPOWER CORPORATION, *et al.*,[1] | ) | Case No. 24-11649 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### MOTION OF DEBTORS
### FOR ENTRY OF AN ORDER (I) APPROVING AGENCY
### AGREEMENT WITH HILCO COMMERCIAL INDUSTRIAL, LLC
### EFFECTIVE AS OF THE PETITION DATE; (II) AUTHORIZING THE
### SALE OF REMAINING ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
### INTERESTS, AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") respectfully move (the "Motion") as follows:

### Relief Requested

1.     The Debtors seek entry of an order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), (i) approving the employment and retention of Hilco Commercial Industrial, LLC (the "Agent" or "Hilco") for marketing and liquidation purposes, as of August 5, 2024 (the "Petition Date") consistent with the agency agreement (the "Agency Agreement"),[2] dated as of August 4, 2024, by and between

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  880 Harbour Way South, Suite 600, Richmond, CA 94804.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Henry, Chief Transformation Officer of SunPower Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 9] (the "First Day Declaration"), filed on August 5, 2024 (the "Petition Date") and incorporated by reference herein.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Agency Agreement, as applicable.

the Debtors and Hilco, attached to the Interim and Final Orders as <u>Exhibit 1</u>, (ii) authorizing and approving the sales by the Agent (acting on behalf of the Debtors) of certain solar panels and other inventory free and clear of any liens, claims, interests and encumbrances pursuant to the terms and conditions of the Agency Agreement, and (iii) granting related relief, as more fully set forth herein and in the Agency Agreement; and upon the *Declaration of Eric W. Kaup in Support of Motion of Debtors for Entry of an Order (I) Approving Agency Agreement with Hilco Commercial Industrial, LLC Effective as of the Petition Date; (II) Authorizing the Sale of Remaining Assets Free and Clear of Liens, Claims, Interests, and Encumbrances; and (III) Granting Related Relief* (the "<u>Agent Declaration</u>") attached hereto as **<u>Exhibit C</u>**.

### Jurisdiction and Venue

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105, 327, 328 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rules

2002, 2014 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2014-1 and 6004-1.

## Background

5.      SunPower Corporation, together with its Debtor and non-Debtor affiliates (collectively, the "Company"), is a leading provider of solar technology and energy products offering all-in-one residential solar and energy storage solutions to customers located primarily in the United States and Canada.  Headquartered in Richmond, California, the Company's mission since its inception has been to reduce greenhouse gas emissions by making home solar energy more accessible for historically underserved communities.

6.      On August 5, 2024 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a Motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## The Agency Agreement

7.      The Debtors filed these chapter 11 cases to pursue an orderly and value-maximizing sale or sales of their assets.  As described in the *Motion of the Debtors for Entry of an Order (I) (A) Approving Bidding Procedures for the Sale or Sales of the Debtors' Assets; (B) Scheduling Auctions and Approving the Form and Manner of Notice Thereof; (C) Approving Assumption and Assignment Procedures; (D) Scheduling Sale Hearings and Approving the Form and Manner of Notice Thereof; (II) (A) Approving the Sale of the Debtors'*

*Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* filed concurrently herewith (the "Bidding Procedures Motion"), the Debtors have commenced a marketing processes to solicit interest in, and seek bids for, some or all of their assets, including, but not limited to, three business segments: (a) New Homes, (b) Blue Raven Solar ("Blue Raven"), and (c) SunPower Dealer Network, and various miscellaneous assets as more fully described in the Bidding Procedures Motion (the "Bidding Procedures Assets").

8.      The Debtors, in consultation with their advisors, have decided in a sound exercise of their business judgment to conduct an efficient and cost-effective liquidation of the Debtors' assets other than the Bidding Procedures Assets (collectively, the "Remaining Assets").  The Debtors submit that the relief requested herein, including retention of the Agent as the Debtors' exclusive broker and auctioneer of the Remaining Assets, will best position the estates to maximize the value of the Remaining Assets.

9.      As described in further detail below, the relief requested herein should be authorized for several reasons.  ***First***, the Agent possesses market-leading expertise, experience, and relationships for marketing and selling the Remaining Assets in a value-maximizing manner. ***Second***, the Agent will execute the foregoing as promptly as commercially practicable.  ***Third***, as described in the First Day Declaration, the Agency Agreement sets forth terms and conditions that are commercially reasonable, were executed at arms'-length and in good faith, and reflect an exercise of the Debtors' sound business judgment.

10.     The Debtors believe that the Agency Agreement will provide the best overall solution for a value-maximizing liquidation of the Remaining Assets.   The Agent's industry-leading marketing and auction platforms, extensive experience in conducting

value-maximizing liquidations of this magnitude, and proven capabilities to market, sell, transport, and store assets of this type will best position the Debtors to achieve the highest possible liquidation values for the Remaining Assets.  Accordingly, the relief requested herein should be approved.

11.    A summary of the material terms of the Agency Agreement is set forth below: [3]

| Term | Agency Agreement |
|---|---|
| **The Agent's Services** | In connection with the services to be provided by Agent, Agent will: |
| | (i)    develop an advertising and marketing plan for the sale of the Assets; |
| | (ii)    implement the advertising and marketing plan as deemed necessary or appropriate by Hilco to maximize the net recovery on the Assets; |
| | (iii)    prepare for the sale of the Assets, including gathering specifications and photographs for pictorial brochures and organizing the Assets in a manner, which in Hilco's judgment would be designed to enhance the net recovery on the Assets; |
| | (iv)    provide fully qualified and experienced personnel who will prepare for and sell the Assets in accordance with the terms of the Agency Agreement; |
| | (v)    sell the Assets for cash or other immediately available funds on an "AS IS," "WHERE IS" basis and in accordance with the terms of the Agency Agreement; |
| | (vi)    charge and collect on behalf of Company from all purchasers any purchase price together with all applicable taxes in connection with the Agency Agreement; |
| | (vii)    assist the Company and/or its advisors as necessary to obtain all required approvals and authorizations from the Bankruptcy Court with respect to any sale Assets contemplated under the Agency Agreement, which assistance may include, without |

---

[3]    This summary is provided for convenience purposes only.  To the extent any of the terms described below are inconsistent with the Agency Agreement, the Agency Agreement shall control in all respects.

| | |
|---|---|
| | limitation, testimony at hearings before the Bankruptcy Court, attendance at depositions and/or the provision of declarations or affidavits in support of Asset sales;<br><br>(viii)  deposit all collected Gross Proceeds into a separate account maintained by Hilco and remit such proceeds to the Company by transferring them to the account described on <u>Exhibit B</u> attached to the Agency Agreement and by reference incorporated into the Agency Agreement, (the "<u>Client Account</u>"), (less any amounts due to Hilco under the Agency Agreement, the "<u>Net Proceeds</u>") within thirty (30) days after the sale of each Asset.  "Gross Proceeds" shall be defined as cumulative collected gross receipts from the sale of the Assets, exclusive of sales taxes and buyer's premiums. |
| **Term of Agency Agreement** | 180 days from the Commencement Date, which may be extended by mutual agreement of the Company and Agent. |
| **Compensation** | A.      In consideration of its services under the Agency Agreement, Hilco shall be entitled to payment by the Company of a commission equal to 10% of the Gross Proceeds from the sale of the Assets.<br><br>B.      Hilco shall advance and shall be entitled to reimbursement by the Company for all Expenses regardless of whether or not any Assets are sold.  "Expenses" mean out-of-pocket expenses incurred by Hilco in connection with Hilco's performance of its services under the Agency Agreement, including, but not limited to, advertising, reasonable and documented attorneys' fees and costs associated with any Bankruptcy proceeding and/or Hilco's retention therein, third party sale commissions, promotion and sales costs, lodging, travel, labor associated with project management oversight, labor and other costs and expenses associated with previewing and removing the Assets, and other miscellaneous costs and expenses; *provided* that the Expenses shall be capped at $250,000, unless otherwise agreed in writing (email being sufficient) between Hilco and the Company, with the consent of the First Lien Agent.  The Company agrees that all Expenses may be withheld from Gross Proceeds of the sale of any Assets.<br><br>C.      Within ten (10) calendar days after expiration of the Term or earlier termination of the Agency Agreement, Hilco may provide the Company with a list of third parties (each, a "<u>Prospect</u>") that Hilco has engaged in negotiations with respect to the Assets covered under the Agency Agreement.  If Hilco provides a Prospect list and within one hundred and eighty (180) days after the expiration of the Term of the Agency Agreement or earlier termination (if applicable), the Company and one or more Prospects should enter into one or more written agreements to purchase all or any portion of the Assets, Hilco |

| | |
|---|---|
| | shall be entitled to fee(s) calculated in accordance with the terms of the Agency Agreement. Each fee shall be paid by the Company to Hilco within five (5) business days after applicable closing between the Company and each Prospect. |
| **Indemnification** | Hilco understands that the Assets will be sold AS IS and WHERE IS, and the Company does not make any representations or warranties with respect to the Assets, except for specifically stated under Section V of the Agency Agreement. The Company agrees to indemnify and hold Hilco harmless from any and all claims, causes of actions, damages, losses, or liabilities (including, without limitation, reasonable attorney's fees) of any kind arising from or related to (i) the Company's breach of any of its obligations, misrepresentations and warranties under the Agency Agreement, (ii) its performance or failure to perform under the Agency Agreement, or (iii) the Company's failure to pay any personal property taxes associated with the Assets. The Company further agrees to indemnify and hold Hilco harmless from any and all claims, causes of actions, damages, losses, or liabilities (including, without limitation, reasonable attorney's fees) of any kind arising from or related to the demonstration and sale of the Assets or any inaccurate misstatements or representations concerning the Assets made by the Company to Hilco. Notwithstanding the foregoing, the Company shall not in any circumstances indemnify Hilco from any claims or causes of action arising from any fraud, negligence, gross negligence (including omissions) or willful misconduct of Hilco or its respective officers, directors, employees, agents, contractors, consultants or representatives. <br><br> Hilco agrees to indemnify and hold the Company and its affiliates and their officers, directors, principals, shareholders, affiliates, members, consultants, attorneys, advisors, and employees (collectively, "Company Indemnified Parties") harmless from any and all claims, causes of actions, damages, losses, or liabilities (including, without limitation, reasonable attorney's fees), including those asserted by any buyer or prospective buyer of the Assets based on or relating to (i) Hilco's breach of any of its obligations, representations and warranties under the Agency Agreement or its performance or failure to perform under the Agency Agreement, (ii) the fraud, negligence, gross negligence (including omissions) or willful misconduct of Hilco, its officers, directors, employees, agents, third parties, affiliates, contractors or representatives, or (iii) any liability or other claims asserted by Hilco's consultants, members, employees, representatives, affiliates, contractors and principals (excluding Company Indemnified Parties) against a Company Indemnified Party arising out of or related to Hilco's conduct of the sale of the Assets. Notwithstanding the foregoing, Hilco shall not in |

| | any circumstances indemnify Company from any claims or causes of action arising from any fraud, negligence, gross negligence (including omissions) or willful misconduct of the Company or its respective officers, directors, employees, agents, contractors, consultants or representatives. |
|---|---|

## Basis for Relief

12.     The Debtors believe that approval of the Agency Agreement, retention of the Agent as the Debtors' exclusive marketer, broker, and auctioneer for the Remaining Assets, and the Agent's sale (on the Debtors' behalf) of the Remaining Assets free and clear of liens, interests, and encumbrances (effective upon the sale thereof) is in the best interests of the Debtors, their creditors, and their estates.

**I.      The Court Should Authorize the Retention of the Agent as the Debtors' Exclusive Broker and Auctioneer for the Remaining Assets.**

13.     Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title.

11 U.S.C. § 327(a).  The Company has provided Hilco with a list of potential parties in interest, including those set forth in the attached parties in interest list (the "Searched Parties in Interest List") attached as Schedule 1 to the Agent Declaration, attached as **Exhibit C** hereto.  Hilco has advised the Company that Hilco researched its internal records to determine whether Hilco has any connections with the Debtors and the parties listed on Schedule 1 attached to the Agent Declaration.

14.     To the best of the Company's knowledge, except to the extent disclosed herein and in the Agent Declaration, and subject to Hilco's continuing investigation and search of the

other parties in interest not yet searched as of the date hereof, Hilco:  (a) is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtor's estate, its creditors, or its principals for the matters on which Hilco is to be employed; and (c) has no connection to the Debtor, its creditors, principals, or their related parties set forth in <u>Schedule 1</u>, except as disclosed in the Agent Declaration and <u>Schedule 2</u> attached thereto, subject to Hilco's continued investigation and search of the other parties in interest not yet searched as of the date hereof and as may be added to the parties in interest list at a later date.  For the reasons set forth herein and in the Agent Declaration, the Company believes to the best of its knowledge, information and belief, that Hilco is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  Given that the Agent is a national liquidation firm specializing in the sale of inventory and other personal property, the Agent may have served as liquidator to sell assets for, or have other relationships with, one or more of the Debtors' creditors or other parties in interest.  Nonetheless, based upon the Agent Declaration, the Agent is not working for or on behalf of any of the Debtors' creditors set forth in the Searched Parties in Interest List in connection with this matter and no such relationship is material to the Agent.  Accordingly, the Debtors respectfully submit that the Agent satisfies the requirements of section 327(a) of the Bankruptcy Code and can act as the Debtors' exclusive marketer, broker, and auctioneer for the Remaining Assets pursuant to the Agency Agreement.[4]

15.     Additionally, the Debtors seek approval of the terms of the Agency Agreement, including the proposed compensation to be paid to the Agent, pursuant to section 328(a) of the

---

[4]   Hilco continues to check conflicts for other parties in interest and will continue to do so as additional parties are added and supplemented to the parties in interest list.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of the Agent's retention are discovered or arise, the Agent will use reasonable efforts to promptly disclose such facts or relationships.

Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals on flexible terms that reflect the nature of their services and market conditions.

16.     The Debtors respectfully submit that the terms and conditions of the Agency Agreement are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code. In accordance with the Agency Agreement, Agent shall be entitled to payment by the Company of a commission equal to 10% of the Gross Proceeds from the sale of the Assets. Agent shall deposit all collected Gross Proceeds into a separate account maintained by Agent and remit such proceeds to the Company by transferring them to the account described on Exhibit B to the Agency Agreement and by reference incorporated into the Agency Agreement, (the "Client Account"), (less any amounts due to Hilco under the Agency Agreement, the "Net Proceeds") within thirty (30) days after the sale of each Asset.

17.     For the reasons previously stated and described further below, the Debtors submit that entry into the Agency Agreement is necessary and in the best interest of the Debtors and their estates.

18.     Accordingly, the retention and employment of the Agent pursuant to the terms of the Agency Agreement is reasonable under the circumstances and is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

19.     The compensation structure generally described herein and set forth in the Agency Agreement is consistent with typical arrangements entered into by Hilco and other

marketing and sales agents when rendering similar services to clients such as the Company. Hilco and the Company believe that the foregoing compensation arrangement is both reasonable and market-based.   The Company chose to retain Hilco based upon the economic terms contained in its proposal.   In particular, Hilco's compensation structure is based upon commissions and does not require upfront fees.

20.   Due to the transactional nature of the services that Hilco provides, its professionals do not bill clients on an hourly basis while performing such services.   Hilco's expertise with respect to industrial asset marketing and liquidation is an important factor in determining the compensation structure, and the Company believes that the ultimate benefit to the bankruptcy estate resulting from Hilco's services hereunder could not be measured by reference to the number of hours expended by Hilco's professionals in the performance of such services.   The Company respectfully submits that the compensation structure set forth in the Agency Agreement has been agreed upon by the parties on an arm's-length basis in anticipation that a substantial commitment of professional time and effort will be required of Hilco and its professionals hereunder and in light of the fact that (i) such commitment may foreclose other opportunities for Hilco and (ii) the actual time and commitment required of Hilco and its professionals to perform its services hereunder may vary substantially from week to week and month to month.

21.   Based upon the nature of the services to be provided by Hilco and the fact that the compensation structure was developed because Hilco does not bill clients on an hourly basis, the Company seeks relief from having Hilco maintain time records or file interim or final fee applications.   Nevertheless, the Company shall file a summary fee and expense report as a notice

with the Bankruptcy Court, which will notify all parties in interest of the fees and expenses paid
to Hilco by the estate.

## II.     Entry into the Agency Agreement for the Agent's Marketing and Selling of the Remaining Assets Reflects a Sound Exercise of the Debtors' Business Judgment.

22.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice
and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of
the estate." 11 U.S.C. § 363(b)(1).  This Court's power under section 363 is supplemented by
section 105(a), which provides in relevant part that "[t]he Court may issue any order, process, or
judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C.
§ 105(a).

23.     A debtor should be authorized to sell assets out of the ordinary course of business
pursuant to section 363 of the Bankruptcy Code and prior to obtaining a confirmed plan of
reorganization if it demonstrates a sound business purpose for doing so.  *See In re Del. &
Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (finding that the sale of substantially all of debtor's
assets outside of a plan of reorganization is appropriate when a sound business reason justifies
such a sale); *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 394–95 (3d Cir. 1996) (citing *Fulton
State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513 (7th Cir. 1991)); *Comm. of Equity Sec.
Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070–71 (2d Cir. 1983).

24.     Here, the Debtors submit that the Agent's marketing and selling the Remaining
Assets on the Debtors' behalf pursuant to the Agency Agreement is an exercise of sound
business judgment.  The Agent possesses the ability to maximize the amounts realized from the
sales of the Remaining Assets.  The Agent has conducted marketing and liquidation processes in
various high-profile assignments to the benefit of creditor recoveries.  Thus, the Agent is highly
qualified to execute its obligations under the Agency Agreement and to assist the Debtors in

maximizing the value of the Remaining Assets.  Moreover, any attempt by the Debtors to liquidate the Remaining Assets would require the Debtors to significantly increase their existing operational capabilities and personnel.

25.    Further, by utilizing the Agent's services to market and liquidate the Remaining Assets, the Debtors will be able to quickly and efficiently monetize the Remaining Assets, generating much-needed capital for the Debtors' estates.  Lacking the resources and personnel to clear the Company properties, the Debtors require the services and expertise of the Agent to efficiently and expeditiously accomplish this task.

26.    As mentioned, the Agent is an industry-leading liquidation firm with vast industry connections and experience.  The Agent possesses the expertise and the resources to efficiently and expeditiously market and sell the Remaining Assets in a value-maximizing manner.  The Agent is best positioned to market and sell the Remaining Assets extensively and to ensure that the Debtors receive the highest or otherwise best offers achievable for the Remaining Assets.

27.    Accordingly, the Debtors believe that the entry into the Agency Agreement and retention of the Agent will provide the best method for selling the Remaining Assets in a manner that will maximize creditor recoveries.  The Debtors respectfully submit that they have satisfied the requirements of sections 105 and 363 as those sections have been construed by courts in the Third Circuit and that the sale of the Remaining Assets by the Agent, whether by auction or private sale, meets the standard set forth in section 363(b) for sales outside of the ordinary course of a debtor's business.

**III.    The Court Should Authorize Entry into the Agency Agreement Effective as of the Petition Date.**

28.    The Debtors request approval of the Agency Agreement with the Agent effective as of the Petition Date.  The Third Circuit has identified "time pressure to begin service" and

absence of prejudice as factors favoring *nunc pro tunc* retention.  *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D. Del. 1989).  Given the exigencies of these cases, the Debtors require the Agent to commence work immediately.  Under these circumstances, no party will be prejudiced, and *nunc pro tunc* relief should be approved.  Accordingly, the Debtors believe that approval of the Agency Agreement effective as of the Petition Date, on the terms and conditions proposed herein and in the Agency Agreement, is appropriate.

**IV.    Sales of the Remaining Assets Free and Clear of All Encumbrances Is Authorized under Section 363(f) of the Bankruptcy Code.**

29.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

30.    Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfying any one of its five requirements will suffice to permit the sale of the assets "free and clear" of liens and interests.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that because section 363(f) is written in the disjunctive, a court may approve a sale free and clear if any one subsection is met); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (same);  *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same).

Furthermore, a debtor possesses broad authority to sell assets free and clear of liens. *See In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

31.    The Debtors submit that, it is appropriate to sell the Remaining Assets on a final, "as is" basis, free and clear of any and all encumbrances in accordance with section 363(f) of the Bankruptcy Code because one or more of the tests of section 363(f) are satisfied with respect to such Sale. In particular, the Debtors submit that section 363(f)(2) of the Bankruptcy Code will be met as to their Secured Parties (defined below).

32.    The Debtors stipulate that the Remaining Assets are subject to the liens of the Prepetition Lenders as described in the First Day Declaration. Such liens will attach to all proceeds of each sale of the Remaining Assets (other than Hilco's fees, Expenses, and other amounts owed to Hilco, which shall be paid and/or reimbursed to Hilco in accordance with the Agency Agreement), and each of the Prepetition Lenders has consented to or is expected to consent to the sales of the Remaining Assets by the Agent, on behalf of the Debtors, pursuant to the Agency Agreement. Therefore, the Remaining Assets may be sold free and clear under section 363(f)(2).

33.    Moreover, with respect to any other party asserting a lien, claim, or encumbrance against the Remaining Assets, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f) of the Bankruptcy Code. In particular, known lienholders, if any, will receive notice of this Motion and will be given sufficient opportunity to object to the relief requested. Such lienholders that do not object to the relief requested in this Motion should be deemed to have consented. *See FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285–86 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone

who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (holding that creditor's failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. at 345 (same). Consistent with the foregoing, the notice of this Motion provides that the absence of a timely objection to the sale of the assets in accordance therewith shall be "consent" to such sale within the meaning of section 363(f)(2) of the Bankruptcy Code.

34. A sale of the Remaining Assets other than one "free and clear" of all interests would yield substantially less value for the Debtors' estates. The Debtors submit that potential purchasers are unlikely to consummate a sale absent the ability to purchase the Remaining Assets free and clear of all liens, claims, encumbrances, and interests. Accordingly, the Debtors request that the Remaining Assets be authorized to be sold free and clear with any such liens, claims, encumbrances, and interests attaching to all proceeds of the sale, net of Hilco's fees and expenses, and subject to any rights and defenses of the Debtors and other parties in interest with respect thereto.

35. In approving the sales by the Agent (acting on the Debtors' behalf) of the Remaining Assets free and clear of liens, claims, interests, or encumbrances, the Debtors request that the Court find that those who purchase the Remaining Assets through the Agent's sale process are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. This relief is appropriate in light of the opportunity for review and objection provided herein.

## The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

36. Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an

immediate and orderly liquidation of the Remaining Assets is critical, and the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases could impact the Debtors' administration of these chapter 11 cases at this juncture.  The requested relief is necessary for the Debtors to preserve and maximize value of their estates for the benefit of all stakeholders.  As set forth herein, the Debtors submit that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

## **Reservation of Rights**

37.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code;

(i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

### **Waiver of Bankruptcy Rule 6004**

38.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

### **Notice**

39.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware;  (e) the Internal Revenue Service;  (f)  the  United  States  Securities  and  Exchange Commission; (g) the United States Department of Justice;  (h) the First Lien Agent and counsel thereto; (i) the Second Lien Agent and counsel thereto; (j) the L/C Secured Party; (k) the Agent; (l) any party that is entitled to notice pursuant to Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

40.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 13, 2024
Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (DE Bar No. 209)
Mark D. Collins (DE Bar No. 2981)
Jason M. Madron (DE Bar No. 4431)
920 N. King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         gross@rlf.com
               collins@rlf.com
               madron@rlf.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Zachary R. Manning (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         joshua.sussberg@kirkland.com
               zach.manning@kirkland.com

- and -

Chad J. Husnick, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Robert Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         chad.husnick@kirkland.com
               jeff.michalik@kirkland.com
               rob.jacobson@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*