## Exhibit II

**Redline of Further Revised Proposed Interim Order v. Revised Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SUNPOWER CORPORATION, *et al.*,[1] | ) Case No. 24-11649 (CTG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 129** |

**INTERIM ORDER (I)
APPROVING AGENCY AGREEMENT
WITH HILCO COMMERCIAL INDUSTRIAL, LLC
EFFECTIVE AS OF THE PETITION DATE; (II) AUTHORIZING
THE SALE OF REMAINING ASSETS FREE AND CLEAR OF LIENS, CLAIMS,
INTERESTS AND ENCUMBRANCES; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of this interim order (this "Interim Order"), (a) authorizing the Debtors to enter into the agency agreement (as amended, supplemented, or modified from time to time and including all exhibits, schedules, and appendixes thereto, the "Agency Agreement"),[2] dated as of August 4, 2024, by and between the Debtors and Hilco Commercial Industrial, LLC (the "Agent"), attached hereto as **Exhibit 1**, (b) authorizing the sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335). The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement, as applicable.

[2] ~~A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Matthew Henry, Chief Transformation Officer of SunPower Corporation, in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 9] (the "First Day Declaration"), filed on August 5, 2024 (the "Petition Date") and incorporated by reference herein. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Agency Agreement, as applicable.~~

by the Agent (acting on behalf of the Debtors) of the specific assets listed on Exhibit A to the Agency Agreement (the "Remaining Assets") free and clear of any liens, claims, interests and encumbrances (effective upon the sale thereof), and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration and the Agent Declaration (including all filed supplements, if any, to the Agent Declaration); and the district court having jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion and all relief requested therein were appropriate, adequate, and sufficient, with all parties having been afforded due process and an opportunity to be heard with respect to the Motion and all relief requested therein, and no other or further notice need be provided; and this Court having reviewed and considered the Motion and having heard the statements in support of the relief requested therein, if any, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, and the record made at the Hearing, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

1. As demonstrated by evidence adduced at and prior to the Hearing and the representations of counsel made on the record at the Hearing, the Debtors' entry into the Agency Agreement and retention of the Agent represent a sound exercise of the Debtors' business judgment under the circumstances. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for entry into the Agency Agreement pursuant to section 363(b) of the Bankruptcy Code. Approval of the Agency Agreement is in the best interests of the Debtors, their estates, their creditors, and other parties in interest. The Agency Agreement was negotiated, proposed, and entered into by the Debtors and the Agent without collusion, in good faith, and from arms' length bargaining positions. The Agent is not an "insider" of the Debtors, as that term is defined in Section 101 of the Bankruptcy Code. Upon entry of this Interim Order, the Debtors shall have full authority to consummate and perform under, and pursuant to, the terms and conditions of the Agency Agreement.

2. Any and all sales of the Remaining Assets at any auction, private sale, or otherwise pursuant to the Agency Agreement, will be a legal, valid, and effective transfer of the Remaining Assets to the buyer(s) of the Remaining Assets and, upon the sale thereof, will vest the buyers with all right, title, and interest of the Debtors to the Remaining Assets free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever; <u>provided</u> that <s>all</s><u>any</u> liens, claims, encumbrances and interests of <s>which the Remaining Assets are sold free and clear</s> <u>the Prepetition Lenders (including on behalf of their First Lien Adequate Protection Claims)</u> shall, after payment of Hilco's fees and expenses, automatically attach to all proceeds of the applicable sale <s>for the benefit of the Prepetition Lenders (including on behalf of their First Lien Adequate Protection Claims)</s> in order of priority of such liens, claims,

3

encumbrances, and interests, with the same validity, force, and effect which they had against the applicable Remaining Assets prior to the sale (including pursuant to the Cash Collateral Order) subject to paragraph 11 below. For the avoidance of doubt, all proceeds of any sale, net of Hilco's fees and expenses, shall be funded into and held in an account owned and controlled by the Debtors, which that is subject to a control agreement in favor of the First Lien Agent. The Agent and the Debtors may sell the Remaining Assets free and clear of all such liens, claims, encumbrances, and interests because, in each case, one or more of the standards set forth in section 363(f)(l) through (5) of the Bankruptcy Code have been satisfied.

3. The Agency Agreement is a valid and binding contract between the Debtors and the Agent, which is and shall be immediately enforceable upon entry of this Interim Order according to its terms and provisions.

**IT IS HEREBY ORDERED THAT:**

4. The Motion is GRANTED on an interim basis, as set forth herein.

5. Any objections to the Motion or to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby DENIED and OVERRULED.

6. The Agency Agreement, including all of its terms and conditions, and sales of the Remaining Assets as contemplated therein, are approved in all respects pursuant to sections 327(a), 328(a), and 363 of the Bankruptcy Code. The Debtors and the Agent are authorized, without further order of the Court, to take all steps they deem necessary or appropriate to sell the Remaining Assets in accordance with the Agency Agreement, as well as to perform any and all other duties and obligations contemplated by the Agency Agreement.

7. Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized, without further order of the Court, to execute, deliver, and perform under, consummate, and implement the Agency Agreement together with any additional instruments and documents that may be reasonably necessary or desirable to implement the transactions contemplated by the Agency Agreement.

8. The Debtors are authorized to employ and retain the Agent on the terms and provisions set forth in the Agency Agreement, effective as of the Petition Date.

9. The Agent shall perform all of its obligations, including, without limitation, marketing and selling the Remaining Assets on the Debtors' behalf, pursuant to the Agency Agreement, and shall be compensated, in accordance with the terms and provisions of the Agency Agreement. The Agent shall be permitted and hold power of attorney from the Debtors to sign any title, release, or other similar instrument to transfer ownership to a purchaser of any Remaining Assets free and clear of liens, claims, interests, and encumbrances.

10. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Remaining Assets shall be sold, pursuant to the Agency Agreement, free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (effective upon the sale thereof), in accordance with section 363(f) of the Bankruptcy Code; <u>provided</u> that all liens, claims, encumbrances, and interests of which the Remaining Assets are sold free and clear pursuant to the Agency Agreement and this Interim Order (including the Adequate Protection Liens) shall, after payment of Hilco's fees and expenses, automatically attach to all proceeds of the applicable sale, including on the Client Account where all proceeds, net of Hilco's fees and expenses, will be deposited, ~~for the benefit of the Prepetition Lenders (including on behalf of their First Lien Adequate Protection Claims),~~ in the order of priority of such liens, claims,

encumbrances, and interests, with the same validity, force, and effect which they had against the applicable Remaining Asset prior to the sale (including pursuant to the Cash Collateral Order), subject to all challenge rights of the Committee set forth in any final Cash Collateral Order, except that Hilco's fees and expenses shall first be paid from the Gross Proceeds. For the avoidance of doubt, upon the sale of each Remaining Asset, Hilco's fees and expenses shall first be calculated and paid from the Gross Proceeds and the remaining net proceeds shall be funded into and held in an account owned and controlled by the Debtors, ~~which~~ that is subject to a control agreement in favor of the First Lien Agent.

11. Nothing in this Interim Order shall affect or limit the Committee's challenge rights set forth in any Cash Collateral Order with respect to the validity, extent, and priority of the liens and claims purportedly held by the Prepetition Lenders. To the extent any proceeds of any sale of a Remaining Asset is paid to any Prepetition Lender (other than amounts required to be paid pursuant to paragraph 21 of the Cash Collateral Order), nothing herein shall affect the Debtors' estates' clawback rights against such Prepetition Lender to the extent the Committee successfully challenges such Prepetition Lenders' liens or claims in the manner set forth in any final Cash Collateral Order.

12. ~~11.~~ This Interim Order is and shall be effective as a determination that all liens, claims, encumbrances and interests shall be and are released with respect to the Remaining Assets as of the closing of any sale of Remaining Assets. The provisions of this Interim Order authorizing the sale and assignment of the Remaining Assets free and clear of all liens, claims, encumbrances and interests, subject to the terms and provisions hereof, shall be self-executing upon the sale of any Remaining Assets pursuant to the terms of the Agency Agreement.

13. ~~12.~~ Notwithstanding the failure of the Debtors, the Agent, or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests on or against the Remaining Assets, if any, shall be deemed released, discharged and terminated as of the closing of any sale of Remaining Assets. This Interim Order shall be the sole and sufficient evidence of authority to transfer title to any particular purchaser of the Remaining Assets, and the transactions consummated pursuant to this Interim Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Interim Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Interim Order as sole and sufficient evidence of such transfer of title and shall rely upon this Interim Order in consummating the transaction.

14. ~~13.~~ Notwithstanding anything to the contrary in this Order, the Application, the Agency Agreement, or the Declarations, the U.S. Trustee shall retain the right and be entitled to object to the Agent's calculated commission and requested reimbursement of Expenses based on the reasonableness standard provided for in section 330 of the Bankruptcy Code; *provided* that the U.S. Trustee's right to object is limited to the accuracy of the Agent's calculations of the proper commission and Expenses owed and subject to the Agent's other rights under the Agency Agreement.

15. ~~14.~~ The information requirements of Local Rule 2016-2(d) are waived and Agent shall not be required to keep or submit time records in connection with its compensation for services rendered. Agent shall file a final fee application under section 328(a) containing a calculation of its compensation and a summary of the services performed, in accordance with the terms and provisions of the Agency Agreement.

16. ~~15.~~ The Agency Agreement may be amended by (i) the Debtors and (ii) the Agent in a writing signed by both Parties without further order of the Court; *provided* that (a) no such amendment may affect the economic consideration granted to Hilco without the consent of the First Lien Agent; and (b) no such amendment or modification shall be effective unless provided to counsel to the Committee not less than 48 hours prior to the effective date of such amendment or modification, and the Committee shall have the right to object to such amendment or modification on an expedited basis. The Debtors will file a notice on the Court's docket setting forth any such foregoing modifications or amendments (if any).

17. ~~16.~~ The Indemnification Provisions contained in the Agency Agreement are approved, subject to the following provisions:

(a) subject to subparagraphs (b) and (c) below, the Debtor is authorized to and shall indemnify Agent for any claims arising from, related to, or in connection with the Services to be provided by Agent as specified in the Agency Agreement and Application, but Agent shall not be entitled to indemnification, contribution, or reimbursement for any claims arising from, related to, or in connection with Agent's performance of any other services not described in the Agency Agreement, unless such other services and indemnification therefor are approved by separate order of this Court;

(b) notwithstanding any provisions of the Agency Agreement to the contrary, the Debtor shall have no obligation to indemnify Agent or provide contribution or reimbursement to Agent for any claim or expense (i) that is judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith, or self-dealing of any Agent Party; (ii) that results from a contractual dispute in which the Debtor alleges breach of Agent's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement in such a case would be permissible under *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) that is settled prior to a judicial determination as to the exclusions set forth in the foregoing clauses (i) and (ii), but is determined by the Court, after notice and a hearing, to be a claim or expense for which a Agent Party should not receive indemnity, contribution or reimbursement; and

(c) if before the earlier of (i) entry of an order confirming a chapter 11 plan (that order having become a final order no longer subject to appeal), and (ii) entry of an order closing this chapter 11 case, Agent believes it is entitled to payment of any amounts on account of Debtor's indemnification, contribution, and/or reimbursement obligations under the Agency Agreement, including, without limitation, the advancement of defense costs, Agent must file an application therefor in this Court, and the Debtor is not authorized to pay any such amounts to Agent before entry of an order approving such payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification, contribution, or reimbursement by Agent and not a provision limiting the duration of the Debtor's obligation to indemnify Agent.

9

18.  ~~17.~~ Notwithstanding anything to the contrary in the Agency Agreement or Application, no trustee or other successor to the Debtor shall be required to maintain or continue the employment of Agent.

19.  ~~18.~~ Neither the Debtors nor the Agent shall be required to file a separate motion or seek Court approval for any sale or other disposition of the Remaining Assets, which sale or other disposition shall be authorized to be sold pursuant to the terms set forth in the Agency Agreement, any amendment thereof, and this Interim Order.  The Debtors shall not be required to file a separate motion or to seek Court approval to pay or reimburse the Agent in accordance with and for any purposes under the Agency Agreement, and the Agent shall not be required to file a separate motion or to seek Court approval to be paid any fee or reimbursed any expense from Gross Proceeds in accordance with and for any purposes under the Agency Agreement; *provided*, that the Expenses shall be capped at $250,000 unless otherwise agreed in writing (email being sufficient) between Hilco and the Company, with the consent of the First Lien Agent.  For the avoidance of doubt, Moelis & Company, LLC, investment banker to the Debtors, shall not earn any transaction fees in respect of any sale(s) of the Remaining Assets by the Agent on behalf of the Debtors.

20.  ~~19.~~ The Agent shall not be required to maintain time records or to file interim or final fee applications with the Court.  Any and all commissions, reimbursements, fees, or other amounts due to, earned by, and paid to the Agent in accordance with the Agency Agreement (including those to be set forth in the Final Report (defined below)) shall not be subject to the review by the Court, any party in interest (except as and only to the extent provided in the Agency Agreement), or the U.S. Trustee.  Upon the conclusion of the term of the Agency Agreement or at such earlier time following Agent's completion of the sale process for the

Remaining Assets, the Agent shall prepare, and the Debtors shall file, a report (the "Final Report") with the Court that identifies (i) the Remaining Assets sold pursuant to the terms set forth in the Agency Agreement, (ii) the sale prices for the Remaining Assets, and (iii) the commission, fees, and reimbursement of expenses deducted by the Agent with respect to each transaction (or in the aggregate with respect to expenses if not directly incurred to sell a Remaining Asset). For the avoidance of doubt, the Final Report need only describe the information contained in this paragraph, and the Agent shall not be required to file interim reports or to keep time records of hours spent performing the services set forth in the Agency Agreement.

21. ~~20.~~ The Agent shall provide weekly updates to the Debtors, which the Debtors shall distribute to the First Lien Agent within one business day of receipt of such weekly update. The weekly update shall include (i) the items that will be included in the Final Report, (ii) all material developments in connection with the efforts of the Debtors and the Agent to make Remaining Sales, (iii) copies of all reports, analyses, materials (including, without limitation, any and all confidential memoranda or other work product provided by any liquidator in connection with the sales process), and (iv) on an ongoing basis, any other reports and information as may otherwise be reasonably requested by the First Lien Agent or its advisors, and the Debtors hereby authorize their accountants, attorneys, Agent, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the First Lien Agent (and its consultants, advisors, and professionals) all such information as may be reasonably requested with respect to the sale process for the Remaining Assets.

22. ~~21.~~ Parties who purchase the Remaining Assets shall be afforded the protections under section 363(m) of the Bankruptcy Code.

23.    ~~22.~~ No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Agency Agreement and the Agent sale authorized therein.

24.    ~~23.~~ The failure to include specifically any particular provision of the Agency Agreement in this Interim Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Agency Agreement be authorized and approved in its entirety.

25.    ~~24.~~ Notwithstanding contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order) is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Interim Order or the Motion or any order granting the relief requested by the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a

concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

26.    ~~25.~~ Except as specifically stated, to the extent of any inconsistency between the provisions of this Interim Order and the Agency Agreement, the provisions contained in the Interim Order shall govern.

27.    ~~26.~~ The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

28.    ~~27.~~ Notwithstanding anything to the contrary herein, any payment made or to be made under this Interim Order shall not impair the First Lien Agent's rights under the order of the Court approving the use of cash collateral in these chapter 11 cases.

29.    ~~28.~~ The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

30.    ~~29.~~ Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

31. ~~30.~~ Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

32. ~~31.~~ This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit 1**

**Agency Agreement**