**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNPOWER CORPORATION, *et al.*,[1] | Case No. 24-11649 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 15** |

**MAXEON SOLAR TECHNOLOGIES, LTD.'S OBJECTION AND RESERVATION OF**
**RIGHTS WITH RESPECT TO DEBTORS' BIDDING PROCEDURES MOTION**

Maxeon Solar Technologies, Ltd. ("Maxeon"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Complete Solaria Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 15] (the "Motion").[2]  In support of this Objection, Maxeon respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SunPower Corporation (8969) ("SPWR"); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335). The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

## BACKGROUND

1.      Maxeon is one of the world's leading global manufacturers and marketers of premium solar power technology.  Headquartered in Singapore, Maxeon manufactures its solar cells in Malaysia and the Philippines, assembles those solar cells into panels in Mexico and Malaysia, and sells its products to end users across more than 100 countries worldwide.

2.      Prior to 2020, Maxeon operated as a wholly owned subsidiary of the Debtors.  Then, in August 2020, the Debtors completed a spin-off of Maxeon (the "Spin-Off"), which became an independent, public company listed on the NASDAQ.  As discussed herein, since the Spin-Off, Maxeon and the Debtors have shared the "SUNPOWER" brand, with Maxon using it globally, and the Debtors using it within the United States.

3.      In connection with the Spin-Off, the Debtors and Maxeon entered into a number of agreements governing the go-forward relationship between the parties, including with respect to each party's respective use of the other's intellectual property.  Among that intellectual property is a series of trademarks owned by the Debtors prior to the Spin-Off that incorporate the "SUNPOWER" brand name and any derivations thereof (such trademarks, the "SunPower Marks"), the use of which is governed by a certain Brand Framework Agreement, dated as of August 26, 2020 (as amended, the "Brand Framework Agreement")[3] by and between Debtor SPWR and Maxeon's wholly-owned subsidiary Maxeon Solar Pte. Ltd. ("MSSG").

4.      Pursuant to the Brand Framework Agreement, SPWR irrevocably assigned to MSSG all rights, title and interest in the SunPower Marks outside of the United States and its territories (Brand Framework Agreement, § 2.1), and granted an exclusive license to MSSG to use the SunPower Marks within the United States, subject to certain conditions and limitations set

---

[3] A copy of the Brand Framework Agreement is attached as **Exhibit A** hereto.

forth therein.  *Id.*, § 3.1.  To protect the value of the SunPower Marks, the Brand Framework Agreement imposes stringent quality control standards on each party's usage of the marks (*id.*, §§ 4.1, 4.2, 4.4, 4.6), and established a joint "Brand Council" to "coordinate on marketing, brand assets and strategy, and [] other matters that implicate" the SunPower Marks.  *Id.*, § 4.3.

5.    To those ends, the Brand Framework Agreement also prohibits the sale, assignment, transfer, or license of the SunPower Marks by either party without counterparty consent (*id.*, § 4.5), and to avoid potential abandonment or forfeiture of the marks, it provides each party with a "right of first refusal" to acquire the marks in the event the other party discontinues its use of the SunPower Marks (the "ROFR").  *Id.*¸§§ 5.1-5.2.

6.    By the Motion the Debtors seek to establish procedures (the proposed procedures, the "Bid Procedures") for the sale of substantially all their assets (other than certain assets subject to separate sales processes), and approval of Complete Solaria, Inc. as "stalking horse" purchaser for those assets (the "Stalking Horse").  Included among the assets the Debtors propose to sell is "the name 'SunPower' or any derivation thereof"—*i.e.*, the SunPower Marks—notwithstanding the restrictions on the sale or use of the SunPower Marks set forth in the Brand Framework Agreement.[4]  The Motion also seeks to impose a schedule governing Court approval of the Debtors' proposed sale process (the "Proposed Schedule").  *See* Motion, ¶ 12.

7.    As of the date hereof the Debtors have not sought (and Maxeon has not provided) Maxeon's consent to the proposed sale of the SunPower Marks to the Stalking Horse (or to any other party, for that matter).  Nor have the Debtors sought to reject the Brand Framework Agreement, which remains in full force and effect.

---

[4] *See* Asset Purchase Agreement, § 1.1, attached to the Motion as Exhibit 2.

**OBJECTION**

8.      The Motion and Bid Procedures should not be approved insofar as they contemplate the sale of the SunPower Marks without Maxeon's consent.  As discussed briefly below, such a sale would be prohibited by numerous interlocking provisions of the Bankruptcy Code and applicable non-bankruptcy law.  In addition, the Proposed Schedule should be modified as set forth herein to give parties in interest ample time to assess the terms of the winning bid selected by the Debtors and, to the extent necessary, prepare and file objections with the Court.

9.      *First,* as discussed above, section 4.5 of the Brand Framework Agreement prohibits the Debtors from selling the SunPower Marks without first obtaining Maxeon's consent.  Unless and until the Debtors reject the Brand Framework Agreement, the Debtors are bound by its terms, including section 4.5 thereof.  *See, e.g.,* 3 COLLIER ON BANKR. ¶ 363.10[1] (16th ed. 2024) (noting that restrictions on transfer of property are enforceable in bankruptcy to the same extent enforceable outside of bankruptcy, and citing cases).  Because the Debtors have not sought to reject the Brand Framework Agreement—and because Maxeon has not consented to the sale of the SunPower Marks to any buyer, including the proposed Stalking Horse—they cannot sell the SunPower Marks.[5]

10.      *Second*, even if the Brand Framework Agreement is rejected, Maxeon's consent rights over a sale would survive rejection.  Under the Supreme Court's decision in *Mission Product Holdings*, rejection of a contract leaves "intact the rights the counterparty has received under the contract."  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 378-9 (2019).  Because "rejection does not terminate the contract," but rather constitutes a material breach of

---

[5] By this Objection, Maxeon takes no position as to whether the Brand Framework Agreement is an executory contract or unexpired lease capable of assumption or rejection pursuant to Bankruptcy Code section 365, and expressly reserves all rights with respect thereto.

ny-2779578
16903695/1

such contract, the non-debtor counterparty "retains the rights it has received under the agreement. As after a breach, so too after a rejection, those rights survive." *Id.*, at 381. Here, the Debtors granted Maxeon a consent right over the sale of the SunPower Marks, which consent right will continue to survive if and when the Debtors seek to reject the Brand Framework Agreement.

11.    *Third*, separate and apart from the impact of a hypothetical rejection on the terms of the Brand Framework Agreement, Bankruptcy Code section 363 does not authorize the Debtors to sell the SunPower Marks free and clear of (a) Maxeon's consent rights over such sale or (b) its option pursuant to the ROFR to acquire the marks upon discontinued use or abandonment. The relevant provisions of section 363 of the Bankruptcy Code permit a sale of property "free and clear of any interest in such property" ***only if*** the holder of such interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5).[6] The Third Circuit has interpreted the phrase "interest in property" expansively to include all "obligations that may flow from ownership of the property." *In re Trans World Airlines, Inc.*, 322 F.3d 283, 289 (3d Cir. 2003) (citation omitted).

12.    Maxeon's consent rights and ROFR both constitute interests in property, and under applicable non-bankruptcy law, Maxeon could not be compelled to accept money damages for a breach of either. Instead, Maxeon would be entitled to specific performance of both. *See, e.g., Cheese Shop Int'l, Inc. v. Steele*, 311 A.2d 870, 871 (Del. 1973) ("[I]t becomes impossible to measure the dollar value of the franchisor's loss of goodwill in an ongoing successful business arising from the non-performance of trademark provisions . . . ."); *Digital Satellite Connections, LLC v. Dish Network Corp.*, Civil Action No. 13-CV-02934-REB-CBS, 2015 WL 5579556, at *5

---

[6] Bankruptcy Code section 363(e) also entitles Maxeon to adequate protection of its interest in the Brand Framework Agreement and the SunPower Marks. Maxeon reserves all rights with respect thereto.

(D. Colo. Sept. 22, 2015) ("[A]n award of specific performance is the only way to provide to Dish the things to which it is entitled under the specific terms of the Trademark Agreement."). Accordingly, the SunPower Marks cannot be sold free and clear of such rights absent Maxeon's consent.

13.     *Finally,* although the Proposed Schedule does not require the Debtors to publicly announce the winning bidder for their assets until September 11, 2024, the Proposed Schedule nonetheless requires that parties file any objections to the sale or the winning bid by 5:00 p.m. Eastern Time on September 12, giving parties as little as 17 hours to review the terms of the winning bid, consult with relevant stakeholders, and file an objection to the terms of such bid with the Court.  In fact, given that the Proposed Schedule permits the Debtors to file the notice of winning bidder "as soon as reasonably practicable" after September 11, it is possible parties may have even *less* time to file an objection.  Respectfully, the Proposed Schedule must be modified to give parties at least five business days from the announcement of the winning bid to file an objection to the proposed sale.

## **<u>RESERVATION OF RIGHTS</u>**

14.     This Objection is without prejudice to, and Maxeon hereby fully reserves, its right to raise additional arguments in respect of the Motion, the Bid Procedures, the proposed sale, and any proposed assumption, assignment, or rejection of the Brand Framework Agreement (or other contracts to which the Debtors and Maxeon and its affiliates are party).  The Objection is also without prejudice to Maxeon's right to seek other appropriate relief, including adequate protection of its interests in the Brand Framework Agreement, the SunPower Marks, and any other property of the estate in which it has an interest.

## CONCLUSION

WHEREFORE, Maxeon respectfully requests that this Court enter an order (i) denying the

Motion, or, alternatively, modifying the terms of the Bid Procedures in a manner consistent with

the relief requested herein, and (ii) granting such other and further relief as this Court deems

appropriate.

Dated:  August 22, 2024
Wilmington, Delaware


/s/ *Eric J. Monzo*
**MORRIS JAMES LLP**
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: emonzo@morrisjames.com
E-mail: bkeilson@morrisjames.com

*Counsel to Maxeon Solar Technologies, Ltd.*

**MORRISON & FOERSTER LLP**
Benjamin W. Butterfield (*pro hac vice* forthcoming)
Andrew Kissner (*pro hac vice* forthcoming)
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
bbutterfield@mofo.com
akissner@mofo.com

*Counsel to Maxeon Solar Technologies, Ltd.*

ny-2779578
16903695/1