**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AZZUR GROUP HOLDINGS LLC, *et al.*,[1] | Case No. 25-10342 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Related D.I.: 11, 19, 63, 336, 392** |

**FINAL ORDER (I) AUTHORIZING DEBTORS AND
DEBTORS IN POSSESSION TO (A) OBTAIN POSTPETITION
FINANCING, (B) GRANT LIENS AND SUPER-PRIORITY CLAIMS, AND
(C) GRANT ADEQUATE PROTECTION; (II) MODIFYING THE
AUTOMATIC STAY; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2) and 364(c)(3), 364(d), 503, 506, 507 and 552 of 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 9013 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules 2002-1, 4001-1, 4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), initially seeking interim relief as granted in the *Order (I) Authorizing Debtors and Debtors in Possession to (A) Obtain Postpetition Financing, (B) Grant Liens and Super-Priority Claims, and (C) Grant Adequate Protection; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [D.I. 63], as amended by the *First Amendment to Interim Order (I) Authorizing Debtors and Debtors in*

---

[1] A list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/Azzur. The Debtors' headquarters and the mailing address for the Debtors is 330 South Warminster Road, Suite 341, Hatboro, PA 19040.

[2] Capitalized terms used but not defined in this Final Order shall have the same meanings ascribed to such terms in the Motion or the DIP Credit Agreement (as defined herein), as applicable.

*Possession to (A) Obtain Postpetition Financing, (B) Grant Liens and Super-Priority Claims, and (C) Grant Adequate Protection; (II) Modifying the Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief* [D.I. 336] (as amended, the "Interim Order"), and now seeking entry of this final order (the "Final Order") providing, among other things:

(1)      authorization for the Debtors to enter into (a) the *Ratification and Amendment Agreement*, as may be amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth therein, dated as of March 4, 2025, by and among Manufacturers and Traders Trust Company (the "DIP Lender") and the Debtors (the "DIP Credit Agreement"), in the form annexed hereto as **Exhibit A**, and (b) the Loan Documents (as defined in the DIP Credit Agreement and, together with the DIP Credit Agreement, referred to herein as the "DIP Loan Documents");

(2)      authorization for Debtors to obtain, on a joint and several basis, post-petition loans, advances, and other financial accommodations in accordance with the terms and conditions set forth in the DIP Credit Agreement, by and among the Debtors and the "DIP Lender, and the other Loan Documents (as defined in the DIP Credit Agreement and referred herein as the DIP Loan Documents, and in accordance with this Final Order, secured by perfected senior priority security interests in and liens on the Collateral (as defined below) pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code (subject and subordinate only to the Carve-Out and the Permitted Liens (each as defined below));

(3)      authorization for the Debtors to remit all collections, asset proceeds and payments, (i) first to the Manufacturers and Traders Trust Company, as lender to the Pre-Petition Loan Agreement (as defined below) (the "Pre-Petition Lender"), for application, or deemed application to all Pre-Petition Obligations (as defined below) until such obligations are fully repaid in

accordance with the Pre-Petition Loan Agreement (as defined below) and other Pre-Petition Loan Documents (as defined below), and (ii) then to the DIP Lender for application and repayment of all Obligations in accordance with the DIP Credit Agreement and the other DIP Loan Documents, and to convert or deem all Pre-Petition Obligations with respect to Letters of Credit issued or provided, as applicable, under the Pre-Petition Loan Agreement to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents;

(4)      authorization for the Debtors to grant superpriority administrative claim status, pursuant to section 364(c)(1) of the Bankruptcy Code, to the DIP Lender in respect of all Obligations (subject and subordinate to the Carve-Out (as defined below));

(5)      as set forth below, approval of certain stipulations by the Debtors as set forth in this Final Order in connection with the Pre-Petition Loan Agreement and the Pre-Petition Loan Documents;

(6)      as set forth below, authorization to provide adequate protection to the Pre-Petition Lender;

(7)      authorization, with Pre-Petition Lender and the DIP Lender consent, to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) subject to the terms of this Final Order;

(8)      approval of (a) the roll up and conversion of any remaining Pre-Petition Obligations other than the Remaining Pre-Petition Obligation (as defined below) into DIP Obligations (as defined below); and (b) the waiver of the Debtors' right to assert claims to surcharge against the Collateral (as defined below) pursuant to sections 506(c) and 552(b) of the Bankruptcy Code;

(9)      the modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order to the extent hereinafter set forth; and

(10)      the scheduling of a final hearing on the Motion ("Final Hearing") to consider entry of a final order (the "Final Order") authorizing, among other things, the borrowing under the DIP Loan Documents on a final basis, as set forth in the Motion and the DIP Credit Agreement; and

(11)      related relief.

The initial hearing on the Motion having been held by this Court on March 4, 2025 (the "Interim Hearing") and the final hearing on the Motion having been held by this Court on April 11, 2025 (the "Final Hearing"), and upon the record made by the Debtors at the Interim Hearing and the Final Hearing, including the Motion, the *Declaration of M. Benjamin Jones, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), and the filings and pleadings in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), the Court having found that the relief requested in the Motion is in the best interests of Debtors, their estates (as defined under section 541 of the Bankruptcy Code, the "Estates"), their creditors and other parties in interest; and appropriate notice of the Motion, the relief requested therein, and the Final Hearing (the "Notice") was due and proper under the circumstances; and the Notice having been served by the Debtors in accordance with Bankruptcy Rule 4001 on (i) counsel to the Pre-Petition Lender and DIP Lender; (ii) the office of the United States Trustee for Region 3 (the "U.S. Trustee"), (iii) the holders of the thirty (30) largest unsecured claims, on a consolidated basis, against the Debtors' Estates (the "30 Largest Unsecured Creditors"), (iv) the Internal Revenue Service and applicable state taxing authorities, (v) any party that has asserted or may assert a lien on the Debtors' assets; (vi) the Debtors'

landlords, and (vii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 (collectively, the "Noticed Parties") and the opportunity for a hearing on the Motion was appropriate and no other notice need be provided; and after due deliberation sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF THE DECLARATIONS, AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.     Petition Date.  On March 2, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Code for the District of Delaware (the "Court") thereby commencing these Chapter 11 Cases.

B.     Debtors in Possession. The Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.

C.     Disposition.  The Motion is hereby granted on a final basis in accordance with and to the extent set forth in this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, resolved, or settled are hereby denied and overruled.

D.     Jurisdiction and Venue.  The Court has core jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334, as well as the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware*, dated February 29, 2012.  Venue of these Chapter 11 Cases and the proceedings on the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for relief sought in the Motion are sections 105, 361, 362, 363, 364, 503, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rule 4001-2.

E.    Committee Formation.  On March 14, 2024, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

F.    Notice.  Proper, timely, adequate, and sufficient notice of the Motion and the Final Hearing have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Final Hearing or the entry of this Final Order shall be required.  No further notice of, or hearing regarding, the entry of this Final Order and the relief set forth herein is necessary or required.

G.    Acknowledgments and Agreements of Debtors.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of the Committee or other parties in interest as and to the extent set forth in Section 4.1 of this Final Order, the Debtors, on their behalf and on behalf of their Estates, admit, stipulate, acknowledge and agree that (collectively, the "Stipulations"):

(i)    Pre-Petition Loan Documents.  Prior to the Petition Date, the Pre-Petition Lender made loans and advances and provided other financial accommodations to Debtors pursuant to the terms and conditions set forth in (1) the Pre-Petition Loan Agreement (as defined in the DIP Credit Agreement and referred to herein as the "Pre-Petition Loan Agreement"); and (2) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of the Pre-Petition Lender in connection with the Pre-Petition Loan Agreement, including, without

limitation, all security agreements, notes, guarantees, mortgages, Uniform Commercial Code financing statements and all other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the Pre-Petition Loan Agreement, as all of the same have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Loan Documents").  Copies of the operative Pre-Petition Loan Documents are on file with counsel to the Debtors and available to the Court, the U.S. Trustee, and any other parties in interest in these Chapter 11 Cases upon reasonable request.

    (ii)  Pre-Petition Loan Obligations.  As of the Petition Date, the Debtors were indebted to the Pre-Petition Lender under the Pre-Petition Loan Documents in respect of Advances under the Line, Letters of Credit, Advances under the Loan Limit Line, Supplemental Line Advances, and other Obligations (each as defined in the Pre-Petition Loan Agreement) in an aggregate outstanding principal amount of not less than $62,219,048.81, plus interest accrued and accruing thereon, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto, each in accordance with the terms of the Pre-Petition Loan Agreement (collectively, the "Pre-Petition Obligations", as such term is further defined in the DIP Credit Agreement).  As of the Petition Date, the Pre-Petition Obligations include Letters of Credit in the aggregate amount of approximately $1,335,507.66 issued and outstanding under the Pre-Petition Credit Agreement. The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtors, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law or otherwise. The Debtors do not possess, shall not assert, hereby forever release,

and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description, arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Final Order, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations or liens and security interest securing the same described in clause (F)(iv) below.

(iii)       Pre-Petition Lender.   As of the Petition Date, no claims, objections, challenges, counterclaims, causes of action and/or choses in action, defenses or setoff rights of any Debtor exist against the Pre-Petition Lender under the Pre-Petition Loan Agreement and other Pre-Petition Loan Documents and the Pre-Petition Obligations under any contract or tort (including, without limitation, lender liability) theories of recovery, whether arising at law or in equity, including any recharacterization, subordination, avoidance or other claim arising under or pursuant to Section 105 or Chapter 5 (including, without limitation, Sections 510, 544, 547, 548, 549 or 550) of the Bankruptcy Code or under any other similar provisions of applicable state or federal law, and to the extent any claims, objections, challenges, counterclaims, causes of action and/or choses in action, defense or setoff rights are deemed to have existed as to any of the foregoing, the Debtors hereby forever waive, discharge and release any right they may have to challenge any of the Pre-Petition Obligations, and to assert any setoff rights, defenses, claims, objections, challenges, counterclaims, causes of action and/or choses of action whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Pre-Petition Lender and its affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, in each case in connection with any matter related to the Pre-Petition Obligations and the Pre-Petition Loan Documents, or the financing and transactions contemplated thereby, or the Pre-Petition Collateral (as defined below).

8

(iv)        Pre-Petition Collateral.  As of the Petition Date, the Pre-Petition Obligations were  secured pursuant to the Pre-Petition Loan Documents by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by the Debtors to the Pre-Petition Lender under the Pre-Petition Loan Documents, upon all of the Pre-Petition Collateral (as defined in the DIP Credit Agreement and hereinafter referred to as the "Pre-Petition Collateral"), subject only to the liens (as defined in the Pre-Petition Loan Agreement) specifically permitted under Section 7.9 of the Pre-Petition Loan Agreement to the extent that such security interests, liens or encumbrances are (1) valid, perfected, and unavoidable senior priority liens and security interests existing as of the Petition Date securing valid, binding and unavoidable debt permitted under the Pre-Petition Loan Documents, and (2) senior to and have not been and are not (nor will be) subject to being subordinated to the Pre-Petition Lender's liens on and security interests in the Pre-Petition Collateral under the Pre-Petition Loan Documents or otherwise avoided, and, in each instance, only for so long as and to the extent that such encumbrances are and remain senior (hereinafter referred to as the "Permitted Liens").  As of the date hereof, none of the Debtors possess (or will assert) any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Lender's liens, claims or security interests in the Pre-Petition Collateral.

(v)        Proof of Claim.  The acknowledgment by the Debtors of the Pre-Petition Obligations and the liens, rights, priorities and protections granted to or in favor of the Pre-Petition Lender in respect of the Pre-Petition Collateral as set forth herein and in the Pre-Petition Loan Documents shall be deemed a timely filed proof of claim on behalf of the Pre-Petition Lender in each of these Chapter 11 Cases.

H.    Findings Regarding the Post-Petition Financing and Use of Cash Collateral.

(i)    Request for Post-Petition Financing and Use of Cash Collateral.    The
Debtors seek authority on a final basis to (a) enter into the DIP Loan Documents on the terms
described in the Motion, this Final Order, and in the DIP Loan Documents, and (b) use Cash
Collateral on the terms described in this Final Order to administer these Chapter 11 Cases and fund
their operations in accordance with the DIP Budget (as defined herein) and the DIP Loan
Documents.

(ii)    Need for Post-Petition Financing and Use of Cash Collateral.    The Debtors
do not have sufficient available sources of working capital, including Cash Collateral, to operate
their businesses in the ordinary course of business and fund these Chapter 11 Cases without access
to the financing provided under the DIP Credit Agreement as requested in the Motion and the
authority to use Cash Collateral pursuant to the terms of this Final Order.    The Debtors' ability to
maintain business relationships with their vendors, suppliers and customers, to pay their
employees, and to otherwise fund their operations and these Chapter 11 Cases is essential to the
Debtors' continued viability as the Debtors seek to maximize the value of the assets of the Estates
for the benefit of all creditors of the Debtors.    The ability of the Debtors to obtain sufficient
working capital and liquidity through the proposed post-petition financing arrangements with the
DIP Lender as set forth in this Final Order, the DIP Credit Agreement, and other DIP Loan
Documents, as applicable, is vital to the preservation and maintenance of the going concern value
of each Debtor.    Immediate and irreparable harm will result to the Debtors and their Estates if
financing is not obtained.    The extensions of credit under the DIP Credit Facility are fair and
reasonable, and the Debtors' entry into the DIP Credit Facility reflects the sound exercise of the
Debtors' business judgment and is supported by reasonably equivalent value and fair

consideration.  Accordingly, the Debtors have a need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of their businesses, minimize the disruption of their business operations, and preserve and maximize the value of the assets of the Debtors' bankruptcy Estates.

(iii)    Consent.  Absent an order of this Court and the provisions of adequate protection set forth herein, consent by the Pre-Petition Lender is required for the Debtors' use of Cash Collateral and other Pre-Petition Collateral.  The Pre-Petition Lender has consented to the Debtors' use of Cash Collateral and the other Prepetition Collateral, and the Debtors' entry into the DIP Credit Facility in accordance with and subject to the terms and conditions of this Final Order.

(iv)    No Credit Available on More Favorable Terms.  The DIP Facility is the best source of debtor in possession financing available to the Debtors. Given their current financial condition, financing arrangements, and capital structure, and the circumstances of these Chapter 11 Cases, the Debtors are unable to procure financing in the form of unsecured credit allowable as an administrative expense under sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a superpriority administrative expense, junior liens on encumbered property of the Estates, or liens on property of the Estates not subject to a lien pursuant to sections 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code.  The Debtors have been unable to procure the necessary financing on terms more favorable, taken as a whole, than the financing offered by the DIP Lender pursuant to the DIP Loan Documents.

(v)    DIP Budget.  The Debtors prepared and delivered to DIP Lender an initial 13-week budget (the "Initial Budget").  As of the date of determination, the Initial Budget or any updated budget that becomes the "DIP Budget" in accordance with and as defined in the DIP Credit

Agreement and used herein, the "DIP Budget", a copy of which is attached to this Final Order in a form approved by the DIP Lender as **Exhibit B**.  Such DIP Budget was prepared by the Debtors and has been thoroughly reviewed by the Debtors and their management, with the assistance of their advisors, and sets forth, among other things, the projected cash receipts and disbursements of the Debtors for the periods covered thereby.  The Debtors represent that the DIP Budget is achievable, in accordance with the terms of the DIP Loan Documents and this Final Order, and will allow the Debtors to operate during these Chapter 11 Cases.  The DIP Lender is relying upon the Debtors' agreement to comply with the DIP Budget, subject to permitted variances as provided for in the DIP Credit Agreement.  Other than as expressly set forth in this Final Order, the consent of the DIP Lender to the DIP Budget shall not be construed as consent to the use of any cash after the occurrence of an Event of Default (as defined in the applicable DIP Loan Documents), regardless of whether the aggregate funds shown on the DIP Budget have been expended.

(vi)     Application of Proceeds of DIP Collateral; Integrated Transaction.  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Credit Facility, and the authorization to use Cash Collateral, the Debtors and the DIP Lender have agreed that the proceeds of Collateral, including without limitation, all cash received at the closing of any sale(s) of all or substantially all of the Debtors' assets, shall be applied in accordance with Section 1.5 of this Final Order.  The extension of the DIP Credit Facility and the repayment of the Pre-Petition Obligations are part of an integrated transaction.

(vii)     Business Judgment and Good Faith Pursuant to Section 364(e).  Based on the Motion, the First Day Declaration, and the record presented to the Court at the Interim Hearing and the Final Hearing, (a) the terms of the DIP Credit Agreement and the other DIP Loan Documents and this Final Order, including the fees, expenses, and other charges paid and to be

paid thereunder and in connection thereunder, (b) the adequate protection authorized by the Final Order and DIP Loan Documents, and (c) the terms on which the Debtors may continue to use the Collateral (including Cash Collateral), in each case pursuant to this Final Order and the DIP Loan Documents, are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of their business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration, and represent the best financing and terms available under the circumstances. The terms and conditions of the use of Cash Collateral, the DIP Credit Agreement and the other DIP Loan Documents and this Final Order have been negotiated in good faith and at arm's-length by and among the Debtors and DIP Lender with all parties being represented by counsel. Any credit extended under the terms of this Final Order shall be deemed to have been extended in good faith by the DIP Lender, as that term is used in section 364(e) of the Bankruptcy Code.

(viii)    Good Cause. Good cause has been shown for entry of this Final Order, and the entry of this Final Order is in the best interests of the Debtors, their creditors, and their Estates. Entry of this Final Order will, among other things, provide the Debtors with the necessary liquidity to (1) minimize disruption to the Debtors' businesses, employees, and on-going operations, (2) preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and (3) avoid harm to the Debtors, their creditors, their businesses, their employees, and their assets.

Based upon the foregoing findings of fact, the Motion, and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT**:

Section 1.       Authorization and Conditions to Financing.

    1.1  Motion Granted.  The Motion is GRANTED on a final basis.  Any objection to the entry of this Final Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

    1.2  Authorization to Borrow and Use Loan Proceeds.  The Debtors are hereby authorized and empowered on a final basis to borrow and obtain (i) Supplemental DIP Line Advances up to the principal amount of $8,500,000 and (ii) other revolving Advances up to the principal amount of $15,000,000 (including in respect of Letters of Credit up to the principal amount of $1,335,507.660), for a total principal amount of up to $23,500,000 (in each case plus applicable interest, premiums, fees (including attorneys' fees and legal expenses), costs, expenses, charges and other amounts payable hereunder and under the DIP Loan Documents) all pursuant to the terms and conditions of this Final Order, the DIP Credit Agreement, the other DIP Loan Documents, as may be made available to Debtors by DIP Lender in accordance with the Initial Budget and the terms and conditions set forth in the DIP Credit Agreement, the other DIP Loan Documents and this Final Order.  Subject to the terms and conditions contained in this Final Order and the DIP Loan Documents, the Debtors shall use the proceeds of the Revolving Loans and letters of credit (if any) and other credit and financial accommodations provided by DIP Lender under the DIP Credit Agreement and the other DIP Loan Documents solely for payment of expenses or as set forth in the DIP Budget and for amounts owing to DIP Lender in accordance with the terms and conditions of the DIP Loan Documents and this Final Order.

    1.3  Financing Documents.

      (a)  Authorization.  The Debtors are hereby authorized on a final basis to enter into, execute, deliver, perform, and comply with all of the terms, conditions and covenants

of the DIP Credit Agreement and the other DIP Loan Documents, pursuant to which, subject to Section 4.1 below, *inter alia*, each Debtor ratifies, reaffirms, extends, assumes, adopts, amends, and restates the Pre-Petition Loan Agreement and the other Pre-Petition Loan Documents to which it is a party, and the Pre-Petition Obligations, which include, without limitation, all Pre-Petition (i) Advances under the Line, (ii) Letters of Credit, (iii) Advances under the Loan Limit Line, (iv) Advances under the Supplemental Line, and (v) all other financial accommodations provided to Debtors by the DIP Lender and the Pre-Petition Lender, pursuant to the Pre-Petition Loan Documents (each term as defined in the Pre-Petition Loan Documents), have been since entry of the Interim Order, as funds have been borrowed and repaid, subject to Section 4.1, gradually rolled into, and deemed for all purposes a part of, the DIP Obligations and shall be deemed to have been incurred under the DIP Credit Agreement; provided, that subject to Section 4.1, (i) upon entry of the Interim Order, all Letters of Credit issued under the Pre-Petition Credit Agreement were automatically deemed to have been issued under the DIP Credit Agreement and constitute DIP Obligations; and (ii) upon entry of this Final Order, all remaining Pre-Petition Obligations, other than the Remaining Pre-Petition Obligation, shall, to the extent not having already been rolled up and converted into DIP Obligations in accordance with the Interim Order, be automatically rolled up and converted into DIP Obligations.  Upon execution and delivery of the DIP Credit Agreement and the other DIP Loan Documents, such agreements and documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor in accordance with the terms of such agreements, documents and this Final Order.  Except as provided herein (including Section 4.1), no obligation, payment, transfer or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable state, federal or

foreign law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or foreign law) or be subject to any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims or any other challenge under the Bankruptcy Code or any applicable law, rule or regulation by any person or entity.

(b)    Approval; Evidence of Borrowing Arrangements.    All terms, conditions and covenants set forth in the DIP Loan Documents (including, without limitation, the DIP Credit Agreement) are approved on a final basis.  All such terms, conditions and covenants shall be sufficient and conclusive evidence of (a) the borrowing arrangements by and among the Debtors and DIP Lender, and (b) each Debtor's agreement to all of the terms, conditions, and covenants of the DIP Credit Agreement and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, fees and other expenses, including, without limitation, all of DIP Lender's consultant fees, professional fees, attorney fees and legal expenses, as more fully set forth in the DIP Loan Documents and Section 5.12 of this Final Order.

(c)    Amendment.  Subject to the terms and conditions of the DIP Credit Agreement and the other DIP Loan Documents, Debtors and DIP Lender may amend, modify, supplement or waive any provision of the DIP Loan Documents (a "DIP Loan Amendment") without further approval or order of the Court, so long as (a) such DIP Loan Amendment is not material (for purposes hereof, a "material" DIP Loan Amendment shall mean any DIP Loan Amendment that operates to increase the interest rate other than as currently provided in the DIP Loan Documents, increase the Maximum Credit (as defined in the DIP Credit Agreement),

increase or add an additional early termination fee, prepayment or repayment premium, add specific new events of default or enlarge the nature and extent of default remedies available to DIP Lender following an event of default) and is undertaken in good faith by the DIP Lender and the Debtors (each, a "Material DIP Loan Amendment"); (b) the Debtors provide prior written notice of the DIP Loan Amendment (the "DIP Loan Amendment Notice") to (i) the U.S. Trustee and (ii) counsel to any Committee, or in the event no such Committee is appointed at the time of such DIP Loan Amendment, the 30 Largest Unsecured Creditors; (c) the Debtors file the DIP Loan Amendment Notice with the Court; and (d) no objection to the DIP Loan Amendment is filed with the Court within five (5) business days from the date the DIP Loan Amendment Notice is filed with the Court in accordance with this Section.  Any Material DIP Loan Amendment to the DIP Loan Documents must be approved by the Court to be effective.

1.4     Payment of Pre-Petition Debt.  The Debtors are authorized to repay all Pre-Petition Obligations in accordance with the Pre-Petition Loan Agreement, the DIP Credit Agreement, the other DIP Loan Documents, the Interim Order and this Final Order, including, without limitation, Sections 1.5 and 1.6 of this Final Order.

1.5     Application of Payments and Collateral Proceeds; Roll-Up.

(a)     The Debtors are authorized to make all payments and transfers of Estate property to the Pre-Petition Lender and DIP Lender as provided for, permitted and/or required under the Pre-Petition Loan Agreement, DIP Credit Agreement and the other DIP Loan Documents, and any such payments and transfers shall not be avoidable or recoverable from the Pre-Petition Lender or DIP Lender under sections 547, 548, 550, 553 or any other section of the Bankruptcy Code, or by reason of any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral,

including without limitation, all cash proceeds generated from the sale of Collateral, received by Pre-Petition Lender or DIP Lender, and any other amounts or payments received from any Debtor by Pre-Petition Lender or DIP Lender in respect of the DIP Obligations, may be applied or deemed to be applied as and when received by the Pre-Petition Lender and DIP-Lender, first to the repayment in full of the Pre-Petition Obligations, other than a portion of such Pre-Petition Obligations in the amount of $1 million (such portion, the "Remaining Pre-Petition Obligation"), and then to the repayment of the remaining DIP Obligations, all in accordance with the Pre-Petition Loan Agreement, DIP Credit Agreement, the other DIP Loan Documents, and this Final Order; provided that, for the avoidance of doubt, the repayment of any Pre-Petition Obligations pursuant to this Section 1.5(a) shall, in all respects be subject to Section 4.1(b) and this Court's authority to fashion an appropriate remedy in the event of a successful Challenge.

(b)    Subject to Section 4.1(b), (i) all Pre-Petition Obligations other than the Remaining Pre-Petition Obligation, including, without limitation, all Pre-Petition Obligations arising in respect of Advances under the Line, Letters of Credit, Advances under the Loan Limit Line, Advances under the Supplemental Line, and other Obligations (each as defined in the Pre-Petition Loan Agreement) together with all accrued and unpaid interest, fees, costs, and other changes accrued and accruing thereon, shall be substituted and exchanged automatically for (and repaid by) the DIP Loans (as defined in the DIP Credit Agreement) extended under and pursuant to the DIP Credit Facility without any further action by the Debtors, the Court or any other party, and shall constitute and be deemed to be Obligations (as defined in the DIP Credit Agreement) under the DIP Credit Facility as of such date; and (ii) all Letters of Credit issued or provided, as applicable, under the Pre-Petition Loan Agreement shall be deemed to have been issued or provided, as applicable, under the DIP Credit Agreement and the other DIP Loan Documents.

(c)     Without limiting the generality of Sections 1.5(a) and 1.5(b), the Debtors are authorized without further order of this Court to pay or reimburse the DIP Lender for all costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by the DIP Lender in connection with the financing transactions as provided in this Final Order and the DIP Loan Documents, all of which shall be and are included as part of the principal amount of the Obligations and secured by the Collateral (as defined herein); provided that any such legal fees shall be paid only in accordance with the procedures set forth in Section 5.12 of this Final Order.

1.6     Continuation of Pre-Petition Procedures.  Except to the extent expressly set forth in the DIP Loan Documents, all pre-petition practices and procedures for the payment and collection of proceeds of the Collateral, the turnover of cash, the delivery of property to the Pre-Petition Lender, and any lockbox or blocked depository bank account arrangements, are hereby approved, ratified and shall continue without interruption after the commencement of the Chapter 11 Cases and are further approved and deemed applicable for the payment and collection of proceeds of the Collateral, the turnover of cash, and the delivery of property to the DIP Lender.

Section 2.     Post-Petition Lien; Superpriority Administrative Claim Status.

2.1     Post-Petition Lien.

(a)     Post-Petition Lien Granting.  To secure the prompt payment and performance of any and all Obligations (as defined in the DIP Credit Agreement) of the Debtors to the DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, DIP Lender shall have and is hereby granted, effective as of the Petition Date, valid and perfected first-priority security interests and liens, superior to all other liens, claims or security interests that any creditor of any of the Debtors' Estates may have (but subject and subordinate to the Carve-Out (as defined below) and the Permitted Liens), in and upon all of the

Collateral (as defined in the DIP Credit Agreement and referred to herein as the "Collateral"), provided however, the Collateral shall not include (i) any property or proceeds recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code ("Avoidance Actions"), actions against insiders if any, or Claims against officers and directors if any; or (ii) any of the Debtors' unexpired real property leases to the extent that such unexpired leases prohibit the non-consensual grant of security interests or liens in such unexpired leases (in which case, the Collateral shall include the proceeds of such unexpired leases). In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of DIP Obligations secured by such Collateral after satisfaction of the DIP Obligations of Debtors to DIP Lender, shall (subject to the Permitted Liens and Claims) constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by Debtors, and the Diminution in Value (as defined herein), of the Collateral existing on the Petition Date.

(b)     Lien Priority in Collateral. The liens and security interests of DIP Lender granted under the DIP Loan Documents and this Final Order in the Collateral securing all Obligations shall be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364 or any other section of the Bankruptcy Code or other applicable law; provided, however, that DIP Lender's liens on and security interests in the Collateral shall be subject and subordinate only to (a) the Carve-Out, and (b) Permitted Liens.

(c)     Right of Repayment. The right to repayment of DIP Lender granted under the DIP Loan Documents and this Final Order from the sale or other disposition of the

Collateral or any proceeds thereof shall be first and senior in priority to all other rights of repayment of every kind, nature and description, subject and subordinate only to (a) the Carve-Out (as defined herein), and (b) Permitted Liens.

(d)     <u>Post-Petition Lien Perfection.</u>  This Final Order shall be sufficient and conclusive notice and evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording, control or possession of the Collateral, or other act to validate or perfect such security interest or lien, including without limitation, control agreements with any financial institution(s) party to a Control Agreement with respect to any Deposit Account or Securities Account (each as defined in the DIP Credit Agreement) held by such financial institution(s) or other depository account consisting of a "<u>Perfection Act</u>".  Notwithstanding the foregoing, if DIP Lender, shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, then DIP Lender is authorized to perform such act, and the Debtors are authorized to perform such act to the extent necessary or required by DIP Lender, which act or acts shall be deemed to have been accomplished as of the Petition Date, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  DIP Lender may choose to file, record or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Order in accordance with applicable law.  Should DIP Lender so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability,

attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Order.

(e)     Nullifying Pre-Petition Restrictions to Post-Petition Financing. Notwithstanding anything to the contrary contained in any pre-petition agreement, contract, lease, document, note or instrument to which any Debtor is a party or under which any Debtor is obligated, except as otherwise permitted under the DIP Loan Documents, any provision that restricts, limits or impairs in any way any Debtor from granting DIP Lender security interests in or liens upon any of the Debtors' assets or properties (including, among other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual arrangements to which any Debtor is a party) under the DIP Loan Documents or this Final Order, as applicable, or otherwise entering into and complying with all of the terms, conditions and provisions hereof or of the DIP Loan Documents, shall not (a) be effective and/or enforceable against any such Debtor(s) or DIP Lender, as applicable, to the extent the lien attaches to the proceeds thereof, or (b) adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to DIP Lender pursuant to this Final Order or the DIP Loan Documents, in each case, to the maximum extent permitted under the Bankruptcy Code and other applicable law that would not render any unexpired lease or executory contract non-assumable or non-assignable pursuant to section 365 of the Bankruptcy Code.

2.2     Superpriority Administrative Expenses.

(a)     DIP Loans.  For all DIP Obligations (including, without limitation, subject to Section 4.1, the Pre-Petition Obligations rolled into the DIP Obligations in accordance with the terms hereof) now existing or hereafter arising pursuant to this Final Order, the DIP Loan Documents or otherwise, DIP Lender is granted an allowed superpriority administrative claim

pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtors (other than the Carve-Out), whether now in existence or hereafter incurred by Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113 or 1114 of the Bankruptcy Code (other than the Carve-Out), which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (the "DIP Loan Superpriority Claim"), except any property or proceeds of Avoidance Actions, actions against insiders if any, or Claims against officers and directors if any.

        2.3    Carve-Out.

        (a)    As used in this Final Order, the "Carve-Out" means the sum of:

        (i)    all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under 28 U.S.C § 1930(a);

        (ii)    all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (the fees and expenses set forth in Sections 2.3(a)(i) and (ii) are defined as the "Carve-Out Expenses");

        (iii)    subject to the terms and conditions of this Final Order, Allowed Professional Fees (as defined below) incurred during the period commencing on the Petition Date and ending on the Trigger Date (as defined below) (the "Pre-Trigger Date Period") by attorneys, accountants and other professionals retained by the Debtors and any Committee(s) under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "Professionals"), *provided* that the aggregate amount of such Allowed Professional Fees included in the Carve-Out pursuant

to this clause (iii) shall not exceed the line item amounts for Professionals as set forth in the DIP Budget covering the Pre-Trigger Date Period, less the sum of (A) all Allowed Professional Fees incurred during the Pre-Trigger Date Period and paid at any time, and (B) any retainers held by any Professional (the "Pre-Trigger Date Professional Fee Carve-Out"); and

(iv)    subject to the terms and conditions contained in this Final Order, Allowed Professional Fees incurred by Professionals incurred beginning on the first business day after the Trigger Date in an aggregate amount not to exceed $500,000 (the "Post-Trigger Date Professional Fee Carve-Out"; and together with the Pre-Trigger Date Professional Fee Carve-Out, collectively, the "Professional Fee Carve-Out").  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or the DIP Loan Documents: (x) the Carve-Out shall be senior to all liens and claims securing the DIP Obligations, the Replacement Liens, the DIP Loan Superpriority Claim, the Superpriority Claim, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Pre-Petition Obligations; and (y) nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein, and nothing herein shall be construed to limit the ability of Professionals from obtaining payment of allowed fees and expenses from property of the Estates.

(b)    For purposes of this Final Order, (a) the term "Allowed Professional Fees" shall mean the unpaid and outstanding fees and expenses of Professionals (i) actually incurred on or after the Petition Date, and (ii) allowed and payable at any time by any order of the Court pursuant to sections 326, 328, 330 or 331 of the Bankruptcy Code (but excluding any transaction, restructuring, completion, success or similar fees); and (b) the term "Trigger Date" shall mean the date upon which DIP Lender provides written notice to the Debtors, the Committee,

and the U.S. Trustee following the occurrence and during the continuation of an Event of Default, acceleration of the DIP Obligations, and election to fund the Post-Trigger Date Professional Fee Carve-Out.  In the event that the Trigger Date occurs prior to the end of any week set forth in the DIP Budget, then for purposes of calculating the portion of the Pre-Trigger Date Professional Fee Carve-Out available for such week, the amount of the "professional fee" line item in the DIP Budget for such week shall be multiplied by a fraction, the numerator of which shall be the number of days in such week prior to the Trigger Date, and the denominator of which shall be 7.

For the avoidance of doubt, (i) so long as a Carve-Out Trigger Notice has not been issued, the Debtors shall be permitted to pay fees to estate professionals and reimburse expenses incurred by estate professionals that are allowed Court order and payable under sections 328, 330 and 331 of the Bankruptcy Code including any administrative order concerning payment of interim fees and expenses as the same may be due and payable to the extent set forth in the DIP Budget and in accordance with the DIP Credit Agreement and this Final Order; and (ii) nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

(c)    Excluded Professional Fees.  Notwithstanding anything to the contrary in this Final Order, neither the Carve-Out nor the proceeds of Collateral or any DIP Loans, Letters of Credit or any other credit or financial accommodations provided under or in connection with the DIP Loan Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any party, including any Debtor, any Committee, or any Professional in connection with any of the following:

(i)    an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order,

judgment, determination or similar relief: (A) challenging the legality, validity, priority, perfection, or enforceability of (1) the Pre-Petition Obligations or Pre-Petition Lender's liens on and security interests in the Pre-Petition Collateral or (2) the Obligations or DIP Lender's liens on and security interests in the Collateral; (B) invalidating, setting aside, avoiding or subordinating, in whole or in part, (1) the Pre-Petition Obligations or Pre-Petition Lender's liens on and security interests in the Pre-Petition Collateral or (2) the Obligations or DIP Lender's liens on and security interests in the Collateral; or (3) preventing, hindering or delaying DIP Lender's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of the DIP Credit Agreement, the DIP Loan Documents, and this Final Order;

(ii)    a request to use Cash Collateral (as such term is defined in section 363 of the Bankruptcy Code), without the prior written consent of DIP Lender in accordance with the terms and conditions of this Final Order;

(iii)    a request, without the prior written consent of the DIP Lender, for authorization to obtain debtor in possession financing or other financial accommodations pursuant to sections 364(c) or (d) of the Bankruptcy Code that does not provide for the Payment in Full of all the Pre-Petition Obligations and the Obligations on terms and conditions acceptable to the DIP Lender (other than as specifically provided herein) on the date any such financing or financial accommodation is approved by this Court; [3]

---

[3] All references to "payment in full" or "Payment in Full" or "paid in full" or "Paid in Full" with respect to the Pre-Petition Obligations or DIP Obligations, as the case may be, means the indefeasible repayment in full in cash of all such obligations (including principal, interest, fees, expenses, and indemnities), except that for contingent obligations it shall include arrangements and amounts reasonably satisfactory to the applicable Lender, whether in the form of cash collateral or a backstop letter of credit, and including in any event in addition to such arrangements as to letters of credit and similar instruments, treasury and cash management obligations, hedging obligations and other bank

(Footnote Continued)

(iv)        the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against DIP Lender or any of its respective officers, directors, employees, agents, attorneys, affiliates, predecessors, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from DIP Lender under chapter 5 of the Bankruptcy Code;

(v)        the cost of investigation into any claims against Pre-Petition Lender arising under or in connection with the Pre-Petition Loan Documents in excess of $25,000;

(vi)        seeking relief under the Bankruptcy Code, including, without limitation, in each case under Section 105 of the Bankruptcy Code, to the extent such relief would restrict or impair the rights and remedies of any secured party as set forth in this Final Order, the DIP Loan Documents, or the Final Order; or

(vii)        any act which has or could directly, materially and adversely modify or compromise the rights and remedies of DIP Lender under this Final Order, or which

_____

product obligations, the pledge of cash collateral in such amounts as the applicable agent, lender or issuing bank may reasonably require to secure any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Lender in accordance with the terms of the applicable Pre-Petition Loan Document or DIP Loan Document (it being understood that the reference to cash collateral herein under the Pre-Petition Loan Agreement or the DIP Credit Agreement means the pledge and deposit with and delivery to the Lender, as the case may be, as collateral for the obligations specified above in such amounts as Pre-Petition Lender or DIP Lender, as the case may be, determines pursuant to documentation in form and substance reasonably satisfactory to such Lender and that Pre-Petition Lender, or DIP Lender, as the case may be, shall receive a release from each Debtor and any Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities (including, without limitation any obligations or liabilities of any kind related to the Carve-Out upon payment in full of the Pre-Petition Obligations or DIP Obligations) in form and substance acceptable to Pre-Petition Lender or DIP Lender, as applicable or in the case of the Committee, instead of such release, (A) if the Challenge Period (as defined in this Final Order) has not elapsed, a written notice or other confirmation that no Challenge or any other claims of any kind (including with respect to the Carve-Out upon payment in full of the Pre-Petition Obligations or DIP Obligations) will be asserted or (B) if the Challenge Period has elapsed, then no Challenge or any other claim has been asserted or any Challenge or other claim asserted has been dismissed pursuant to a final, non-appealable order of a court of competent jurisdiction and a written notice or other confirmation that no claim of any kind with respect to the Carve-Out will be asserted.

directly results in the occurrence of an Event of Default under any DIP Loan Documents, or this Final Order.

(d)    <u>Carve-Out Reserve</u>.  DIP Lender at its discretion, may at any time and in any increment, establish a reserve (the "<u>Reserve</u>") against the amount of DIP Loans, Letters of Credit or other credit accommodations, as applicable, that would otherwise be made available to Debtors pursuant to the DIP Budget in respect of the Carve-Out set forth in Section 2.3; provided, that the DIP Lender shall not establish or maintain a reserve in respect of Carve-Out that have been funded into the Professional Fee Escrow Account (as defined below).

(e)    <u>Funding the Professional Fee Carve-Out</u>.  Prior to the Trigger Date and subject to the terms and conditions contained in this Final Order, the Debtors shall be authorized to utilize a portion of the DIP Loans and Cash Collateral made available to the Debtors in accordance with the DIP Budget and terms and conditions of the DIP Loan Documents and this Final Order to fund the amounts of the Professional Fees set forth in the line items of the DIP Budget entitled "Professional Fees" through the week of any such funding into an escrow account that shall be used exclusively to hold such Professional Fee Carve-Out deposits and pay Allowed Professional Fees subject to the terms of this Final Order (such escrow account, the "<u>Professional Fee Escrow Account</u>").  DIP Lender shall not be responsible to ensure that Debtors make such deposits into the Professional Fee Escrow Account.  The Debtors shall not be permitted to deposit any funds into the Professional Fee Escrow Account in excess of the aggregate amount set forth in the line item of the DIP Budget under the category of "Professional Fees" through the week in which such deposit is made.

(f)    <u>Payment of Allowed Professional Fees on or After the Trigger Date</u>. Upon the earlier of (i) the Trigger Date and (ii) the closing of the sale or sales of substantially all

of the Debtors' assets and properties in accordance with the terms of the DIP Loan Documents (such date, the "Pre-Trigger Professional Fee Carve-Out Determination Date"), the Debtors shall not be permitted to fund or deposit any more funds into the Professional Fee Escrow Account, unless otherwise agreed by the DIP Lender.  Within five (5) business days immediately following the Pre-Trigger Professional Fee Carve-Out Determination Date, each Professional shall deliver one statement (the "Final Statement") setting forth the actual fees and expenses incurred by such Professional during the Pre-Trigger Carve-Out Period.  To the extent that the amount in the Professional Fee Escrow Account exceeds the sum of (a) the total of the Final Statements delivered by each Professional plus (b) the Post-Trigger Date Professional Fee Carve-Out, the excess amount shall be returned in equal portions to DIP Lender.  Within five (5) Business Days following the closing of the sale or sales of substantially all of the Debtors' assets, each Professional shall deliver one statement setting forth the actual fees and expenses incurred by such Professional during the period from the Petition Date to the last such sale closing (the "Sale Closing Fee Statement").  To the extent that the amount in the Professional Fee Escrow Account exceeds the Sale Closing Fee Statement on a Professional by Professional basis the Sale Closing Fee Statement for such Professional (or, to the extent aggregated among several Professionals in the DIP Budget, the aggregate Sale Closing Fee Statements for such aggregated Professionals), the excess amount shall be returned in equal portions to DIP Lender.  The funds in the Professional Fee Escrow Account shall be held by the Debtors in trust to pay the Allowed Professional Fees subject to, and in accordance with, the terms and conditions contained in this Final Order.  The DIP Lender shall retain a lien, junior and subordinate only to the Professional Fee Carve-Out, on the Professional Fee Escrow Account and the funds deposited therein, and shall be entitled to any remaining funds after payment of the Professional Fee Carve-Out.  DIP Agent shall have no obligations to fund or

otherwise arrange for the funding of any Allowed Professional Fees other than as set forth in this Final Order. For the avoidance of doubt, DIP Lender may at any time after the occurrence of an Event of Default and/or in connection with Payment in Full of the DIP Loans, deposit funds in an amount equal to (i) the unfunded amount of the Pre-Trigger Date Professional Fee Carve-Out, plus (ii) the Post-Trigger Date Professional Fee Carve-Out into the Professional Fee Escrow Account plus the amount of any Carve-Out Expenses that are due as of such time, at which time DIP Lender shall be automatically released and forever discharged from any obligations in connection with the Carve-Out and the liens, claims and rights to payment of the DIP Lender shall cease to be subordinate to the Carve-Out. No funds in the Professional Fee Escrow Account shall be used for any purpose other than for the payment of Allowed Professional Fees to the extent provided in this Final Order, and the amount of such funds so used shall nevertheless permanently reduce the amount of the Carve Out on a dollar for dollar basis.  The Professional Fee Escrow Account shall be free and clear of all claims, liens, and encumbrances other than the Professionals' first priority interest in the Professional Fee Escrow Account and the Bank's subordinate residual interest, to the extent the Professional Fee Escrow Account is overfunded.

2.4    Payment of Carve-Out Expenses.

(a)    Prior to the Trigger Date, the Debtors shall be permitted to pay Allowed Professional Fees up to the amounts set forth in the DIP Budget and subject to the terms and conditions contained in this Final Order.  Any such amounts paid prior to the Trigger Date shall permanently reduce the Pre-Trigger Date Professional Fee Carve-Out on a dollar-for-dollar basis.

(b)    Any payment or reimbursement made either directly by the DIP Lender at any time, or by or on behalf of the Debtors on or after the Trigger Date in respect of any

Allowed Professional Fees prior to or after the Trigger Date shall permanently reduce the Professional Fee Carve-Out on a dollar-for-dollar basis. Any funding by DIP Lender of the Professional Fee Carve-Out or any other Carve-Out Expenses shall be added to and made a part of the DIP Obligations, secured by the Collateral, and entitle DIP Lender to all of the rights, claims, liens, priorities and protections under this Final Order, the applicable DIP Loan Documents, the Bankruptcy Code or applicable law.  Payment of Professional Fee Carve-Out or any other Carve-Out Expenses, whether by or on behalf of DIP Lender, shall not and shall not be deemed to reduce the DIP Obligations, and shall not and shall not be deemed to subordinate DIP Lender's liens and security interests in the Collateral or their Superpriority Claim to any junior pre- or post-petition lien, interest or claim in favor of any other party.

   (c)  The DIP Lender shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Chapter 11 Cases under any chapter of the Bankruptcy Code, and nothing in Sections 2.3 or 2.4 of this Final Order shall be construed to obligate DIP Lender in any way, to pay compensation to or to reimburse expenses directly to any Professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement in an aggregate amount that exceeds the DIP Commitments.

   2.5  Limited Use of Cash Collateral; Adequate Protection.

   (a)  Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order, the DIP Credit Agreement, the DIP Loan Documents, and in accordance with the DIP Budget, Debtors shall be and are hereby authorized to use Cash Collateral for the period commencing on the date of Interim Order and terminating upon the date on which the DIP Lender delivers an Enforcement Notice (as defined below) to counsel for the Debtors,

counsel for the Committee (if appointed), and the U.S. Trustee, subject to the liens and security interests granted to the DIP Lender. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business, or any Debtors' use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order, the DIP Loan Documents and in accordance with the DIP Budget.

(b)    Replacement Liens.  As adequate protection for the diminution in value of its interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out on a dollar-for-dollar basis (collectively, the "Diminution in Value"), the Pre-Petition Lender is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "Replacement Lien"), which security interests and liens shall be subject and subordinate to the Carve-Out.  The Replacement Lien shall be junior and subordinate only to (A) the Carve-Out, (B) the Permitted Liens, and (C) DIP Lender's liens on the Collateral to secure the Obligations, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    Section 507(b) Priority Claims.  As adequate protection for the Diminution in Value, the Pre-Petition Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, and solely to the extent of the Diminution in Value, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any successor bankruptcy cases (the "Superpriority Claim").  The Superpriority Claim shall be junior only to (A) the Carve-Out and (B) the DIP Loan Superpriority Claim, and shall otherwise have priority over all administrative expense claims, including administrative expenses of the kinds

specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against Debtors and their Estates now existing or hereafter arising, of any kind or nature whatsoever, except that the Superpriority Claim shall not be payable from any property or proceeds of Avoidance Actions, actions against insiders if any, or Claims against officers and directors if any.

(d)     <u>Fees and Expenses</u>.  As further adequate protection, the Debtors are authorized to pay, without further Court order, documented legal fees and expenses, whether incurred before or after the Petition Date, of counsel to the Pre-Petition Lender (in its capacity under the Pre-Petition Loan Documents), *provided*, that (a) the Debtors, the U.S. Trustee, and the Committee (if any) shall have ten (10) days from receipt of invoices to review the summary legal invoices of such counsel, and (b) in the event the Debtors, the U.S. Trustee, or Committee (if any) files with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, the undisputed portion of such legal invoice shall be paid without further order of the Court whereas the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection or entry of an order by this Court, and (c) in the event neither the Debtors, U.S. Trustee nor the Committee shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, such legal invoice shall be paid without further order of the Court and shall not be subject to any further review, challenge or disgorgement.

(e)     <u>Information Rights</u>. The Debtors shall promptly provide the DIP Lender with all required financial reporting and other periodic reporting that is required to be provided to the DIP Lender under the DIP Loan Documents.

Section 3.     <u>Default; Rights and Remedies; Relief from Stay</u>.

3.1     <u>Events of Default</u>.   Unless waived by the DIP Lender in writing in accordance with the terms of the DIP Credit Agreement or the DIP Loan Documents, the

occurrence of any of the following events shall constitute an "Event of Default" under this Final Order: (a) any Debtor's failure to perform, in any material (as determined by the DIP Lender in its sole discretion) respect, any of its obligations under this Final Order; or (b) an "Event of Default" under the DIP Credit Agreement or any of the other DIP Loan Documents.

   3.2 Rights and Remedies upon Event of Default.  Upon the DIP Lender's service of a notice of occurrence of and during the continuance of an Event of Default, (a) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Final Order, the DIP Credit Agreement and the other DIP Loan Documents, and (b) the DIP Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 3.4 below) as provided in this Final Order or any DIP Loan Document, as applicable, including, without limitation, declaring all Obligations then outstanding immediately due and payable, accelerating the Obligations, ceasing to extend DIP Loans or provide or arrange for Letters of Credit on behalf of any Debtor, setting off any Obligations with Collateral or proceeds in DIP Lender's possession, and enforcing any and all rights with respect to the Collateral.  Except as expressly set forth in Section 2.5, DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtors, or provide any other financial accommodations to Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

   3.3 Expiration of Loan Commitment.  Upon the earlier of (a) expiration of Debtors' authority to borrow and obtain other financial accommodations from DIP Lender pursuant to the terms of this Final Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of DIP Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by DIP Lender), and (b) the delivery by the

DIP Lender of an Enforcement Notice upon the occurrence of an Event of Default declaring that the Obligations shall immediately become due and payable, in either case DIP Lender shall have no obligation whatsoever to make or extend any loans, advances, provide any financial or credit accommodations to Debtors or permit the use of Cash Collateral.

       3.4    <u>Modification of Automatic Stay</u>.   The automatic stay provisions of section 362 of the Bankruptcy Code and any other restrictions imposed by an order of the Court or applicable law are hereby modified without further notice, application or order of the Court to the extent necessary to permit the DIP Lender to perform, at any time, any act authorized or permitted under or by virtue of this Final Order or the DIP Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct and receive payments with respect to the Pre-Petition Obligations or the Obligations, as applicable, including, without limitation, all interest, fees, costs and expenses permitted under the DIP Loan Documents (subject to Section 5.12 of this Final Order) and apply such payments to the Pre-Petition Obligations or Obligations pursuant to the DIP Loan Documents and this Final Order, as applicable.   Without limiting the foregoing, upon the occurrence of an Event of Default and the DIP Lender providing five (5) business days (the "<u>Default Notice Period</u>") prior written notice (the "<u>Enforcement Notice</u>") to (i) counsel for the Debtors, (ii) counsel for the Committee (if appointed), and (iii) the U.S. Trustee, the DIP Lender shall be entitled without further notice, application or order of the Court to take any action and exercise all other rights and remedies provided to it by this Final Order, the DIP Loan Documents or applicable law that DIP Lender may deem appropriate in its sole discretion to

proceed against and realize upon the Collateral or any other assets or properties of Debtors' Estates upon which the DIP Lender has been or may hereafter be granted liens or security interests to obtain the indefeasible repayment in full of all Obligations. Notwithstanding anything to the contrary, any action that DIP Lender is otherwise permitted to take pursuant to this Final Order to (i) terminate the commitments under the DIP Loan Documents, accelerate the DIP Loans, (iii) send blocking notices or activation notices pursuant to the terms of any Blocked Account Agreement, (iv) repay any amounts owing in respect of the Obligations (including, without limitation, fees, indemnities and expense reimbursements) and (v) cash collateralize Letters of Credit issued pursuant to the DIP Loan Documents, in each case, shall not require any advance notice to the Debtors. During the Default Notice Period, the Debtors, the U.S. Trustee, and the Committee (if appointed) shall be entitled to seek an emergency hearing, and the DIP Lender shall consent to such emergency hearing within the Default Notice Period; *provided* that if a request for such hearing is made prior to the end of the Default Notice Period, then the Notice Period shall be continued until the Court hears and rules with respect thereto. During the Default Notice Period, the Debtors shall continue to have the right to use Cash Collateral in accordance with the terms of this Final Order, solely to pay necessary expenses set forth in the DIP Budget which have been approved by the DIP Lender (except as otherwise specifically provided in Section 2.3 and Section 2.4 of this Final Order), and the DIP Lender shall have the rights set forth in this paragraph, without the necessity of seeking relief from the automatic stay.

Section 4.       Representations; Covenants; and Waivers.

        4.1      Effect of Stipulations on Third Parties.

                (a)      Subject to Section 4.1(b) hereof, each stipulation, admission, and agreement contained in this Final Order including, without limitation, the Stipulations, shall be binding upon the Debtors, their Estates and any successor thereto (including, without limitation,

any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) under all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined herein) as of the date of the Petition Date.

(b)    Nothing in this Final Order shall prejudice the rights of any Committee[4] or any other party in interest, if granted standing by the Court, to seek, solely in accordance with the provisions of this Section 4.1, to assert claims against the Pre-Petition Lender on behalf of the Debtors or the Debtors' creditors or to otherwise challenge the Stipulations, including, but not limited to those in relation to (i) the validity, extent, priority, or perfection of the security interests, and liens of the Pre-Petition Lender, (ii) the validity, allowance, priority, or amount of the Pre-Petition Obligations, or (iii) any liability of the Pre-Petition Lender with respect to anything arising from the Pre-Petition Loan Documents.  Notwithstanding the immediately preceding sentence, any Committee or any other party in interest must, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Pre-Petition Lender (each, a "Challenge") no later than the earlier of (i) May 19, 2025, and (ii) the date that is five (5) business days prior to the closing of one or more sales of substantially all of the Debtors' assets (collectively, the "Challenge Period"), provided however, with respect to any chapter 11 trustee appointed in the Chapter 11 Cases, or any chapter 7 trustee appointed in any successor case (each, a "Successor Case"), prior to the expiration of the Challenge Period, the Challenge Period for such trustee shall be extended to a date that is no later than fourteen (14) days

---

[4] In accordance with the agreement reached between the Committee and the DIP Lender and subject to the caveats agreed to as set forth in the record at the Final Hearing, the Committee has agreed to waive its rights to commence a Challenge.

after the appointment of such trustee.  The Challenge Period, including the Challenge Period for such trustee, may only be extended with the written consent of the Pre-Petition Lender or by order of this Court, prior to the expiration of such Challenge Period.  Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge.  As to (x) any parties in interest, including any Committee, who fail to file a Challenge within the Challenge Period, or if any such Challenge is filed and overruled or otherwise finally resolved or adjudicated in favor of the Pre-Petition Lender or (y) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, any Committee, any chapter 11 trustee, any examiner or any other estate representative appointed in the Debtors' Chapter 11 Cases, or any chapter 7 trustee, any examiner or any other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Stipulations, waivers, releases, affirmations, and other stipulations shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases, and (3) any and all claims or causes of action against the Pre-Petition Lender shall be released by the Debtors' estates, all creditors, interest holders, and other parties in interest in the Chapter 11 Cases and any Successor Cases.

(c)     Nothing in this Final Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their Estates, including, without limitation, any Challenge.

(d)     Nothing herein shall limit the Committee's or any other party in interest's ability to (x) file a motion in respect of any timely Challenge for which it cannot obtain

standing as a matter of law because the Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge.

4.2     Debtors' Waivers.  At all times during the Chapter 11 Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to seek further authority (a) to use Cash Collateral of DIP Lender or Pre-Petition Lender under section 363 of the Bankruptcy Code, (b) to obtain post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code that does not provide for the indefeasible repayment in full of all Pre-Petition Obligations and Obligations in cash at the time any such post-petition loans or financial accommodations are provided, extended or otherwise made available to Debtors, (c) to challenge, contest or otherwise seek to impair or object to the validity, extent, enforceability or priority of DIP Lender's post-petition liens and claims, (d) to challenge the application of any payments authorized by the Interim Order or this Final Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations, (e) to propose, support or have a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Credit Agreement, except as otherwise agreed by the Pre-Petition Lender and the DIP Lender, (f) to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code, or (g) to seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of DIP Lender as provided in this Final Order and the DIP Loan Documents or DIP Lender's exercise of such rights or remedies (other than to object

to the exercise of the rights and remedies within the Default Notice Period on the grounds set forth in Section 3.4 of this Final Order); provided, however, that DIP Lender may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by DIP Lender; provided further, however, that nothing herein shall prohibit the Debtors from obtaining post-petition loans or other financial accommodations pursuant to section 364(c) or 364(d) of the Bankruptcy Code if the proceeds of such financing are used to indefeasibly pay (i) all Pre-Petition Obligations and the Pre-Petition Obligations are satisfied in full in accordance with the terms of the Pre-Petition Loan Agreement and the other Pre-Petition Loan Documents, and (ii) all Obligations are satisfied in full in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents.

       4.3     Section 506(c) Claims. No costs or expenses of administration which have or may be incurred in the Chapter 11 Cases shall be charged against DIP Lender or Pre-Petition Lender, or their respective claims or the Collateral pursuant to section 506(c) of the Bankruptcy Code without the prior written consent of such Lender, and no such consent shall be implied from any other action, inaction or acquiescence by DIP Lender or Pre-Petition Lender.

       4.4     Collateral Rights. Until all Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents:

       (a)     it shall be an Event of Default if the Debtors seek, or if any party other than DIP Lender obtains an order, which seeks to foreclose or otherwise enforce any junior lien or claim in Collateral; and

       (b)     upon and after the declaration of the occurrence of an Event of Default, and subject to the expiration of the Default Notice Period, in connection with a

liquidation of any of the Collateral or the DIP Lender's exercise of remedies in respect of the Collateral, DIP Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of the Debtors, to: (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtors, in accordance with (A) any written agreement between the DIP Lender or the Pre-Petition Lender and any applicable landlord, (B) applicable non-bankruptcy law, (C) written consent of the applicable landlord, or (D) further order of this Court following notice and a hearing, and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in their businesses.  DIP Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that DIP Lender actually uses the equipment or the intellectual property (but in no event for any accrued and unpaid fees, rentals or other amounts due for any period prior to the date that DIP Lender actually occupies or uses such assets or properties or for any fees, rentals or other amounts that may become due following the end of DIP Lender's occupation or use).

4.5     Releases.

Subject to Section 4.1 above, each Debtor, on behalf of itself and its successors and assigns (collectively, the "Releasors"), shall, forever release, discharge and acquit Pre-Petition Lender and each of its respective, successors and assigns, present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives in their respective capacities as such (collectively, the "Pre-

Petition Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description other than fraud or willful misconduct, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Pre-Petition Releasees, or any of them, as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Loan Documents and any Advances under the Line, Letters of Credit, Advances under the Loan Limit Line, or other financial accommodations made by any Pre-Petition Releasee to any Debtor. In addition, notwithstanding anything to the contrary set forth herein, upon the repayment of all Obligations (as defined in the DIP Credit Agreement) owed to the DIP Lender by Debtors and termination of the rights and obligations arising under the DIP Loan Documents (which payment and termination shall be on terms and conditions acceptable to the DIP Lender), the DIP Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring, on or prior to the date of such repayment and termination, in connection with or related to the Debtors, DIP Loan Documents, the Interim Order or this Final Order (including without limitation any obligation or responsibility whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated to pay or otherwise fund the Carve-Out and/or the Professional Fee Carve-Out).

Section 5.     Other Rights and Post-Petition Obligations.

5.1     No Modification or Stay of This Final Order.  Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Order, the DIP Loan Documents or any term hereunder or thereunder, or (b) the dismissal or conversion of one or more of the Chapter 11 Cases (each, a "Subject Event"), (x) the acts taken by the DIP Lender in accordance with this Final Order, and (y) the Obligations incurred or arising prior to

DIP Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Order, and the acts taken by DIP Lender in accordance with this Final Order, and the liens granted to DIP Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of DIP Lender pursuant to this Final Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code. For purposes of this Final Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Order by this Court or any other tribunal.

5.2    Power to Waive Rights; Duties to Third Parties. DIP Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Order that are in favor of DIP Lender (the "DIP Lender Rights") and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s). Any waiver by DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver unless expressly specified in writing by the DIP Lender. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to DIP Lender.

5.3    Disposition of Collateral. It shall be an Event of Default for the Debtors to seek or obtain such an order, which seeks to sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral outside the ordinary course, other than pursuant to the terms of the DIP Loan Documents or Court order, without the prior written consent of DIP Lender (and no such

consent shall be implied, from any other action, inaction or acquiescence by the DIP Lender).  All cash proceeds generated from the sale of the Collateral shall be paid to the DIP Lender in accordance with the DIP Credit Agreement upon the closing of such sale for permanent application to the Obligations owing by Debtors to the Pre-Petition Lender and the DIP Lender, as applicable in accordance with the terms and conditions of (a) this Final Order and (b) the DIP Credit Agreement and other DIP Loan Documents until such time as all such Obligations are Paid in Full.

5.4     Inventory.  It shall be an Event of Default for the Debtors to seek or obtain such an order, without the consent of the DIP Lender, to (a) enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise.

5.5     Reservation of Rights.  The terms, conditions and provisions of this Final Order are in addition to and without prejudice to the rights of DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estates.

5.6    <u>Binding Effect</u>.

(a)    The provisions of this Final Order and the DIP Loan Documents, the Obligations, the Superpriority Claim, the DIP Loan Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of the DIP Lender provided or acknowledged in this Final Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting one or more of the Chapter 11 Cases to any other chapter under the Bankruptcy Code, or dismissing one or more of the Chapter 11 Cases.

(b)    Any order dismissing one or more of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Loan Superpriority Claim and DIP Lender's liens on and security interests in the Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Final Order shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c)    To the extent this Final Order modifies any of the provisions of the Interim Order or the DIP Loan Documents, such modifications shall not affect the rights or priorities of DIP Lender or its interests in the Collateral authorized by or otherwise set forth in the Interim Order with respect to the Collateral or any portion of the Obligations arising or incurred

by the Debtors prior to such modification, and the Interim Order shall otherwise remain in full force and effect to such extent.

(d)       This Final Order shall be binding upon Debtors, all parties in interest in the Chapter 11 Cases and their respective successors and assigns, including any trustee or other fiduciary appointed in the Chapter 11 Cases or any subsequently converted bankruptcy case(s) of any Debtor.  This Final Order shall also inure to the benefit of Debtors and DIP Lender and each of their respective successors and assigns.

5.7       <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All post-petition advances and other financial accommodations under the DIP Credit Agreement and the other DIP Loan Documents are made in reliance on this Final Order and it shall be an Event of Default if the Debtors seek, or any party obtains, entry of an order in the Chapter 11 Cases, or in any subsequently converted case under chapter 7 of the Bankruptcy Code, any order (other than the Final Order) which (i) authorizes the use of cash collateral of Debtors in which DIP Lender has an interest, or the sale, lease, or other disposition of property of any Debtor's Estate in which DIP Lender has a lien or security interest, except as expressly permitted hereunder or in the DIP Loan Documents, or (ii) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which DIP Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to DIP Lender herein; unless, in each instance (x) DIP Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by DIP Lender, or (y) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Credit Agreement

and the other DIP Loan Documents (other than unmatured indemnity obligations for which claims have not been asserted by the DIP Lender), including, without limitation, all debts and obligations of Debtors to DIP Lender which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to DIP Lender.  The security interests and liens granted to or for the benefit of DIP Lender hereunder and the rights of DIP Lender pursuant to the Interim Order, this Final Order and the DIP Loan Documents with respect to the Obligations, Collateral, and claims against the DIP Loan Parties are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtors and shall continue after confirmation and consummation of any such plan unless (i) all Obligations indefeasibly paid in full prior to such time, or (ii) DIP Lender expressly consents in writing to different treatment.

      5.8    <u>No Owner/Operator Liability</u>.  By virtue of the terms of the Interim Order and/or this Final Order, the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).

      5.9    <u>Marshalling</u>.  In no event shall DIP Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral.  DIP Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Pre-Petition Lender with respect to proceeds, products, offspring or profits of any of the Collateral, as applicable.

5.10   <u>Right of Setoff</u>.  To the extent any funds were on deposit with Pre-Petition Lender as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with Pre-Petition Lender immediately prior to the filing of the Chapter 11 Cases (regardless of whether, as of the Petition Date, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "<u>Deposited Funds</u>") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of Pre-Petition Lender pursuant to sections 506(a) and 553 of the Bankruptcy Code.

5.11   <u>Right to Credit Bid</u>.  The DIP Lender shall have the right, subject to section 363(k) of the Bankruptcy Code, to "credit bid" the amount of its claims that are Obligations and secured by liens arising under the terms of the DIP Loan Documents, during any sale of all or substantially all of the Debtors' assets, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

5.12   <u>Payment and Review of Lender Fees and Expenses</u>. Each Debtor shall pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Credit Agreement, including, without limitation, the non-refundable payment to the (i) Pre-Petition Lender of the documented fees and expenses set forth in the Pre-Petition Loan Documents, including, without limitation, all fees, costs, disbursements and expenses of Otterbourg P.C., as legal counsel, and Richards, Layton & Finger, P.A., as local counsel and (ii) DIP Lender of the documented fees and expenses set forth in the DIP Loan Documents including, without limitation the fees, costs, disbursements and expenses of Otterbourg P.C., as legal counsel, and Richards, Layton & Finger, P.A., as local counsel, in each case whether incurred before or after the Petition Date; <u>provided</u>, that Debtors shall pay all such documented

48

fees and expenses within ten (10) business days of delivery of a statement or invoice for such documented fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors, the U.S. Trustee and the Committee (if any), unless, within such ten (10) business day period, the Debtors, the U.S. Trustee, or the Committee (if any) serves a written objection upon the requesting party detailing the specific fees or expenses to which such party objects along with an explanation for the basis of such objection, in which case, the Debtors shall immediately pay only such amounts that are not the subject of any objection and only pay the balance of such statements or invoices at such time and in such amount as subsequently agreed to by the requesting party and any objecting party or as otherwise ordered by the Court to be paid.

5.13   No Superior Rights of Reclamation.   Based on the findings and rulings herein concerning the integrated nature of the DIP Credit Facility and the Pre-Petition Loan Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the liens held by the DIP Lender.

5.14   Term; Termination.   Notwithstanding any provision of this Final Order to the contrary, the term of the financing arrangements among Debtors and the DIP Lender authorized by this Final Order may be terminated pursuant to the terms of the DIP Credit Agreement and this Final Order.

5.15   Final Order Controls.   In the event of any conflict or inconsistency between or among the terms or provisions of this Final Order and any of the DIP Loan Documents, unless

such term or provision in this Final Order is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement or DIP Loan Documents, the terms and provisions of this Final Order shall govern and control.

5.16     Joint and Several Liability.  Nothing in this Final Order shall be construed to constitute or authorize a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the Obligations hereunder and in accordance with the terms of this Final Order.

5.17     No Stay of Effect.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon entry thereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules, any applicable Local Bankruptcy Rules, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

5.18     Necessary Action.  The Debtors are authorized to take any and all such actions as are necessary, required or appropriate to implement and effectuate the terms of this Final Order, the DIP Loan Documents and the transactions contemplated hereunder and thereunder.

5.19     Retention of Jurisdiction.  The Court retains jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final Order, the DIP Credit Agreement, and the other DIP Loan Documents.

5.20     Headings.  All paragraph headings used in this Final Order are for ease of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

     5.21   <u>Committee Resolution</u>.  The Committee's objections to the Motion are resolved on the terms set forth on the record at the Final Hearing.

     5.22   <u>Chubb Reservation of Rights</u>.  For the avoidance of doubt, nothing in this Final Order or any document related thereto, including the DIP Loan Documents, alters or modifies the terms and conditions of any insurance policies or related agreements issued to the Debtors or their affiliates (or any predecessors of either) by ACE American Insurance Company and Federal Insurance Company and each of their U.S.-based affiliates and predecessors (collectively, "<u>Chubb</u>"); <u>provided</u>, <u>that</u>, (a) Chubb acknowledges that the DIP Lender has been granted a first priority postpetition lien on any insurance proceeds and amounts payable under insurance policies to the extent provided in this Final Order, the DIP Loan Documents and the Pre-Petition Loan Documents and (b) to the extent any claim arises that is covered by any such insurance policies issued by Chubb, the Debtors and any applicable insured party may pursue such claim in accordance with the terms of such insurance policies and, if any insurance proceeds or amounts are paid to the Debtors, the Debtors shall turn over to the DIP Lender any such insurance proceeds or amounts payable under such insurance policies.

**Dated: April 14th, 2025**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**