**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNPOWER CORPORATION, *et al.*,[1] | ) | Case No. 24-11649 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

---

**AMENDED JOINT CHAPTER 11 PLAN OF**
**SUNPOWER CORPORATION AND ITS DEBTOR AFFILIATES**

---

**RICHARDS, LAYTON & FINGER, P.A.**
Kevin Gross (DE Bar No. 209)
Mark D. Collins (DE Bar No. 2981)
Jason M. Madron (DE Bar No. 4431)
920 N. King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          gross@rlf.com
                collins@rlf.com
                madron@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Zachary R. Manning (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                zach.manning@kirkland.com

- and -

Chad J. Husnick, P.C. (admitted *pro hac vice*)
Jeffrey Michalik (admitted *pro hac vice*)
Robert Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          chad.husnick@kirkland.com
                jeff.michalik@kirkland.com
                rob.jacobson@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*          *Co-Counsel to the Debtors and Debtors in Possession*

Dated: October 15, 2024

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335).  The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ........................................................................................................................... 1

    A.    Defined Terms ........................................................................................................ 1
    B.    Rules of Interpretation ......................................................................................... 15
    C.    Computation of Time ........................................................................................... 16
    D.    Governing Law .................................................................................................... 16
    E.    Reference to Monetary Figures ............................................................................ 16
    F.    Reference to the Debtors or the Wind-Down Debtors .......................................... 16
    G.    No Substantive Consolidation .............................................................................. 16

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ........................ 16

    A.    General Administrative Claims ............................................................................. 16
    B.    Professional Fee Claims ....................................................................................... 17
    C.    Priority Tax Claims .............................................................................................. 18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................... 19

    A.    Classification of Claims and Interests ................................................................... 19
    B.    Treatment of Claims and Interests ........................................................................ 19
    C.    Special Provision Governing Unimpaired Claims .................................................. 22
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ................. 22
    E.    Subordinated Claims ............................................................................................ 22
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ........... 23
    G.    Intercompany Interests ......................................................................................... 23
    H.    Controversy Concerning Impairment .................................................................... 23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................... 23

    A.    General Settlement of Claims and Interests ........................................................... 23
    B.    Wind-Down Transactions ..................................................................................... 23
    C.    Sources of Consideration for Plan Distributions and Waterfall Recovery ............... 24
    D.    Wind-Down Debtors ............................................................................................ 24
    E.    Vesting of Assets ................................................................................................. 25
    F.    Plan Administrator ............................................................................................... 25
    G.    Exculpation, Indemnification, Insurance, and Liability Limitation ......................... 25
    H.    Tax Returns ......................................................................................................... 26
    I.    Dissolution of the Wind-Down Debtors ................................................................ 26
    J.    Statutory Committee and Cessation of Fee and Expense Payment .......................... 26
    K.    Cancellation of Securities and Agreements ........................................................... 26
    L.    Corporate Action ................................................................................................. 27
    M.    Effectuating Documents; Further Transactions ..................................................... 27
    N.    Section 1146 Exemption ...................................................................................... 27
    O.    D&O Liability Insurance Policies; Other Insurance Matters .................................. 28
    P.    Preservation of Causes of Action .......................................................................... 28
    Q.    Section 1145 Exemption ...................................................................................... 29
    R.    Installer-Dealer Settlement ................................................................................... 29
    S.    Abandonment of Non-Debtor Equity Interests. ..................................................... 29

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 29

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ............. 29
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases................ 30
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases............. 30
    D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases .......... 31

E.      Insurance Policies ................................................................................................31
F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........32
G.      Reservation of Rights...........................................................................................32
H.      Nonoccurrence of Effective Date ........................................................................32

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...............................................32

A.      Timing and Calculation of Amounts to Be Distributed ......................................32
B.      Disbursing Agent ..................................................................................................33
C.      Rights and Powers of Disbursing Agent ..............................................................33
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........33
E.      Compliance with Tax Requirements .....................................................................34
F.      Allocations .............................................................................................................34
G.      No Postpetition or Default Interest on Claims .....................................................34
H.      Setoffs and Recoupment .......................................................................................34
I.      No Double Payment of Claims ..............................................................................35
J.      Claims Paid or Payable by Third Parties...............................................................35

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ................................................................................................................36

A.      Allowance of Claims .............................................................................................36
B.      Claims Administration Responsibilities................................................................36
C.      Estimation of Claims.............................................................................................36
D.      Adjustment to Claims or Interests Without Objection .........................................37
E.      Time to File Objections to Claims ........................................................................37
F.      Disallowance of Claims or Interests .....................................................................37
G.      Amendments to Proofs of Claims or Interests ......................................................37
H.      No Distributions Pending Allowance ....................................................................37
I.      Distributions After Allowance ..............................................................................37

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............38

A.      **Release of Liens** ....................................................................................................38
B.      **Releases by the Debtors** .......................................................................................38
C.      **Releases by the Releasing Parties** .......................................................................39
D.      **Exculpation** ..........................................................................................................40
E.      **Injunction** .............................................................................................................40
F.      Protections Against Discriminatory Treatment ....................................................41
G.      Document Retention .............................................................................................41
H.      Reimbursement or Contribution ...........................................................................42
I.      Term of Injunctions or Stays................................................................................42
J.      Good Faith Solicitation ........................................................................................42

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN...........................................................................................................................................42

A.      Conditions Precedent to the Effective Date .........................................................42
B.      Waiver of Conditions............................................................................................43
C.      Substantial Consummation ...................................................................................43
D.      Effect of Failure of Conditions ............................................................................43

ARTICLE X. CREDITOR TRUST ............................................................................................43

A.      Creation and Governance of Creditor Trust .........................................................43
B.      Purpose of Creditor Trust......................................................................................44
C.      Creditor Trust Agreement and Funding of Creditor Trust ...................................44
D.      Creditor Trust Beneficial Interests .......................................................................44

E.    Cooperation of the Wind-Down Debtors and Plan Administrator ......................................44
F.    Tax Treatment of the Creditor Trust ........................................................................45
G.    Fiduciary Duties ............................................................................................................46
H.    Withholding ....................................................................................................................46
I.    Dissolution of Creditor Trust ......................................................................................46
J.    Transferred Privileges ....................................................................................................47

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................47

A.    Modification and Amendments ......................................................................................47
B.    Effect of Confirmation on Modifications ......................................................................48
C.    Revocation or Withdrawal of Plan ................................................................................48

ARTICLE XII. RETENTION OF JURISDICTION ..................................................................48

ARTICLE XIII. MISCELLANEOUS PROVISIONS ................................................................50

A.    Immediate Binding Effect ..............................................................................................50
B.    Additional Documents ....................................................................................................50
C.    Payment of Statutory Fees ............................................................................................50
D.    Reservation of Rights ....................................................................................................50
E.    Successors and Assigns ..................................................................................................51
F.    Notices ............................................................................................................................51
G.    Entire Agreement ............................................................................................................52
H.    Exhibits ..........................................................................................................................52
I.    Non-Severability of Plan Provisions ............................................................................53
J.    Closing of Chapter 11 Cases ........................................................................................53
K.    Conflicts ..........................................................................................................................53
L.    SEC Carve Out ..............................................................................................................53

**INTRODUCTION**

SunPower Corporation and the other above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors") propose this Plan for the resolution of the outstanding claims against, and equity interests in, the Debtors.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims against and Interests in the Debtors should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters.  Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.      *Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.      "*2L/Sponsor Settlement*" means a settlement by and between the Debtors and Sol Holding, LLC (and/or one or more Affiliates thereof) on terms acceptable to the Special Committee and the Committee in their respective business judgment.

2.      "*Administrative Claim*" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) Adequate Protection Claims (as defined in the Cash Collateral Order and subject to allowance and procedures set forth in the Cash Collateral Order); and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

3.      "*Administrative Claims Bar Date*" means thirty days after the Effective Date, except as specifically set forth in the Plan or a Final Order.

4.      "*Administrative Claims Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be the later of (a) sixty days after the Effective Date and (b) sixty days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

5.      "*Administrative / Priority Claims Reserve*" means a segregated account established by the Wind-Down Debtors in accordance with Article IV.D.2.

6.      "*Administrative / Priority Claims Reserve Amount*" means the amount of Cash necessary to satisfy all Allowed Administrative Claims (other than Professional Fee Claims), Allowed Priority Claims, and Allowed Other Secured Claims to the extent any such Claims are not Assumed Liabilities under the applicable Sale Transaction Documents, which aggregate amount shall be funded into the Administrative / Priority Claims Reserve and shall be acceptable to the Debtors, the Prepetition First Lien Agent, and the Committee.

7. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

8. "*Agent*" means each of, and in each case in its capacity as such, the Prepetition First Lien Agent and the Prepetition Second Lien Agent.

9. "*Allowed*" means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) a Claim or Interest allowed pursuant to the Plan or a Final Order; or (d) solely with respect to General Unsecured Claims, after the Effective Date, has been allowed by written agreement of the Creditor Trustee; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except as provided in sections 506(b) or 511 of the Bankruptcy Code, an Allowed Claim shall not, for purposes of computing Plan Distributions, include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, following an objection to a claim filed on such grounds. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date, or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late Filed Claim. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

10. "*Assumed Executory Contracts and Unexpired Leases Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, if any, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

11. "*Assumed Liabilities*" means, in any Sale Transaction, the liabilities assumed by the Purchaser in the Sale Transaction pursuant to the terms of the applicable Sale Transaction Documents.

12. "*Available Cash*" means, collectively, all Cash on hand held by the Debtors and Wind-Down Debtors, including the net proceeds from the Sale Transactions.

13. "*Avoidance Actions*" mean any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

14. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

15. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

16. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general and chambers rules of the Bankruptcy Court.

17.        "**Bar Date Order**" means the *Amended and Superseding Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 602] (as the same may be amended, supplemented, or modified from time to time after entry thereof).

18.        "**Bidding Procedures**" means the procedures governing the sale and marketing process for the Sale Transactions as approved pursuant to the Bidding Procedures Order.

19.        "**Bidding Procedures Motion**" means the *Motion of Debtors for Entry of an Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Complete Solaria Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Authorizing the Assumption and Assignment of Assumed Contracts and Leases, (VII) Approving the Sale of Assets, and (VIII) Granting Related Relief* [Docket No. 15].

20.        "**Bidding Procedures Order**" means the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Complete Solaria Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 290], as may be modified, amended, or supplemented.

21.        "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

22.        "**Cash**" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

23.        "**Cash Collateral Order**" means the interim or final order, as applicable, each in form and substance acceptable to the Prepetition First Lien Agent, of the Bankruptcy Court authorizing the Debtors to use cash collateral, granting adequate protection to the Prepetition Secured Parties (as defined therein), modifying the automatic stay, and granting related relief.

24.        "**Cause of Action**" or "**Causes of Action**" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise.  Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests and any Claim Objections; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

25.        "**Chapter 11 Cases**" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

26.        "**Claim**" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

27.      "*Claim Objection*" means an objection to the allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any order of the Bankruptcy Court regarding omnibus claim objections.

28.      "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC in its capacity as claims and noticing agent for the Debtors and any successor.

29.      "*Claims Bar Date*" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim.

30.      "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

31.      "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

32.      "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on August 16, 2024, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 147].

33.      "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

34.      "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

35.      "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

36.      "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance acceptable to the Prepetition First Lien Agent.

37.      "*Consenting Installer-Dealers*" means the installing dealers party to the Installer-Dealer Settlement, as set forth in the definitive Installer-Dealer Settlement Term Sheet.

38.      "*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

39.      "*Creditor Trust*" means the liquidating bankruptcy trust established on the Effective Date for the benefit of the Creditor Trust Beneficiaries in accordance with Article X of the Plan and the Creditor Trust Agreement.

40.      "*Creditor Trust Agreement*" means the agreement, as may be amended, supplemented, restated, or otherwise modified from time to time, to be executed as of the Effective Date establishing the Creditor Trust pursuant to this Plan, substantially in the form Filed with the Plan Supplement, in form and substance acceptable to the Debtors, the Prepetition First Lien Agent, and the Committee.

41.      "*Creditor Trust Assets*" means, collectively, (a) the Creditor Trust Claims; and (b) the Creditor Trust Cash.

42.      "*Creditor Trust Beneficial Interest*" means the non-certified beneficial interest in the Creditor Trust granted to each Creditor Trust Beneficiary, which shall entitle such Holder to distributions of the Creditor Trust Net Assets in accordance with the Creditor Trust Recovery.

43.     *"Creditor Trust Beneficiary"* means Holders of Allowed General Unsecured Claims and, solely with respect to the Creditor Trust First Lien Amount, Holders of Allowed Prepetition First Lien Secured Claims.

44.     "**Creditor Trust Cash**" means the sum of (a) $1,000,000 of Available Cash and (b) any remaining funds from the Wind-Down Amount or the Data Preservation Funds following the completion of the Wind-Down and dissolution of the Wind-Down Debtors.

45.     "**Creditor Trust Claims**" means the Retained Causes of Action; *provided* that the Wind-Down Debtors shall retain all GUC Avoidance Actions against each Entity that owes any money to any Debtor or Wind-Down Debtor (and such GUC Avoidance Action shall not be a Creditor Trust Claim) unless and until such Entity has paid the full amount owed to the Debtor or Wind-Down Debtor in Cash (or such other amount or treatment that the Plan Administrator agrees, in the Plan Administrator's sole discretion), at which point such GUC Avoidance Action shall be a Creditor Trust Claim.

46.     "**Creditor Trust Fees and Expenses**" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the Creditor Trust or in respect of the Creditor Trust Assets) incurred by the Creditor Trust, any professional retained by the Creditor Trust (including, without limitation, attorneys, accountants, distribution agents, experts, or otherwise), and any additional amount determined necessary by the Creditor Trustee necessary to adequately reserve for the operating expenses of the Creditor Trust.

47.     "**Creditor Trust Net Assets**" means the proceeds of the Creditor Trust Assets *less* the Creditor Trust Fees and Expenses.

48.     *"Creditor Trust Recovery"* means, the allocation and payment by the Creditor Trustee of Creditor Trust Net Assets realized from the proceeds of Creditor Trust Claims (a) *first*, 75% to the Holders of Allowed Prepetition First Lien Secured Claims and 25% to the Holders of all Allowed General Unsecured Claims (excluding Allowed Prepetition First Lien Deficiency Claims but including any Allowed Prepetition Second Lien Deficiency Claims) until the Holders of Allowed Prepetition First Lien Secured Claims have received Cash distributions from the Creditor Trust Net Assets equal to the Creditor Trust First Lien Amount; *provided further, however*, that the foregoing allocation shall not apply to the proceeds of Creditor Trust Claims that are GUC Avoidance Actions, which proceeds, if any, of Creditor Trust Claims that are GUC Avoidance Actions shall be allocated and paid 100% to the Holders of all Allowed General Unsecured Claims (including Allowed Prepetition First Lien Deficiency Claims and any Allowed Prepetition Second Lien Deficiency Claims) and (b) *second*, following satisfaction of the Creditor Trust First Lien Amount, Pro Rata to the Holders of Allowed General Unsecured Claims (including Allowed Prepetition First Lien Deficiency Claims and Allowed Prepetition Second Lien Deficiency Claims).

49.     *"Creditor Trust First Lien Amount"* means the sum of (a) the Post-Effective Date Funding Amount and (b) the amount, if any, of Allowed Professional Fee Claims of the Committee's Professionals in excess of $2,560,000.

50.     "**Creditor Trustee**" means the bankruptcy trustee of the Creditor Trust appointed to administer the Creditor Trust pursuant to the Creditor Trust Agreement.  The identity of the Creditor Trustee shall be chosen by the Committee in accordance with the Creditor Trust Agreement and shall be filed with the Plan Supplement.

51.     "**Cure Claim**" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

52.     "**Cure Notice**" means that *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts and Leases*, which the Debtors Filed and caused to be served in accordance with the Bidding Procedures Order upon counterparties to such Executory Contracts or Unexpired Leases, and which included: (a) procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

53.    "***Cure Notice Objection Date***" means the objection deadline set forth in the Cure Notice and approved pursuant to the Bidding Procedures Order.

54.    "***D&O Liability Insurance Policies***" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors or any of their predecessors for current or former directors', officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

55.    "***Data Preservation Funds***" has the meaning given to such term in Article I.A.172 of the Plan.

56.    "***Definitive Document***" means (a) the Confirmation Order; (b) the Cash Collateral Order; (c) the Sale Transaction Documents; (d) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related order), including the First Day Pleadings and all orders sought pursuant thereto; *provided, however*, that monthly or quarterly operating reports, retention applications, fee applications, fee statements, and any declarations in support thereof or related thereto shall not constitute material pleadings; and (e) any and all other deeds, agreements, filings, notifications, pleadings, orders, certificates, letters, instruments or other documents reasonably necessary or desirable to consummate and document the transactions contemplated by the Plan (including any exhibits, amendments, modifications, or supplements from time to time).

57.    "***Disbursing Agent***" means, as applicable, (a) the Debtors or the Wind-Down Debtors, as applicable, or the Entity or Entities selected by the Debtors or the Wind-Down Debtors with the consent of the Prepetition First Lien Agent, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable; or (b) the Creditor Trustee or the Entity or Entities selected by the Creditor Trustee to make or facilitate distributions to Creditor Trust Beneficiaries contemplated under the Plan.

58.    "***Disclosure Statement***" means the *Disclosure Statement for the Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates*, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

59.    "***Disclosure Statement Order***" means the final order (and all exhibits and schedules thereto), entered by the Bankruptcy Court approving the Disclosure Statement.

60.    "***Disputed***" means, with respect to any Claim or Interest, any Claim or Interest (or any portion thereof): (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment.

61.    "***Distributable Proceeds***" means, subject only to funding the Post-Effective Date Funding Amount, the Professional Fee Escrow Account, and the Administrative / Priority Claims Reserve, all (a) Cash, (b) Cash proceeds generated from the use, sale, lease, liquidation, or other disposition of Estate property, and (c) Cash proceeds generated by the use, sale, lease, liquidation, or other disposition of any property belonging to the Wind-Down Debtors regardless whether such proceeds are collateral of any holder of a Secured Claim.  For the avoidance of doubt, any proceeds distributed on or prior to the Effective Date shall not be considered Distributable Proceeds.

62.    "***Distribution Record Date***" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Plan Distributions, which date shall be the Effective Date, or such other date as is designated in a Final Order of the Bankruptcy Court.

63.    "***Effective Date***" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.A of the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

64. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

65. "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

66. "*Excluded Parties*" means, collectively, (a) any person or entity that is or may be liable to any of the Debtors (or any successor thereto) in respect of any Retained Causes of Action; and (b) any Holder of Interests in SunPower (solely in its capacity as such) that is not a Releasing Party. For the avoidance of doubt, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, and each of their respective current and former Affiliates and Related Parties are not and shall not be deemed "Excluded Parties."

67. "*Exculpated Parties*" means, collectively, (a) each of the Debtors; (b) the Committee and each of its respective members; and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

68. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

69. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

70. "*File*" or "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

71. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

72. "*First Day Pleadings*" means the first-day pleadings that the Debtors Filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

73. "*General Unsecured Claim*" means any Claim that is: (a) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (b) not an Administrative Claim, a Priority Tax Claim, a Professional Fee Claim, an Other Priority Claim, an Other Secured Claim, a Prepetition First Lien Secured Claim, a Prepetition Second Lien Secured Claim, an Intercompany Claim, or a Section 510(b) Claim, and including, for the avoidance of doubt, any Prepetition First Lien Deficiency Claim and any Prepetition Second Lien Deficiency Claim, against the Debtors.

74. "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or any Wind-Down Debtor, as applicable.

75. "*Governmental Bar Date*" means the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

76. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

77.     "***GUC Avoidance Actions***" means any Avoidance Actions against any Holder of a General Unsecured Claim that is not an Insider or Affiliate of any Debtor.

78.     "***Holder***" means an Entity holding a Claim against or an Interest in any Debtor.

79.     "***Impaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

80.     "***Insider***" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

81.     "***Installer-Dealer Settlement***" means a settlement by and among SunPower and the Consenting Installer-Dealers on the terms and conditions set forth in the Installer-Dealer Settlement Term Sheet.

82.     "***Installer-Dealer Settlement Term Sheet***" means a term sheet setting forth the terms and conditions of the Installer-Dealer Settlement, which shall be acceptable to the Debtors, the Prepetition First Lien Agent, and the Committee, as the same may be amended, modified, or supplemented from time to time with the consent of the Debtors, the Prepetition First Lien Agent, and the Committee.

83.     "***Insurance Policies***" means all insurance policies issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including, without limitation, the D&O Liability Insurance Policies, but excluding any insurance policies transferred to a Purchaser pursuant to a Sale Transaction that is consummated before the Effective Date.

84.     "***Insurer***" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or Affiliates thereof.

85.     "***Intercompany Claim***" means any Claim held by a Debtor or an Affiliate of a Debtor against any Debtor arising before the Petition Date.

86.     "***Intercompany Interest***" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

87.     "***Interest***" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock, profit interest, unit, or share of any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

88.     "***Interim Compensation Order***" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 351] (as the same may be amended, supplemented, or modified from time to time after entry thereof).

89.     "***IRS***" means the United States Internal Revenue Service.

90.     "***Judicial Code***" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

91.     "***Lien***" means a lien as defined in section 101(37) of the Bankruptcy Code.

92.     "***Local Rules***" means the local rules of bankruptcy practice and procedure of the Bankruptcy Court.

93.     "***Non-Debtor Equity Interests***" means, collectively, any equity interests held by any Debtor or Wind-Down Debtor in any Entity that is not a Debtor or a Wind-Down Debtor.

94.     "***Non-Released Claims***" means all claims, Causes of Action (including, but not limited to, Avoidance Actions), or Interests belonging to the Debtors or their Estates that are not Released Claims pursuant to this Plan.

95.     "***Other Priority Claim***" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code; *provided* that any Other Priority Claim that is an Assumed Liability under a Purchase Agreement shall not (i) be satisfied from the Administrative / Priority Claims Reserve, (ii) be an obligation of the Debtors or the Wind-Down Debtors, and/or (iii) constitute an Other Priority Claim pursuant to this Plan.

96.     "***Other Secured Claim***" means any Secured Claim, other than claims arising under the Prepetition Loan Documents, that is secured by a Lien senior to the Lien securing Adequate Protection Liens (as defined in the Cash Collateral Order); *provided* that any Other Secured Claim that is an Assumed Liability under a Purchase Agreement shall not (i) be satisfied from the Administrative / Priority Claims Reserve, (ii) be an obligation of the Debtors or the Wind-Down Debtors, and/or (iii) constitute an Other Secured Claim pursuant to this Plan.  For the avoidance of doubt, the Prepetition Standby Letter of Credit Claim constitutes an Other Secured Claim to the extent of the cash collateral securing such claim and subject to the foregoing proviso.

97.     "***Person***" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

98.     "***Petition Date***" means August 5, 2024, the date on which each of the Debtors commenced the Chapter 11 Cases.

99.     "***Plan***" means this *Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, as may be altered, amended, modified, or supplemented from time to time.

100.     "***Plan Administrator***" means [●] of Alvarez & Marsal North America, LLC, to have all powers and authorities set forth in Article IV.F of this Plan.

101.     "***Plan Distribution***" means a payment or distribution to Holders of Allowed Claims in accordance with the Plan.

102.     "***Plan Supplement***" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the Plan Supplement Filing Date and may be further amended thereafter, including the following to the extent applicable:   (a) Rejected Executory Contracts and Unexpired Leases Schedule, (b) Assumed Executory Contracts and Unexpired Leases Schedule, (c) Schedule of Retained Causes of Action, (d) the Creditor Trust Agreement; (e) the Wind-Down Transactions Memorandum; (f) the Installer-Dealer Settlement Term Sheet; and (g) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Plan Supplement shall be in form and substance acceptable to the Prepetition First Lien Agent.

103.     "***Plan Supplement Filing Date***" means, the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

104.     "***Post-Effective Date Funding Amount***" means the sum of the Creditor Trust Cash, the Wind-Down Amount, and the Data Preservation Costs; *provided, however* that the Post-Effective Date Funding Amount shall not exceed $4,000,000.

105.    "***Prepetition First Lien Agent***" means Bank of America, N.A., in its capacity as administrative agent and collateral agent under the Prepetition First Lien Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition First Lien Credit Agreement.

106.    "***Prepetition First Lien Agent's Charging Lien***" means any Lien or other priority in payment to which the Prepetition First Lien Agent is entitled pursuant to the applicable Prepetition Loan Documents or any equivalent indemnification or reimbursement rights arising under the applicable Prepetition Loan Documents.

107.    "***Prepetition First Lien Claims***" means any Claims arising under, derived from, or based upon the Prepetition First Lien Credit Agreement or any ancillary document thereto, whether such Claims are Secured Claims or unsecured deficiency claims pursuant to section 506(a) of the Bankruptcy Code.

108.    "***Prepetition First Lien Credit Agreement***" means that certain credit agreement, dated as of September 12, 2022, as amended, supplemented, or modified from time to time, by and among SunPower, as borrower, each of the other Debtors, as guarantors party thereto, the Prepetition First Lien Lenders, and the Prepetition First Lien Agent.

109.    "***Prepetition First Lien Deficiency Claim***" means that portion of the Prepetition First Lien Claim, if any, that is not a Secured Claim.

110.    "***Prepetition First Lien Effective Date Distribution***" means the payment in Cash on the Effective Date in an amount equal to all then-existing Distributable Proceeds, up to the aggregate amount of Allowed Prepetition First Lien Secured Claims.

111.    "***Prepetition First Lien Lenders***" means, collectively, the banks, financial institutions, and other lenders party to the Prepetition First Lien Credit Agreement from time to time, each solely in their capacity as such.

112.    "***Prepetition First Lien Loans***" means loans outstanding under the Prepetition First Lien Credit Agreement.

113.    "***Prepetition First Lien Secured Claim***" means any Prepetition First Lien Claim that is a Secured Claim.

114.    "***Prepetition Loan Documents***" means the Prepetition First Lien Credit Agreement and Prepetition Second Lien Credit Agreement and, in each case, all other agreements, documents, and instruments executed or delivered in connection therewith or related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements, each as may be amended, restated, amended and restated, supplemented, waived, and/or otherwise modified from time to time.

115.    "***Prepetition Second Lien Agent***" means, collectively, GLAS USA LLC, in its capacity as administrative agent, and GLAS Americas LLC, in its capacity as collateral agent, in each case, under the Prepetition Second Lien Credit Agreement, or any successor administrative agent and/or collateral agent as permitted by the terms set forth in the Prepetition Second Lien Credit Agreement.

116.    "***Prepetition Second Lien Claims***" means any Claims arising under, derived from, or based upon the Prepetition Second Lien Credit Agreement or any ancillary document thereto, whether such Claims are Secured Claims or unsecured deficiency claims pursuant to section 506(a) of the Bankruptcy Code.

117.    "***Prepetition Second Lien Credit Agreement***" means that certain credit agreement, dated as of February 14, 2024, as amended, supplemented, or modified from time to time, by and among SunPower, as borrower, each of the other Debtors, as guarantors party thereto, the Prepetition Second Lien Lenders, and the Prepetition Second Lien Agent.

118.    "***Prepetition Second Lien Deficiency Claim***" means any Prepetition Second Lien Claim that is not a Secured Claim.

119.    "***Prepetition Second Lien Lenders***" means, collectively, the banks, financial institutions, and other lenders party to the Prepetition Second Lien Credit Agreement from time to time, each solely in their capacity as such.

120.    "***Prepetition Second Lien Loans***" means loans outstanding under the Prepetition Second Lien Credit Agreement.

121.    "***Prepetition Second Lien Secured Claim***" means any Prepetition Second Lien Claim that is a Secured Claim.

122.    "***Prepetition Standby Letter of Credit Claim***" means any Secured and unpaid Claims arising under, derived from, or based upon the Prepetition Standby Letter of Credit Facility.

123.    "***Prepetition Standby Letter of Credit Facility***" means the letter of credit facility provided for under that certain Standby Letter of Credit Agreement (Uncommitted), dated as of October 4, 2021, by and between SunPower and Bank of the West, as amended, supplemented, or modified from time to time.

124.    "***Prepetition Standby Letter of Credit Issuer***" means Bank of the West, as succeeded by BMO Bank N.A., in its capacity as issuer under the Prepetition Standby Letter of Credit Facility.

125.    "***Priority Claims***" means, collectively, Priority Tax Claims and Other Priority Claims.

126.    "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code; *provided* that any Priority Tax Claim that is an Assumed Liability under a Purchase Agreement shall not (i) be satisfied from the Administrative / Priority Claims Reserve, (ii) be an obligation of the Debtors or the Wind-Down Debtors, and/or (iii) constitute a Priority Tax Claim pursuant to this Plan.

127.    "***Pro Rata***" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

128.    "***Professional***" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

129.    "***Professional Fee Claim***" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

130.    "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

131.    "***Professional Fee Escrow Amount***" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.B.3 of the Plan.

132.    "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Objection Bar Date, or the Governmental Bar Date, as applicable.

133.    "***Purchase Agreement***" means one or more agreements entered into by some or all of the Debtors, on the one hand, and one or more parties, on the other hand, in connection with the Sale Transactions, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time.

134.    "***Purchaser***" means the purchasers under any Purchase Agreement(s).

135.    "***Quarterly Fees***" means any and all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the U.S. Code to the extent applicable.

136.    "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

137.    "***Rejected Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

138.    "***Related Party***" means, each of, and in each case in its capacity as such, current directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, and Professionals.  For the avoidance of doubt, the members of each Governing Body as of the Petition Date and the Debtors' officers as of the Petition Date are Related Parties of the Debtors.

139.    "***Released Parties***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) each of the Wind-Down Debtors; (c) the Plan Administrator; (d) the Creditor Trustee; (e) the Prepetition First Lien Agent; (f) the Prepetition First Lien Lenders; (g) solely in the case of a 2L/Sponsor Settlement, the Prepetition Second Lien Agent; (h) solely in the case of a 2L/Sponsor Settlement, the Prepetition Second Lien Lenders; (i) the Prepetition Standby Letter of Credit Issuer; (j) the Releasing Parties; (k) the Committee and its members (in their capacity as Committee members); (l) each current and former Affiliate of each Entity in clause (a) through the following clause (m); and (m) each Related Party of each Entity in clause (a) through this clause (m); *provided, however,* that none of the Excluded Parties shall be Released Parties.

140.    "***Releasing Parties***" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) each of the Wind-Down Debtors; (c) the Plan Administrator; (d) the Creditor Trustee; (e) the Prepetition First Lien Agent; (f) the Prepetition First Lien Lenders; (g) solely in the case of a 2L/Sponsor Settlement, the Prepetition Second Lien Agent; (h) solely in the case of a 2L/Sponsor Settlement, the Prepetition Second Lien Lenders; (i) the Prepetition Standby Letter of Credit Issuer; (j) all Holders of Claims against the Debtors who vote to accept the Plan; (k) all Holders of Claims against the Debtors who vote to reject the Plan and who affirmatively opt in to the releases provided by the Plan; (l) all Holders of Claims against the Debtors who are deemed to reject the Plan and who affirmatively opt in to the releases provided by the Plan; (m) all Holders of Claims against the Debtors who are deemed to accept the Plan and who affirmatively opt in to the releases provided by the Plan; (n) all Holders of Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (o) the Committee and its members (in their capacity as Committee members); (p) each current and former Affiliate of each Entity in clause (a) through the following clause (q) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (q) each Related Party of each Entity in clause (a) through this clause (q) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law; *provided, however,* that (x) none of the Excluded Parties may opt in to the releases provided by the Plan; and (y) none of the Excluded Parties shall be Releasing Parties.

141.    "***Retained Causes of Action***" means any Cause of Action listed on the Schedule of Retained Causes of Action, including GUC Avoidance Actions; *provided* that any and all Retained Causes of Action shall be Non-Released Claims.

142.    "***Sale Orders***" means the orders entered by the Bankruptcy Court approving the Sale Transactions.

143.    "***Sale Transactions***" means the sale transactions of all or some of the Debtors' assets to the applicable Purchasers, as approved by the Sale Orders.

144.     "***Sale Transaction Documents***" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors will effectuate the Sale Transactions, including, without limitation, the Sale Orders, the Bidding Procedures, the Bidding Procedures Motion, and the Bidding Procedures Order.

145.     "***Schedule of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement) that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be in form and substance acceptable to the Prepetition First Lien Agent and the Committee.

146.     "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

147.     "***SEC***" means the United States Securities and Exchange Commission.

148.     "***SEC Materials***" means any documents or records in the possession and control of the Debtors or the Wind-Down Debtors that are material to the SEC's investigation, *In the Matter of SunPower Corporation* (HO-14830).

149.     "***Section 1125(e) Parties***" means, collectively, (a) the Prepetition First Lien Agent; (b) the Prepetition First Lien Lenders; and (c) with respect to the Entities in clause (a) and (b), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

150.     "***Section 510(b) Claim***" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

151.     "***Secured***" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

152.     "***Securities Act***" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

153.     "***Securities Litigation***" means the action captioned *Piotr Jaszczyszyn, Individually and on Behalf of All Others Similarly Situated v. SunPower Corp. et al.*, Case No. 3:22-cv-00956-AMO (N.D. Cal.).

154.     "***Security***" means a security as defined in section 2(a)(1) of the Securities Act.

155.     "***Special Committee***" means the special committee of the board of directors of SunPower.

156.     "***Specified Released Party***" means any Entity (a) against whom any Debtor has or may assert any Avoidance Action; (b) that is not an insider of any Debtor; and (c) that does not owe any money to any Debtor as of the Effective Date.

157.     "***Sponsor-Related D&O***" means any current or former director, manager, or officer of any Debtor who is or was, while serving in such capacity, affiliated with any of the Sponsors.

158.     "***Sponsors***" means collectively, Sol Holding, LLC, its equity holders, and their respective Affiliates (including TotalEnergies SE and its Affiliates).

159.     "*SunPower*" means SunPower Corporation, a company incorporated under the Laws of Delaware.

160.     "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

161.     "*Third-Party Release*" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.B and Article VIII.C of the Plan.

162.     "*Total Claim*" means the Claim asserted by TotalEnergies Distributed Generation USA, LLC pursuant to the *Request of TotalEnergies Distributed Generation USA, LLC for Payment of Administrative Claim* [Docket No. 774].

163.     "*Treasury Regulations*" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

164.     "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

165.     "*Unclaimed Distribution*" means any Plan Distribution on account of an Allowed Claim to a Holder that has not: (a) accepted a particular Plan Distribution or, in the case of Plan Distributions made by check, negotiated such check within ninety calendar days of receipt; (b) given notice to the Wind-Down Debtors or the Creditor Trustee, as applicable, of an intent to accept a particular Plan Distribution within ninety calendar days of receipt; (c) responded to, as applicable, the Debtors', Wind-Down Debtors', or Creditor Trustee's requests for information necessary to facilitate a particular Plan Distribution prior to the deadline included in such request for information; or (d) taken any other action necessary to facilitate such Plan Distribution.

166.     "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

167.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

168.     "*Voting Deadline*" means 4:00 p.m. (prevailing Eastern Time) on October 15, 2024.

169.     "*Waterfall Recovery*" has the meaning set forth in Article IV.C.

170.     "*Wind-Down*" means the wind-down, dissolution, and liquidation of the Debtors' Estates after the Effective Date.

171.     "*Wind-Down Amount*" means the total funds needed to Wind-Down, as set forth in the Wind-Down Budget, which amount shall be determined with the consent of the Prepetition First Lien Agent and shall equal $2,000,000.

172.     "*Wind-Down Budget*" means a budget for the activities and expenses to be incurred in connection with the Wind-Down, which shall include amounts necessary to fund (a) the Administrative / Priority Claims Reserve; (b) the Wind-Down Amount; (c) the costs of preserving certain data and related activities in an amount not to exceed $1,000,000 (the "*Data Preservation Funds*"), and (d) the Professional Fee Escrow Account, which shall be in form and substance acceptable to the Prepetition First Lien Agent.

173.     "*Wind-Down Debtors*" means the Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

174.     "*Wind-Down Debtors' Account*" means the Debtors' bank account or accounts used to fund all expenses and payments required to be made by the Wind-Down Debtors, which account will be funded on the Effective Date with the Wind-Down Amount.  For the avoidance of doubt, the Wind-Down Debtors' Account shall become property of the Wind-Down Debtors on the Effective Date.

175.     "***Wind-Down Debtors' Assets***" means all of the remaining assets of the Debtors' Estates on the Effective Date, excluding (a) the Professional Fee Escrow Amounts held in the Professional Fee Escrow Account and (b) the Creditor Trust Assets.

176.     "***Wind-Down Transactions***" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Plan Administrator reasonably determines to be necessary to implement the Wind-Down, as described in more detail in Article IV.B herein, which transactions shall be in accordance with the Wind-Down Budget and shall require the consent of the Prepetition First Lien Agent.

177.     "***Wind-Down Transactions Memorandum***" means that certain memorandum in form and substance acceptable to the Prepetition First Lien Agent as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Wind-Down Transactions, the form of which shall be included in the Plan Supplement.

B.     *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The consent rights in favor of the Prepetition First Lien Agent in this Plan shall transfer to the Prepetition Second Lien Lenders upon the payment in full of the Prepetition First Lien Claims.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Wind-Down Debtors, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Wind-Down Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.      *No Substantive Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on

which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim (other than a Professional Fee Claim) that is not an Assumed Liability under any Purchase Agreement shall instead be satisfied solely from the Administrative / Priority Claims Reserve; *provided further*, that the satisfaction of such Administrative Claims from the Administrative / Priority Claims Reserve or otherwise shall be in accordance with the priorities set forth in the Cash Collateral Order.

Except with respect to Administrative Claims that are Professional Fee Claims or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Wind-Down Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Wind-Down Debtors and the requesting party by the Administrative Claims Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, or their property, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors or the Wind-Down Debtors or any notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.      *Professional Fee Claims*

    1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Wind-Down Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

    2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Confirmation Date following the satisfaction of the condition precedent in Article IX.A.10 of the Plan and no later than the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Wind-Down Debtors, as applicable, from the funds held in the Professional Fee Escrow Account or the Wind-Down Debtors' Account, as applicable, as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors and constitute part of the Wind-Down Debtors' Assets without any further notice to or action, order, or approval of the Bankruptcy Court, which amounts shall be Distributable Proceeds and promptly distributed in accordance with the Plan (including the Waterfall Recovery).

3. Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of any Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide a timely estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Wind-Down Debtors shall use Cash on hand or from the Wind-Down Debtors' Account to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4. Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Wind-Down Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Wind-Down Debtors or, solely as it pertains to the final fee applications, the Committee, and in each case solely in accordance with the Wind-Down Budget. The Wind-Down Debtors shall pay, within ten Business Days after submission of a detailed invoice to the Wind-Down Debtors (a copy of which shall be provided to the Prepetition First Lien Agent), as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors, Wind-Down Debtors, or Committee, as applicable, solely in accordance with the Wind-Down Budget. If the Debtors, the Wind-Down Debtors, or the Prepetition First Lien Agent, as applicable, dispute the reasonableness of any such invoice, the Debtors or Wind-Down Debtors, as applicable, or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind-Down Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court solely in accordance with the Wind-Down Budget.

C.    *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that any Allowed Priority Tax Claim that is not an Assumed Liability under any Purchase Agreement shall instead be satisfied solely from the Administrative / Priority Claims Reserve.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Plan Distributions and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition First Lien Secured Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Second Lien Secured Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Interests in SunPower | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors, the Wind-Down Debtors, or the Creditor Trustee (as applicable) and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

   1.      Class 1 – Other Secured Claims

      (a)      *Classification*:  Class 1 consists of all Other Secured Claims.

      (b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or Wind-Down Debtors, as applicable, and with the consent of the Prepetition First Lien Agent:

(i)      payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii)     the collateral securing such Holder's Allowed Other Secured Claim;

(iii)    Reinstatement of such Holder's Allowed Other Secured Claim; or

(iv)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.    Class 2 – Other Priority Claims

(a)    *Classification*:  Class 2 consists of all Other Priority Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, which determination shall be made with the consent of the Prepetition First Lien Agent.

(c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.    Class 3 – Prepetition First Lien Secured Claims

(a)    *Classification*:  Class 3 consists of all Prepetition First Lien Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition First Lien Secured Claim agrees to less favorable treatment, each Holder of Prepetition First Lien Secured Claims shall receive (i)  in Cash on the Effective Date, the Prepetition First Lien Effective Date Distribution, (ii) their Pro Rata share of the Distributable Proceeds, if any, up to the Allowed amount of such Prepetition First Lien Secured Claims in accordance with the Waterfall Recovery until such Claims are paid in full, and (iii) solely with respect to the Creditor Trust First Lien Amount, Creditor Trust Beneficial Interests entitled to distributions, if any, in accordance with Creditor Trust Recovery.

(c)    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Prepetition First Lien Secured Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – Prepetition Second Lien Secured Claims

(a)    *Classification*:  Class 4 consists of all Prepetition Second Lien Secured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Second Lien Secured Claim agrees to less favorable treatment, each Holder of Prepetition Second Lien Secured Claims shall be entitled to their Pro Rata share of the Distributable Proceeds, if

any, up to the Allowed amount of such Prepetition Second Lien Secured Claims in accordance with the Waterfall Recovery until such Claims are paid in full.

(c)     *Voting*: Class 4 is Impaired under the Plan. Holders of Prepetition Second Lien Secured Claims, if any, are entitled to vote to accept or reject the Plan.

5.     Class 5 – General Unsecured Claims

(a)     *Classification:* Class 5 consists of all General Unsecured Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of a General Unsecured Claim shall be entitled to their Pro Rata share of (i) the Distributable Proceeds, if any, up to the Allowed amount of such General Unsecured Claims in accordance with the Waterfall Recovery until such claims are paid in full and (ii) Creditor Trust Beneficial Interests entitled to distributions, if any, in accordance with Creditor Trust Recovery.

(c)     *Voting:* Class 5 is Impaired under the Plan. Holders of General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6.     Class 6 – Intercompany Claims

(a)     *Classification*: Class 6 consists of all Intercompany Claims.

(b)     *Treatment*: Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Sale Orders, shall, at the election of the applicable Debtor or Wind-Down Debtors, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released, or (d) otherwise addressed at the option of the Debtors or Wind-Down Debtors, as applicable, without any distribution, in each case, in accordance with the Wind-Down Transactions Memorandum; *provided* that such claims shall not be Reinstated without the consent of the Prepetition First Lien Agent.

(c)     *Voting*: Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.     Class 7 – Intercompany Interests

(a)     *Classification:* Class 7 consists of all Intercompany Interests.

(b)     *Treatment*: Allowed Intercompany Interests shall, at the election of the applicable Debtor, be (a) Reinstated, (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, or (c) otherwise addressed at the option of the Debtors or Wind-Down Debtors, as applicable, with the consent of the Prepetition First Lien Agent without any distribution, in each case, in accordance with the Wind-Down Transactions Memorandum.

(c)     *Voting*: Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the

Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8.      Class 8 – Interests in SunPower

(a)      *Classification:*  Class 8 consists of all Interests in SunPower.

(b)      *Treatment*:  Interests in SunPower shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in SunPower will not receive any distribution on account of such Interests.

(c)      *Voting:*  Class 8 is Impaired under the Plan.  Holders of Interests in SunPower are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.      Class 9 – Section 510(b) Claims

(a)      *Classification:*  Class 9 consists of all Section 510(b) Claims.

(b)      *Treatment*:  Allowed Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.  The Debtors are not aware of any valid Section 510(b) Claims and believe that no such Section 510(b) Claims exist.

(c)      *Voting:*  Class 9 is Impaired under the Plan.  Holders, if any, of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders, if any, are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Wind-Down Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

G.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Purchasers in the Sale Transactions, and in exchange for the Debtors' and Wind-Down Debtors' agreement under the Plan to provide management services to certain other Debtors and Wind-Down Debtors, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Wind-Down Debtors to the Holders of certain Allowed Claims.

H.      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, to the extent provided by the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, and Causes of Action, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all Plan Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Wind-Down Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable, shall, with the consent of the Prepetition First Lien Agent, enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, including, as applicable and without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate

certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other actions and transactions that are required to effectuate the Wind-Down Transactions, including the winding down and dissolution of any direct or indirect subsidiaries of the Wind-Down Debtors; (e) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law; (g) abandoning any Non-Debtor Equity Interests; and (h) implementing the Installer-Dealer Settlement.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.      *Sources of Consideration for Plan Distributions and Waterfall Recovery*

On or after the Effective Date, the Debtors or the Plan Administrator, as applicable, shall make Plan Distributions on account of Allowed Claims in accordance with Article III.B herein using the Distributable Proceeds. Distributable Proceeds shall be paid to Holders of Allowed Claims until paid in full from time to time in the following priority (in each case on a Pro Rata basis) in accordance with Article II and Article III.B herein (as applicable): (a) *first*, on account of Allowed Administrative Claims and Priority Tax Claims; (b) *second*, on account of Allowed Other Secured Claims (solely to the extent such proceeds are on account of collateral for such Allowed Other Secured Claim); (c) *third*, on account of Allowed Other Priority Claims; (d) *fourth*, on account of Allowed Prepetition First Lien Secured Claims; (e) *fifth*, on account of Allowed Prepetition Second Lien Secured Claims; (f) *sixth*, on account of Allowed General Unsecured Claims; *provided* that the aggregate amount of Distributable Proceeds allocated to Allowed Administrative Claims, Priority Tax Claims, Allowed Other Secured Claims, and Allowed Other Priority Claims shall not exceed the Administrative / Priority Claims Reserve Amount; and (g) *seventh*, any amount not needed to satisfy (a) through (f) hereof shall be paid to the Creditor Trust (collectively, the "Waterfall Recovery").

D.      *Wind-Down Debtors*

1.      Purpose

The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any Wind-Down Debtors' Assets held by the Wind-Down Debtors, if any, (2) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (3) establishing and funding the Administrative / Priority Claims Reserve, (4) paying or otherwise satisfying Allowed Claims (other than Allowed General Unsecured Claims), (5) filing appropriate tax returns, (6) winding down and dissolving any direct or indirect subsidiaries of the Wind-Down Debtors; and (7) administering the Plan in an efficacious manner.  The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court (except for any Creditor Trust Claims, in which case the Creditor Trust shall be deemed to be substituted as the party-in-lieu of the Debtors), in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter.

2.      Administrative / Priority Claims Reserve

On the Effective Date, the Wind-Down Debtors shall establish the Administrative / Priority Claims Reserve in accordance with the consent rights of the Prepetition First Lien Agent by depositing Cash in the amount of the Administrative / Priority Claims Reserve Amount into the Administrative / Priority Claims Reserve (and the Plan Administrator shall deposit Cash into or withdraw Cash from the Administrative / Priority Claims Reserve if the Administrative / Priority Claims Reserve Amount changes at any time).  The Administrative / Priority Claims Reserve Amount shall be used to pay Holders of all Allowed Priority Claims, Allowed Other Priority Claims, Allowed Administrative Claims (other than Professional Fee Claims), Allowed Priority Tax Claims, and Allowed Other Secured Claims in full; *provided, however*, for the avoidance of doubt, that any such Allowed Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, or other Allowed Other Secured Claims that are Assumed Liabilities shall be satisfied under the Purchase Agreement(s) and shall not be satisfied from the Administrative / Priority Claims Reserve.  If all or any portion of any such Claim shall become a Claim that is not Allowed, then the

amount on deposit in the Administrative / Priority Claims Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Administrative / Priority Claims Reserve, shall remain in the Administrative / Priority Claims Reserve to the extent that the Wind-Down Debtors determine necessary to ensure that the Cash remaining in the Administrative / Priority Claims Reserve is sufficient to ensure that all Allowed Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, or other Allowed Other Secured Claims (that are not Assumed Liabilities) will be paid in accordance with the Plan without any further action or order of the Bankruptcy Court.  Any amounts remaining in the Administrative / Priority Claims Reserve after payment of all Allowed Priority Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, or Allowed Other Secured Claims (or any amount in excess of that reasonably needed to be reserved for any Disputed Claims) shall promptly be transferred to the Wind-Down Debtors for distribution in accordance with the Waterfall Recovery without further action or order of the Bankruptcy Court.

E.      Vesting of Assets

On the Effective Date, the Wind-Down Debtors' Assets shall vest in the Wind-Down Debtors for the primary purpose of liquidating the Wind-Down Debtors' Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business.  The Wind-Down Debtors will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Debtors' Assets, make timely Plan Distributions and Confirmation Order, and not unduly prolong its duration.  Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan.  The Wind-Down Debtors shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

F.      Plan Administrator

On the Confirmation Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor as the sole director and the sole officer of the Wind-Down Debtors and shall succeed to the powers of such Debtor's directors and officers.  The Plan Administrator shall be the sole representative of, and shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  For the avoidance of doubt, the foregoing shall not limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former director or officer.

The Plan Administrator shall have the power and authority to implement the Wind-Down Transactions, including administering and distributing the amounts set forth in the Administrative / Priority Claims Reserve in accordance with the Plan.  The Plan Administrator shall be entitled to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors, upon the monthly submission of statements to the Plan Administrator and solely in accordance with the Wind-Down Budget.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

G.      Exculpation, Indemnification, Insurance, and Liability Limitation

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

*H.      Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Wind-Down Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

*I.       Dissolution of the Wind-Down Debtors*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all Plan Distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, each of the Wind-Down Debtors shall be deemed to be dissolved without any further action by such Wind-Down Debtor, including the filing of any documents with the secretary of state for the state in which each such Wind-Down Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

*J.       Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto. The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court.

*K.      Cancellation of Securities and Agreements*

Except for the purpose of enabling Holders of Allowed Claims to receive a Plan Distribution as provided herein and except as otherwise set forth in this Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and cancelled.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

Except as otherwise set forth in the Plan, the Prepetition First Lien Agent shall be released and discharged from all duties and responsibilities under the applicable Prepetition Loan Documents; *provided*, that notwithstanding the releases in Article VIII of the Plan, entry of the Confirmation Order, or the occurrence of the Effective Date, each of the Prepetition Loan Documents or agreement that governs the rights of the Holder of a Claim shall continue in effect to the extent necessary to: (i) enforce the rights, Claims, and interests of the Prepetition First Lien Agent thereto vis-a-vis any parties other than the Released Parties; (ii) allow the Holders of Allowed Prepetition First Lien Claims to receive Plan Distributions, to the extent provided for under the Plan; (iii) appear to be heard in the Chapter 11 Cases or in any proceedings in this Bankruptcy Court or any other court; (iv) preserve any rights of the Prepetition First Lien Agent to payment of fees, expenses, and indemnification obligations from or on any money or property to be distributed in respect of the Allowed Prepetition First Lien Claims, including permitting the Prepetition First Lien

Agent to maintain, enforce, and exercise the Prepetition First Lien Agent's Charging Lien against such distributions; and (v) enforce any obligation owed to the Prepetition First Lien Agent under the Plan.

Except as otherwise set forth in the Plan, the Prepetition Second Lien Agent shall be released and discharged from all duties and responsibilities under the applicable Prepetition Loan Documents; *provided*, that notwithstanding the releases in Article VIII of the Plan, entry of the Confirmation Order, or the occurrence of the Effective Date, each of the Prepetition Loan Documents or agreement that governs the rights of the Holder of a Claim shall continue in effect to the extent necessary to: (i) enforce the rights, Claims, and interests of the Prepetition Second Lien Agent thereto vis-a-vis any parties other than the Released Parties; (ii) allow the Holders of Allowed Prepetition Second Lien Claims to receive Plan Distributions, to the extent provided for under the Plan; (iii) appear to be heard in the Chapter 11 Cases or in any proceedings in this Bankruptcy Court or any other court; (iv) preserve any rights of the Prepetition Second Lien Agent to payment of fees, expenses, and indemnification obligations from or on any money or property to be distributed in respect of the Allowed Prepetition Second Lien Claims; and (v) enforce any obligation owed to the Prepetition Second Lien Agent under the Plan.

L.      *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (1) selection of the Plan Administrator; (2) implementation of the Wind-Down Transactions (including the steps set forth in the Wind-Down Transactions Memorandum); (3) consummation of the Sale Transactions under the Sale Transaction Documents; (4) funding of all applicable escrows and accounts; and (5) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Wind-Down Debtors.  The authorizations and approvals contemplated by this Article IV.L shall be effective notwithstanding any requirements under non-bankruptcy law.

M.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order and the Wind-Down Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

N.      *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtors or to any other Person or from the Wind-Down Debtors to the Creditor Trust or any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtors; (2) the Wind-Down Transactions; (3) any Sale Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or

governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

*O.      D&O Liability Insurance Policies; Other Insurance Matters*

On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date on terms no less favorable than the Debtors' D&O Liability Insurance Policies and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies upon placement.  Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

On the Effective Date, all D&O Liability Insurance Policies shall be assumed by the Wind-Down Debtors, unaltered and in their entireties, pursuant to sections 105, 365, and/or 1123 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policies available to any individuals and/or entities under such D&O Liability Insurance Policies in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policies, which terms and conditions shall not be altered.  For clarity, coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in the D&O Liability Insurance Policies in accordance with the terms thereof; *provided, however,* that the Holder(s) of a Claim for an indemnity obligation will look only to the D&O Liability Insurance Policies for recovery and not to the Debtors, the Debtors' Estates, or the Wind-Down Debtors.

Nothing in the Plan or the Confirmation Order shall (a) constitute a finding or stipulation that any proceeds of any of the D&O Liability Insurance Policies are property of the Estates; (b) modify or supersede any provision (including, but not limited to, any priority of payments provision) of any of the D&O Liability Insurance Policies; or (c) otherwise preclude any individual or entity entitled to coverage under any applicable D&O Liability Insurance Policies from seeking and obtaining coverage under such applicable D&O Liability Insurance Policies in accordance with and subject in all respects to the terms and conditions of such applicable D&O Liability Insurance Policies.

Without limiting the foregoing and notwithstanding anything in this Plan to the contrary, neither the automatic stay of section 362(a) of the Bankruptcy Code nor the injunction set forth in Article VIII.E of the Plan or the Confirmation Order shall prevent or impair the ability of an individual within the definition of "Insured" in any of the D&O Liability Insurance Policies from seeking coverage or reimbursement under any D&O Liability Insurance Policies.  To the extent necessary, upon the Effective Date of the Plan, the automatic stay of section 362(a) of the Bankruptcy Code and the injunction set forth in Article VIII.E of this Plan shall be deemed lifted without further order of the Bankruptcy Court, solely to allow each such "Insured" to make a claim under and draw on applicable D&O Liability Insurance Policies in accordance with the terms of the applicable D&O Liability Insurance Policies.

All rights of the Debtors and their Estates pursuant to any Insurance Policies under which any Debtor and/or its Estate is or may be a beneficiary shall vest with the Wind-Down Debtors for the benefit of all of the beneficiaries of such policies.

*P.      Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII hereof, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Creditor Trust or the Wind-Down Debtors, as applicable.  The Creditor Trustee or the Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle,

compromise, release, withdraw, or litigate to judgment such Causes of Action, as appropriate, in accordance with the best interests of the Creditor Trust and the Wind-Down Debtors, as applicable, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

**No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or if applicable, the Creditor Trustee, will not pursue any and all available Causes of Action against it. The Debtors and the Creditor Trustee expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.**

Q.      *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security. As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Wind-Down Debtors (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within ninety days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

R.      *Installer-Dealer Settlement*

On and after the Effective Date, the Debtors and the Wind-Down Debtors, as applicable, and the Consenting Installer-Dealers shall consummate and implement the Installer-Dealer Settlement.

S.      *Abandonment of Non-Debtor Equity Interests.*

On or after the Effective Date, the Debtors and the Wind-Down Debtors may, with the reasonable consent of the Prepetition First Lien Agent, abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

### ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is an Insurance Policy assumed pursuant to Article V.E of the Plan; (5) is any Sale Transaction Document; (6) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transactions and pursuant to the Sale Transaction Documents; or (7) is identified on the Rejected Executory Contracts and Unexpired Leases Schedule.

For each Executory Contract and Unexpired Lease identified in the Rejected Executory Contracts and Unexpired Leases Schedule, the rejection effective date shall be the later of (1) the Effective Date; (2) the rejection effective date specified herein with respect to such Executory Contract or Unexpired Lease (or such other date as the

Debtors or the Wind-Down Debtors, as applicable, may agree or provide notice of to the applicable counterparty); or (3) solely in the case of an Unexpired Lease for nonresidential real property, the date that the Debtors or Wind-Down Debtors, as applicable, surrender possession and control of the premises to the landlord and notify the landlord of the same in writing (email being sufficient).

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to the Purchasers pursuant to the Sale Transaction Documents. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Wind-Down Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

Notwithstanding anything to the contrary in the Plan or the Sale Transaction Documents, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in this Article V of the Plan and in the Plan Supplement. The Debtors or the Wind-Down Debtors, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Sale Orders.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Debtors and the Holder of such Claim.

C.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

As set in the Bidding Procedures Order, the deadline to object to, among other things, the Debtors' proposed cure amount with respect to an Unexpired Lease or Executory Contract that was included in the Cure Notice, occurred on the Cure Notice Objection Date. Notwithstanding the Cure Notice Objection Date having passed, counterparties to Executory Contracts and Unexpired Leases will retain the right to object to the assumption of an Executory Contract or Unexpired Lease on the basis of events occurring after the Cure Notice Objection Date, including additional cure

amounts that arise from defaults occurring after Cure Notice Objection Date, adequate assurance of performance in light of the transactions contemplated in the Plan, and/or the identity of any entity (or direct or indirect owner of such entity) that the Debtors designate as assuming or becoming the assignor under an Executory Contract or Unexpired Lease. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount by the objection deadline set forth in the Cure Notice will be deemed to have assented to such assumption or assumption and assignment and cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Wind-Down Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Rejected Executory Contracts and Unexpired Leases Schedule, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

D.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

E.    Insurance Policies

Each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Notwithstanding anything to the contrary in the Plan, the Confirmation Order, or any other document filed in the Chapter 11 Cases, (a) on the Effective Date, the Wind-Down Debtors shall be deemed to have assumed all Insurance Policies that are not listed in the Rejected Executory Contracts and Unexpired Leases Schedule (the "**Assumed Insurance Policies**"), unaltered and in their entireties, pursuant to sections 105, 365, and/or 1123 of the Bankruptcy Code and, upon such assumption, all Assumed Insurance Policies shall vest, unaltered and in their entireties, in the Wind-Down Debtors; (b) on and after the Effective Date, the Wind-Down Debtors shall become and remain liable in full for all obligations of the Debtors, the Wind-Down Debtors, and the Plan Administrator under the Assumed Insurance Policies regardless of whether such obligations arise before, on, or after the Effective Date, without the need or requirement for any Insurers to file or serve any notice of recoupment or a request, application, claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim or any objection to a proposed cure amount or Cure Claim and without any Insurers being subject to any Claims Bar Date, Administrative Claims Bar Date, or similar deadline governing cure amounts, Cure Claims, or other Claims; (c) nothing alters, amends, modifies, waives, releases, diminishes, prejudices, or impairs (i) any of the rights and obligations of the Debtors and their Estates (or, after the Effective Date, the Wind-Down Debtors), of any Insurers, or of any other individuals or entities under any Insurance Policies; (ii) any coverage or benefits provided under any Insurance Policies; (iii) the terms and conditions of any Insurance Policies; or (iv) the enforceability of any Insurance Policies; (d) after the Effective Date, nothing shall permit or otherwise effectuate a sale, assignment, or other transfer of any Assumed Insurance Policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any Assumed Insurance Policy without the prior express written consent of the applicable Insurer; and (e) on the Effective Date, the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VIII.E of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims

against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII.E of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) Insurers to cancel any Insurance Policies and take other actions relating to the Insurance Policies, in each case, in accordance with the terms of such Insurance Policies (including effectuating a setoff and/or asserting any recoupment or subrogation rights or claims).

*F.      Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*G.      Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Leases Schedule, the Assumed Executory Contracts and Unexpired Leases Schedule, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind-Down Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

*H.      Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.      Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or the Confirmation Order, on the Effective Date (or if a Claim is not an Allowed Claim or on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  After such initial distribution, the Disbursing Agent shall distribute additional Distributable Proceeds as soon as practicable upon such Distributable Proceeds becoming available to the Debtors or the Wind-Down Debtors.  Such additional Distributable Proceeds shall be distributed in accordance with the Waterfall Recovery and this Plan.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on Plan Distributions, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

All Plan Distributions shall be made by the applicable Disbursing Agent. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties. Plan Distributions in respect of Allowed Prepetition First Lien Claims shall be subject in all respects to the right of the Prepetition First Lien Agent to assert the Prepetition First Lien Agent's Charging Lien, if any, against such Plan Distributions.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided, however,* that the Debtors or the Wind-Down Debtors, as applicable, shall maintain the Claims Register.

2.      Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Wind-Down Debtors solely in accordance with the Wind-Down Budget or the Creditor Trust, as applicable.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, Plan Distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.      Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make Plan Distributions to Holders of Allowed Claims (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Plan Distribution; *provided* that the manner of such Plan Distributions shall be determined at the discretion of the applicable Disbursing Agent; *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

3. <u>Minimum Distributions</u>

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VII from asserting that Claim against the Debtors, the Wind-Down Debtors, the Creditor Trust, or their respective property.

4. <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any Holder of an Allowed Claim (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the applicable Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revest in the Wind-Down Debtors or the Creditor Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property in property shall be extinguished and forever barred.

E. *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Wind-Down Debtors, the Disbursing Agent, and any applicable withholding agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plan Distributions to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Debtors, the Wind-Down Debtors, the Disbursing Agent, and any applicable withholding agent, as applicable, reserve the right to allocate all Plan Distributions in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F. *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

G. *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order or required by applicable bankruptcy and non-bankruptcy law, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable.

H. *Setoffs and Recoupment*

Except as expressly provided in this Plan (including the Plan Supplement), the Wind-Down Debtors may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action (other than Avoidance Actions) that the Wind-Down Debtors may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Wind-Down Debtors and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the

Wind-Down Debtors or their successor of any and all claims, rights, and Causes of Action that the Wind-Down Debtors or their successor may possess against the applicable Holder. Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against the Purchasers following consummation of the Sale Transactions.

I.      *No Double Payment of Claims*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

J.      *Claims Paid or Payable by Third Parties*

1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim Objection having to be Filed and without any notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Wind-Down Debtor on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Debtor or Wind-Down Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Plan Distribution. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or Wind-Down Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen day grace period specified above until the amount is repaid.

2.      <u>Claims Payable by Third Parties</u>

No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more Insurers pays in full or in part a Claim, then immediately upon such Insurers' payment of such Claim, the applicable portion of such Claim may be expunged without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan (including the Plan Supplement), payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

A.      *Allowance of Claims*

After the Effective Date, each of the Wind-Down Debtors shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date; *provided*, *however*, that the Plan Administrator or Creditor Trust shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim to which they may object, except with respect to any Claim that is Allowed. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

B.      *Claims Administration Responsibilities*

With respect to all Classes of Claims and amounts distributable under the Plan, and except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Plan Administrator or the Creditor Trust, as applicable, shall have the sole authority (solely in relation to Class 5 Claims in the case of the Creditor Trust, and in relation to any other Claims in the case of the Plan Administrator) to: (a) File and prosecute Claim Objections; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claim Objections, regardless of whether such Claims are in a Class or otherwise (*provided, however*, that the Plan Administrator shall provide prior notice to the Creditor Trustee prior to seeking the reclassification, in whole or in part, of any Claim other than a General Unsecured Claim to a General Unsecured Claim and the Creditor Trustee shall have standing to object to any such reclassification); (c) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided, however*, that (i) the Plan Administrator shall provide prior notice to the Creditor Trustee prior to seeking the reclassification, in whole or in part, of any Claim other than a General Unsecured Claim to a General Unsecured Claim and the Creditor Trustee shall have standing to object to any such reclassification and (ii) the Creditor Trustee shall provide prior notice to the Plan Administrator prior to seeking the reclassification, in whole or in part, of any General Unsecured Claim to any Claim other than a   General Unsecured Claim and the Plan Administrator shall have standing to object to any such reclassification.   After the Effective Date, the Plan Administrator or the Creditor Trust, as applicable, shall resolve Disputed Claims in accordance with their fiduciary duties and pursuant to the terms of the Plan.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Wind-Down Debtors or Creditor Trustee, as applicable, shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action pursuant to Article IV.P of the Plan.

The Debtors up to the Effective Date, and the Wind-Down Debtors on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register and to administer and adjust the Claims Register in regard to allowance of Claims.  The Debtors or the Wind-Down Debtors, as applicable, may, as applicable, maintain the retention of the Claims and Noticing Agent and develop a budget for compensation of the Claims and Noticing Agent following the Effective Date to be incorporated with the Wind-Down Budget.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Wind-Down Debtors, the Plan Administrator, or Creditor Trust, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate the amount of any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim or Interest, including during the litigation of any

objection to any Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Claim or Interest, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of Plan Distributions) and may be used as evidence in any supplemental proceedings, and the Wind-Down Debtors or Creditor Trust, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.    *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied (including through such Claim or Interest being assigned to any third party) may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtors or, with respect to General Unsecured Claims, by the Creditor Trustee after notice to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) one-hundred eighty days after the Effective Date and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims.  For the avoidance of doubt, Administrative Claims are subject to the Administrative Claims Objection Bar Date and the period of limitation set forth herein shall not apply to Administrative Claims.

F.    *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtors.

G.    *Amendments to Proofs of Claims or Interests*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior written authorization of, as applicable, the Bankruptcy Court, the applicable Debtor or Wind-Down Debtor, or, with respect to General Unsecured Claims, the Creditor Trustee.  Absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.    *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.    *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a

Final Order, the applicable Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
### SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.    *Release of Liens*

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim, including, for the avoidance of doubt, any Prepetition First Lien Secured Claim and Prepetition Second Lien Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. For the avoidance of doubt, notwithstanding anything in the Plan or the Confirmation Order to the contrary, this Article VIII.A shall not apply to the Liens securing the Prepetition First Lien Claims or the Prepetition Second Lien Claims, which shall continue to be secured by all existing Liens and other security interests granted under the Prepetition Loan Documents.**

**If any Holder of a Secured Claim that has been satisfied or released in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.**

B.    *Releases by the Debtors*

**Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtors, or other Entity, or that any Holder of any Claim against or Interest in a Debtor, the Wind-Down Debtors, or other Entity could have asserted on behalf of the Debtors or the Wind-Down Debtors, based on or relating to, or in any manner arising from, in whole or**

in part, the Debtors or the Wind-Down Debtors (including the Debtors' and the Wind-Down Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including the Prepetition Loan Documents), the business or contractual arrangements between any Debtor or Wind-Down Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors or the Wind-Down Debtors), intercompany transactions between or among a Debtor, the Wind-Down Debtors, or an affiliate of a Debtor and another Debtor, the Wind-Down Debtors, or affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Specified Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors, the Wind-Down Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Avoidance Actions.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions; or (2) any matters retained by the Creditor Trust or the Wind-Down Debtors, as applicable, pursuant to the Schedule of Retained Causes of Action. As to any Retained Causes of Action against the Debtors' current or former directors, managers, or officers, any judgment or settlement on account of such Retained Causes of Action will only be enforced and collected from and to the extent of insurance proceeds available under the Debtors' D&O Liability Insurance Policies, except that the foregoing limitation shall not apply to any Retained Causes of Action against the Debtors' former chief executive officer, Peter Faricy, or any Sponsor-Related D&O.

C.      *Releases by the Releasing Parties*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Wind-Down Debtors, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors or the Wind-Down Debtors (including the Debtors' and the Wind-Down Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan (including the Prepetition Loan Documents), the business or contractual arrangements between any Debtor or Wind-Down Debtor and any Released Party, the

Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors or the Wind-Down Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions; (2) the rights of any Holder of Allowed Claims to receive distributions under the Plan; or (3) any Causes of Action (if any) against any defendant named in the Securities Litigation.

D.    *Exculpation*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party and, solely to the extent provided by section 1125(e) of the Bankruptcy Code, no Section 1125(e) Party, shall have or incur any liability for, and each such Party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Sale Transactions, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transactions, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

E.    *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors and the Wind-Down Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Wind-Down Debtors (but solely to the extent such action is brought against the Debtors or the Wind-Down Debtors to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, and solely to the extent

provided by section 1125(e) of the Bankruptcy Code, the Section 1125(e) Parties, the Released Parties, and any successors, assigns or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan: (a) commencing or continuing in any manner any Claim, action, or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance of any kind; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.  All Persons or Entities who directly or indirectly have held, hold, may hold, or seek to assert Claims or Causes of Action that (x) have been released in this Plan (the "*Released Claims*") or (y) that are subject to exculpation (the "*Exculpated Claims*"), shall be enjoined from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (ii) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree, or order on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iii) creating, perfecting, or enforcing any encumbrance of any kind on account of or in connection with or with respect to the Released Claims and Exculpated Claims; (iv) asserting any right of subrogation on account of or in connection with or with respect to the Released Claims and Exculpated Claims, except to the extent that a permissible right of subrogation is asserted with respect to a timely filed proof of claim; or (v) or commencing or continuing in any manner any action or other proceeding on account of or in connection with or with respect to the Released Claims and Exculpated Claims; *provided, however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud, or willful misconduct.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors and any property dealt with by the Plan until the closing of these Chapter 11 Cases.  Notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin the enforcement of any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.E.**

F.      *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Effective Date), or has not paid a debt that is addressed under the Plan or otherwise in the Chapter 11 Cases.

G.      *Document Retention*

On and after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall preserve all books, records, electronically stored information, and other documents in accordance with their standard document

retention policy, as may be altered, amended, modified, or supplemented by the Debtors, and applicable law. The Debtors and the Wind-Down Debtors shall not destroy or otherwise abandon any SEC Materials without providing reasonable advance notice to the SEC (c/o William M. Uptegrove, U.S. Securities and Exchange Commission, 950 East Paces Ferry Rd., N.E., Suite 900, Atlanta, GA 30326, uptegrovew@sec.gov) and counsel to the lead plaintiff in the Securities Litigation. Nothing in the Plan or the Confirmation Order shall affect any obligations of the Debtors, the Wind-Down Debtors, and/or any transferee or custodian to maintain all books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a Governmental Unit.

H.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

I.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.      *Good Faith Solicitation*

All persons within the definitions of Exculpated Parties and Section 1125(e) Parties and who solicited votes on the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in this Article VIII of the Plan.

### ARTICLE IX.
### CONDITIONS PRECEDENT TO CONFIRMATION
### AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order), which order shall be in form and substance acceptable to the Prepetition First Lien Agent;

2.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      the Debtors shall have paid all Allowed Professional Fee Claims in full in Cash and transferred Cash in an amount equal to the Professional Fee Escrow Amount with respect to any unpaid Professional Fee Claims, whether Allowed or otherwise, to the Professional Fee Escrow Account pending approval of such Professional Fee Claims by the Bankruptcy Court;

4.      the Wind-Down Debtors' Account shall have been established and funded in accordance with the Wind-Down Budget;

5.      the Wind-Down Budget shall be in form and substance acceptable to the Prepetition First Lien Agent;

6.    the Administrative / Priority Claims Reserve shall have been funded;

7.    the Creditor Trust Agreement shall have been executed and the Creditor Trust Assets shall have vested or be deemed to have vested in the Creditor Trust;

8.    the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed;

9.    the Debtors shall have implemented the Wind-Down Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors; and

10.   the Total Claim shall be disallowed or determined to be a prepetition unsecured claim in its entirety on or before November 12, 2024.

B.      *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX (other than Article IX.A.10) may be waived by the Debtors with the consent of the Prepetition First Lien Agent, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

The condition to Consummation set forth in Article IX.A.10 may not be waived by any party.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in sections 1101 and 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.      *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transactions or the revocation of the Debtors' authority under the Sale Orders to consummate such Sale Transactions.

## ARTICLE X.
## CREDITOR TRUST

A.      *Creation and Governance of Creditor Trust*

On the Effective Date, the Debtors and the Creditor Trustee shall enter into the Creditor Trust Agreement and the Creditor Trust Assets shall vest or deem to be vested in the Creditor Trust automatically without further action by any Person, free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax pursuant to section 1146(a) of the Bankruptcy Code. Under no circumstance shall the Debtors, Wind-Down Debtors, or any other party be required to contribute any assets to the Creditor Trust other than the Creditor Trust Assets.  After the Effective Date, neither the Debtors, Wind-Down Debtors, nor any other party shall have any interest in the Creditor Trust Assets except as expressly set forth herein.

The Creditor Trust shall be administered by the Creditor Trustee and governed by the Creditor Trust Agreement, and the Creditor Trustee shall have the sole power and authority to distribute the Creditor Trust Net Assets to Holders of Allowed Claims in accordance with the Creditor Trust Recovery and treatment set forth in Article III.B of the Plan.  The Creditor Trustee shall be the exclusive trustee of the Creditor Trust Assets for purposes of 31 U.S.C. § 3713(b) and section 6012(b)(4) of the Tax Code.  The Creditor Trust, acting through the Creditor Trustee,

shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Creditor Trust Assets (including the Creditor Trust Claims) and Allowance and disallowance of General Unsecured Claims and Plan Distributions to Holders of Allowed General Unsecured Claims. The Creditor Trust, acting through the Creditor Trustee, shall be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code for all purposes in these Chapter 11 Cases. The Confirmation Order shall contain a finding that the Creditor Trust has standing to pursue the Creditor Trust Claims on behalf of the Debtors.

To the extent necessary to the performance of the Creditor Trustee's duties and responsibilities, and subject to the Creditor Trust Agreement, the Debtors or Wind-Down Debtors, as applicable, shall share communications or documents that are subject to the attorney-client privilege, work product protection, or other applicable privilege with the Creditor Trust; the sharing of such information shall not operate as a waiver of any applicable privileges. The Debtors, Wind-Down Debtors, Committee, and Creditor Trustee, as applicable, shall agree on how to document the sharing of the attorney-client privilege in accordance with the foregoing such that any privilege is preserved (such as through a common interest agreement), and in the absence of such agreement, the Bankruptcy Court shall decide as set forth in the Confirmation Order or any other order(s).

B.    *Purpose of Creditor Trust*

The Creditor Trust shall be established for the purpose of liquidating the Creditor Trust Assets, reconciling and objecting, if necessary, to disputed General Unsecured Claims, and distributing the Creditor Trust Net Assets to the Creditor Trust Beneficiaries in accordance with the terms of the Plan (including the Creditor Trust Recovery) and Creditor Trust Agreement. The Creditor Trust is intended to qualify as a liquidation trust pursuant to Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary and consistent with the purpose of the Creditor Trust.

C.    *Creditor Trust Agreement and Funding of Creditor Trust*

The Creditor Trust Agreement will generally provide for, among other things: (1) the payment of the Creditor Trust Fees and Expenses; (2) the retention of counsel, accountants, financial advisors, or other professionals by the Creditor Trust and the payment of their reasonable compensation; (3) the orderly liquidation of the Creditor Trust Assets; and (4) the disposition of the Creditor Trust Claims, which may include the prosecution, settlement, abandonment, sale, or dismissal of any such Creditor Trust Claims. The Creditor Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Creditor Trust and the Creditor Trustee solely from the proceeds of the Creditor Trust Assets; *provided* that, for the avoidance of doubt, any such indemnification shall be by the Creditor Trust and the Creditor Trustee alone and shall not implicate the Debtors or the Wind-Down Debtors. In the event of any conflict between the terms of the Plan and the Creditor Trust Agreement, the terms of the Plan shall govern.

The Creditor Trust Fees and Expenses shall be paid from the Creditor Trust Assets in accordance with the Plan and the Creditor Trust Agreement. The Creditor Trustee, on behalf of the Creditor Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further order of the Bankruptcy Court from the Creditor Trust Assets in accordance with the Plan and the Creditor Trust Agreement.

D.    *Creditor Trust Beneficial Interests*

Creditor Trust Beneficial Interests shall be passive and shall not have voting, consent, or other shareholder-like control rights with respect to the Creditor Trust. The Creditor Trust Beneficial Interests will not be certificated and may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except in accordance with applicable law. The Creditor Trust will operate in compliance with applicable federal and state securities laws and SEC staff guidance, including those regarding liquidating trusts, if applicable.

E.    *Cooperation of the Wind-Down Debtors and Plan Administrator*

The Debtors and Wind-Down Debtors shall provide commercially reasonable access to the Creditor Trustee and any professionals retained by the Creditor Trustee to records and information relating to the Creditor Trust Claims,

General Unsecured Claims (including, but not limited to, information necessary for the Creditor Trustee to reconcile and, if necessary, prepare Claim Objections to General Unsecured Claims) including electronic records, documents, or work product related to the foregoing; *provided* that, except for the Data Preservation Funds, the Debtors and Wind‑Down Debtors shall not incur any expenses to provide such access to the Creditor Trustee and any professionals retained by the Creditor Trust.

Subject to Article X.A. to the extent the Creditor Trust receives information from the Debtors or the Wind-Down Debtors in connection with the Creditor Trust Claims, the Creditor Trust's receipt of such documents, information, or communications shall not constitute a waiver of any privilege. All privileges shall remain in the control of the Debtors or the Wind-Down Debtors, as applicable, and the Debtors or the Wind-Down Debtors, as applicable, retain the sole right to waive their own privileges. Reasonable agreements will be made with the Creditor Trustee such that confidential information and privileges are preserved, while permitting the Creditor Trustee to use, as necessary to administer the Creditor Trust, such information and privilege; absent such agreements, either the Creditor Trustee or the Wind-Down Debtors may present the issue to the Bankruptcy Court for resolution.

Subject to the Wind-Down Budget, the Wind-Down Debtors shall preserve all records, documents, or work product (including all electronic records, documents, or work product) related to the Creditor Trust Claims and the reconciliation of or objection to General Unsecured Claims (collectively, "**Creditor Trust Materials**") until the earlier of (1) such time as the Creditor Trustee notifies the Wind-Down Debtors in writing that such records are no longer required to be preserved or (2) the termination of the Creditor Trust; *provided*, *however*, that the Wind-Down Debtors may satisfy such preservation obligation by abandoning the Creditor Trust Materials to the Creditor Trustee.

## F.     *Tax Treatment of the Creditor Trust*

To the extent reasonably practicable, the Debtors intend to treat the Creditor Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code. If such treatment applies, for U.S. federal income tax purposes, the transfer of assets to the Creditor Trust would be deemed to occur as (a) a first-step transfer of the Creditor Trust Assets to the Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Creditor Trust. Thus, such Holders would be treated as the grantors and owners of a grantor trust for federal income tax purposes.

No request for a ruling from the IRS will be sought on the classification of the Creditor Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Creditor Trust. If the IRS were to successfully challenge the classification of the Creditor Trust as a grantor trust, the federal income tax consequences to the Creditor Trust and the Creditor Trust Beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax). For example, the IRS could characterize the Creditor Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Creditor Trust Assets to the Creditor Trust, the Creditor Trustee shall make a good faith valuation of the Creditor Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the Creditor Trustee, and the Holders of Claims receiving Creditor Trust Beneficial Interests shall take consistent positions with respect to the valuation of the Creditor Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income and loss of the Creditor Trust among the Creditor Trust Beneficiaries shall be determined by reference to the Creditor Trust Beneficiaries' economic entitlements in respect of the Creditor Trust, as will be further described in the organizational documents of the Creditor Trust.

Assuming that the tax treatment above applies, the Creditor Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Creditor Trust Assets (e.g., income, gain, loss, deduction and credit). Each Creditor Trust beneficiary holding a Creditor Trust Beneficial Interest will receive a copy of the information returns and must report on its federal income tax return its share of all

such items.  The information provided by the Creditor Trust will pertain to Creditor Trust Beneficiaries who receive their Creditor Trust Beneficial Interests in connection with the Plan.

However, notwithstanding the foregoing, with respect to any of the assets of the Creditor Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Creditor Trust, the Debtors anticipate that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such treatment, a separate federal income tax return would be filed with the IRS for any such account.  Any taxes (including with respect to interest, if any, earned in the account) imposed on such account would be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

G.    *Fiduciary Duties*

The Creditor Trustee shall owe fiduciary duties to the Holders of Creditor Trust Beneficial Interests of the type that an official committee of unsecured creditors would owe to unsecured creditors, and shall have in place under the Creditor Trust Agreement applicable indemnity, limitation of liability, and waiver provisions (payable solely out of proceeds of the Creditor Trust Assets) to protect the Creditor Trustee from being personally liable for any claims or causes of action asserted by any Holder or purported Holder of Creditor Trust Beneficial Interests, except for any claims of fraud, gross negligence, or willful misconduct.

H.    *Withholding*

The Creditor Trustee may deduct and withhold and pay to the appropriate taxing authority all amounts required to be deducted or withheld pursuant to the Tax Code or any provision of any state, local, or non-U.S. tax Law with respect to any Creditor Trust Beneficiaries, including with respect to any payment or distribution to the Creditor Trust Beneficiaries, any amounts received by, collections of, or earnings of the Creditor Trust and any proceeds from the Creditor Trust Assets. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed on such Holder by any governmental authority, including income, withholding, and other tax obligations, on account of such distribution or with respect to its ownership of Creditor Trust Beneficial Interests.  All such amounts deducted or withheld and timely paid to the appropriate taxing authority shall be treated as amounts distributed to such Creditor Trust Beneficiaries to the extent permitted by applicable Law. The Creditor Trustee shall be authorized to collect such tax information from the Creditor Trust Beneficiaries (including social security numbers or other tax identification numbers) as it, in its sole discretion, deems necessary to effectuate the Plan, the Confirmation Order, and the Creditor Trust Agreement and to determine whether any deduction or withholding applies with respect to a payment to such Creditor Trust Beneficiary and the amount of such deduction or withholding.

As a condition to receiving, or being entitled to receive, Plan Distributions from the Creditor Trust, all Creditor Trust Beneficiaries may be required to identify themselves to the Creditor Trustee and provide tax information and the specifics of their holdings, to the extent requested by the Creditor Trustee, including an IRS Form W-9 or, in the case of non-U.S. Persons for U.S. federal income tax purposes, certification of foreign status on an applicable IRS Form W-8, including all applicable supporting documents.  The Creditor Trustee may refuse to make a distribution to any Creditor Trust Beneficiary that fails to furnish such information in a timely fashion, until (at a minimum) such information is delivered; *provided, however*, that upon the delivery of such information by a Creditor Trust Beneficiary, the Creditor Trustee shall make such distribution to which the Creditor Trust Beneficiary is entitled, without interest; *provided, further*, that if the Creditor Trustee fails to withhold in respect of amounts received or distributable with respect to any such Holder and the Creditor Trustee is later held liable for the amount of such withholding, such Holder shall reimburse the Creditor Trustee for such liability.

I.    *Dissolution of Creditor Trust*

The Creditor Trustee and the Creditor Trust shall be discharged or dissolved, as the case may be, at such time as (1) the Creditor Trustee determines that the pursuit of additional Creditor Trust Claims is not likely to yield sufficient additional proceeds to justify further pursuit of such claims and (2) all Plan Distributions of Creditor Trust

Assets required to be made by the Creditor Trustee have been made, but in no event shall the Creditor Trust be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon *ex parte* motion made by the Creditor Trustee before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court upon motion made before the end of the preceding extension), determines that a fixed period extension is necessary to facilitate or complete the recovery on, and liquidation of, the Creditor Trust Assets.

Upon dissolution of the Creditor Trust, any remaining Creditor Trust Net Assets shall be distributed to all Holders of Allowed Claims in accordance with the Plan and the Creditor Trust Agreement as appropriate; *provided, however,* that if the Creditor Trustee reasonably determines that such remaining Creditor Trust Net Assets are insufficient to render a further Plan Distribution practicable, the Creditor Trustee may apply to the Bankruptcy Court for authority to (1) reserve any amount necessary to dissolve the Creditor Trust, (2) donate any balance to a charitable organization (A) described in section 501(c)(3) of the Internal Revenue Code, (B) exempt from U.S. federal income tax under section 501(a) of the Internal Revenue Code, (C) not a "private foundation" as defined in section 509(a) of the Internal Revenue Code, and (D) that is unrelated to the Debtors, the Creditor Trust, and any insider of the Creditor Trustee, and (3) dissolve the Creditor Trust.

*J.      Transferred Privileges*

Subject to Article X.A in all events, in respect of privileges (if any) transferred to the Creditor Trust under the Creditor Trust Agreement (the "***Transferred Privileges***"), the Creditor Trust Agreement shall contain terms substantially reflecting the following: subject to Article X.A, the Creditor Trust may not waive any Transferred Privileges in respect of records, documents, or information related to the Creditor Trust Assets without first providing to the Wind-Down Debtors reasonable advance written notice and an opportunity to protect their respective rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. The Wind-Down Debtors may not make disclosure in a manner that could effectuate a waiver of any Transferred Privilege in respect of records, documents, or information related to the Creditor Trust Assets without first providing to the Creditor Trustee reasonable advance written notice (in no event less than five Business Days) and an opportunity to protect the Creditor Trust's rights with respect to any subsequent disclosure and the terms of any protective order, confidentiality stipulation, or similar agreement relating to such disclosure. If the Creditor Trustee or the Wind-Down Debtors object to an action proposed to be taken by the other with regard to records, documents, or information related to the Creditor Trust Assets that are covered by the Transferred Privilege (or a disclosure that would result in a waiver), the parties shall be permitted to raise the issue promptly with the Bankruptcy Court. The party providing advance written notice may take its proposed action unless the Bankruptcy Court determines that (1) such action would cause material adverse harm to the other party, or (2) the harm to the objecting party would substantially outweigh the benefit to the party seeking to take the proposed action. The objecting party shall bear the burden of proof. Each of the parties shall bear its own costs and expenses, including attorneys' fees, incurred in connection with such dispute.

# ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors reserve the right to modify the Plan, with the consent of the Prepetition First Lien Agent, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided, however,* that the Debtors or the Wind-Down Debtors, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests; *provided further, however* that the Debtors or the Wind-Down Debtors,

as the case may be, shall not amend or modify the Plan in a manner that adversely affects Holders of General Unsecured Claims without the consent of the Committee (prior to the Effective Date) or the Creditor Trustee (on and after the Effective Date).

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors, with the consent of the Prepetition First Lien Agent, reserve the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured, or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Sale Orders):  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Wind-Down Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation of the Sale Orders;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to Plan Distributions;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or the Sale Orders, including disputes arising under agreements, documents, or instruments executed in connection therewith;

21.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Wind-Down Transactions, whether they occur before, on, or after the Effective Date;

22.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter over which the Bankruptcy Court has jurisdiction under the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to **Error! Reference source not found.** and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Wind-Down Debtors, as applicable, and all Holders receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Wind-Down Debtors or any entity making disbursements on behalf of any of the Wind-Down Debtors, or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Wind-Down Debtors, on behalf of themselves, or any entity making disbursements on behalf of the Wind-Down Debtors, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Wind-Down Debtors, and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed to the following:

1.    <u>If to the Debtors, to:</u>

SunPower Corporation
880 Harbour Way South, Suite 600
Richmond, California 94804
Attention:        Chief Transformation Officer
Email address:    mhenry@alvarezandmarsal.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:        Joshua A. Sussberg, P.C.
                 Zachary R. Manning
Email address:    joshua.sussberg@kirkland.com
                 zach.manning@kirkland.com

-and-

Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Attention:        Chad J. Husnick, P.C.
                 Jeffrey Michalik
                 Robert Jacobson
Email address:    chad.husnick@kirkland.com
                 jeff.michalik@kirkland.com
                 rob.jacobson@kirkland.com

-and-

Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, Delaware 19801
Attention:        Kevin Gross
                 Mark D. Collins
                 Jason M. Madron
Email address:    gross@rlf.com
                 collins@rlf.com
                 madron@rlf.com

    2.   <u>If to the Committee, to:</u>

        Pachulski Stang Ziehl & Jones LLP
        919 North Market Street, 17th Floor
        Wilmington, Delaware 19801
        Attention:      Debra I. Grassgreen
                        Bradford J. Sandler
                        Steven W. Golden
        Email address:   dgrassgreen@psjlzw.com
                        bsandler@pszjlaw.com
                        sgolden@pszjlaw.com

    3.   <u>If to the Creditor Trust or Creditor Trustee, to:</u>

        MHR Advisory Group, LLC
        6701 Bay Parkway, Suite 300
        Brooklyn, New York 11204
        Attention:      Steven Balasiano
        Email address:   steven@balasianolaw.com

        with copies (which shall not constitute notice) to:

        Pachulski Stang Ziehl & Jones LLP
        919 North Market Street, 17th Floor
        Wilmington, Delaware 19801
        Attention:      Debra I. Grassgreen
                        Bradford J. Sandler
                        Steven W. Golden
        Email address:   dgrassgreen@psjlzw.com
                        bsandler@pszjlaw.com
                        sgolden@pszjlaw.com

After the Effective Date, the Wind-Down Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.     *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.     *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://dm.epiq11.com/SunPower or the Bankruptcy Court's website at http://www.deb.uscourts.gov/. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.        *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Prepetition First Lien Agent, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

J.        *Closing of Chapter 11 Cases*

The Wind-Down Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or by Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close the Chapter 11 Cases.

K.        *Conflicts*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

L.        *SEC Carve Out*

Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or the Confirmation Order, no provision therein shall (1) preclude the SEC from enforcing its police or regulatory powers; or (2) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

Respectfully submitted,

Date: October 15, 2024

SunPower Corporation
on behalf of itself and all other Debtors

By:      */s/ Matthew Henry*
Name:   Matthew Henry
Title:    Chief Transformation Officer
          SunPower Corporation