# **EXHIBIT 1**

## **Proposed Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SUNPOWER CORPORATION, *et al.*,[1] | ) | Case No. 24-11649 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**Related to Docket Nos. [●] and [●]**

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER
APPROVING THE DEBTORS' DISCLOSURE STATEMENT
FOR, AND CONFIRMING THE AMENDED JOINT CHAPTER 11
PLAN OF SUNPOWER CORPORATION AND ITS DEBTOR AFFILIATES**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a.  commenced, on August 5, 2024 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.  continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.  obtained, on August 29, 2024, entry of (a) the *Order (I) Approving Bidding Procedures and Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Approving the Complete Solaria Stalking Horse APA, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving the Sale of Assets, (VIII) Granting Related Relief* [Docket No. 290] (the "Bidding Procedures Order") and (b) the *Order*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335).  The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

[2]   All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates*, attached hereto as **Exhibit A** (the "Plan").  The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order.

*(I) Authorizing and Approving the Sale of TCU Solar Loans and RIC Depositor Membership Interests Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [Docket No. 287] (the "TCU/RIC Sale Order");

d.  filed, on September 6, 2024, (a) the *Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliate* [Docket No. 311] and (b) the *Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 312];

e.  filed, on September 6, 2024, the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing and Setting Dates and Deadlines and Shortening Notice with Respect Thereto, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Forms of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 313] (the "Disclosure Statement Motion");

f.  obtained, on September 16, 2024, entry of the *Order, Pursuant to Bankruptcy Rule 9006(c) and Local Rule 9006-1(e) Shortening the Notice Period for the Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing and Setting Dates and Deadlines and Shortening Notice with Respect Thereto, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Forms of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 410] (the "Order to Shorten");

g.  filed, on September 19, 2024, (a) a revised *Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliate* [Docket No. 514] and (b) a revised *Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 515];

h.  obtained, on September 23, 2024, entry of the *Order (A) Approving and Authorizing Sale of the Going-Concern Assets, Free and Clear of all Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 605] (the "CS Sale Order");

i.  obtained, on September 24, 2024, entry of the *Order (I) Authorizing and Approving the Sale of SunStrong Equity Interests and Related Assets to HA SunStrong Capital LLC and GF SunStrong Capital, LLC Free and Clear of all Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 611] (the "SunStrong Sale Order");

j.  obtained, on September 30, 2024, entry of the *Amended and Superseding Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Setting Dates and Deadlines and Shortening Notice with Respect Thereto, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Forms of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* [Docket No. 647] (the "Interim Disclosure Statement Order"), which approved on an interim basis, among other things, solicitation procedures and related notices (the "Solicitation and Voting Procedures"), forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages");

k.  filed, on September 30, 2024, the solicitation version of (a) the *Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 650] and (b) the *Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 651];

l.  filed, on October 2, 2024, the *Notice of Hearing to Consider (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 684] (the "Confirmation Hearing Notice");

m.  caused the Solicitation Packages, the Non-Voting Status Notices (as defined in the Interim Disclosure Statement Order), and the Confirmation Hearing Notice to be distributed on or before September 30, 2024, in accordance with the Interim Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service of Solicitation Documents* [Docket No. 790] (the "Solicitation Affidavit") and the Voting Report (as defined below);

n.  caused the Confirmation Hearing Notice to be published in *The New York Times* on October 3, 2024, as evidenced by, among other things, the *Proof of Publication* [Docket No. 719] (the "Publication Affidavit" and together with the Solicitation Affidavit, the "Affidavits");

o.  filed, on October 3, 2024, the *Supplement to Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 703];

p.  filed, on October 8, 2024, the *Notice of Filing Plan Supplement* and the initial *Plan Supplement for the Joint Chapter 11 Plan of SunPower and Its Debtor Affiliates* [Docket No. 742] (as amended, modified, or supplemented from time to time, the "Plan Supplement");

q.  filed, on October 15, 2024, the *Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 784];

r.  obtained, on October [●], 2024, entry of the *Final Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. [●]] (the "Final Cash Collateral Order");

s.  filed, on October 17, 2024, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Joint Chapter 11 Plan* [Docket No. [●]] (the "Confirmation Brief");

t.  filed, on October 17, 2024, the *Declaration of Matthew Henry, Chief Transformation Officer of SunPower Corporation, in Support of Confirmation of the Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates*] [Docket No. [●]] (the "Henry Declaration");

u.  caused to be filed, on October 17, 2024, the *Declaration of Stephenie Kjontvedt of Epiq Corporate Restructuring, LLC Regarding the Solicitation and Tabulation of Ballots Cast on the Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. [●]] (as may be amended, modified, or supplemented, the "Voting Report");

v.   filed, on October [●], 2024, the *Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates (Technical Modifications)* [Docket No. [●]]; and

w.   filed, on October [●], 2024, the *Notice of Filing First Amended Plan Supplement* and the *First Amended Plan Supplement for the Amended Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. [●]].

This Bankruptcy Court having:

a.   entered, on September 30, 2024, the Interim Disclosure Statement Order;

b.   set October 15, 2024 at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Disclosure Statement and the Plan (the "Objection Deadline");

c.   set October 16, 2024 at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "Voting Deadline");

d.   set October 18, 2024 at 2:30 p.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.   considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Henry Declaration, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.   held the Confirmation Hearing;

g.   heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto;

h.   considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and having admitted the same into evidence at the Confirmation Hearing;

i.   overruled any and all objections to the final approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

j.   considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented with respect to the final approval of the Disclosure Statement and the Confirmation of the Plan.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation

Hearing and the opportunity for any party in interest to object to approval of the Disclosure

Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and all evidence proffered or adduced establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings of Fact and Conclusions of Law**

1.      The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.    Jurisdiction, Venue, Core Proceeding**

2.      The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with

the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.      Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On August 7, 2024, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 78] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On August 16, 2024, the U.S. Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 147] pursuant to section 1102 of the Bankruptcy Code, which Committee currently consists of (i) Zyxel Communications, Inc., (ii) Xiamen Ampace Technology Limited, (iii) Alpus, Inc, (iv) Optomi, LLC, (v) Legacy Solar, LLC, (vi) Kamtech Restoration Corp, and (vii) SSES, Inc. (dba SunPower by Sun Solar).

**F.    Objections**

6.    This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record in these Chapter 11 Cases is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**G.    Plan Supplement**

7.    The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Interim Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend,

update, or modify the Plan Supplement in accordance with the terms of the Plan, this Confirmation

Order, the Purchase Agreements, the Bankruptcy Code, and the Bankruptcy Rules.

**H.    Disclosure Statement Order**

8.    On September 30, 2024, the Bankruptcy Court entered the Interim Disclosure

Statement Order, which, among other things, (a) approved, on an interim basis (i) the Disclosure

Statement as containing adequate information within the meaning of section 1125 of the

Bankruptcy Code and Bankruptcy Rule 3017, (ii) the Solicitation and Voting Procedures, and

(iii) the Solicitation Packages, (b) set October 15, 2024 at 4:00 p.m., prevailing Eastern Time, as

the Objection Deadline, (c) set October 16, 2024 at 4:00 p.m., prevailing Eastern Time, as the

Voting Deadline, and (d) set October 18, 2024 at 2:30 p.m., prevailing Eastern Time, as the date

and time for the Confirmation Hearing.  The period during which the Debtors solicited acceptances

to the Plan is a reasonable and adequate period of time for Holders of Claims in the Voting Classes

to have made an informed decision to accept or reject the Plan.

**I.    Adequacy of the Disclosure Statement**

9.    The Disclosure Statement contains extensive material information regarding the

Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the

Plan.   The Disclosure Statement contains "adequate information" within the meaning of

section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of

the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law.  The Debtors' solicitation

of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other

materials in the Solicitation Packages was authorized by and complied with the Interim Disclosure

Statement Order and was appropriate under the circumstances.

**J.      Solicitation and Notice**

10.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.      As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Interim Disclosure Statement Order.  The solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125 and 1126 and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.      As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement and Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.      Voting Report**

13.      Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Interim Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.     As set forth in the Plan, Holders of Claims in Classes 3 and 4 (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Voting Procedures.  In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 6 and 7 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims and Interests in Classes 5, 8, and 9 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.     As evidenced by the Voting Report, Class 3 voted to accept the Plan.

**L.     Bankruptcy Rule 3016**

16.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.     Burden of Proof**

17.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**N.     Plan Modifications**

18.     Subsequent to filing the solicitation version of the Plan [Docket No. 650] on September 30, 2024, the Debtors made certain technical amendments and modifications to the Plan (the "Plan Modifications"), which are reflected in the version of the Plan attached hereto as

**Exhibit A**.  The Plan Modifications were made to address objections and informal comments received from various parties in interest, including the Committee and the Prepetition First Lien Agent.  The Plan Modifications neither materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan nor require resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019.  The filing with the Bankruptcy Court of the Plan as modified by the Plan Modifications constitutes due and sufficient notice thereof.  Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.  The Plan as modified and attached hereto, and as may be further modified consistent with the terms of this Confirmation Order and the Plan, shall constitute the Plan submitted for Confirmation by the Bankruptcy Court.

## O.    Presumed Acceptance of Plan as Modified

19.    In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## P.    Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)

20.    The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**Q.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

21.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**a)    Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

22.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

**i.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

23.     The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into nine Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

**ii.    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

24.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class entitled to vote on the Plan, which are Classes 3 and 4.  Holders of Claims and Interests in Classes 6 and 7 are deemed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or cancelled and released without any Plan Distribution on account of such Claims or Interests.  Holders of Claims and Interests in Classes 5, 8, and 9 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

**iii.    No Discrimination (11 U.S.C. § 1123(a)(4)).**

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

**iv.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**

26.    The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Wind-Down Transactions and the appointment of a Creditor Trustee and Plan Administrator.

v. **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**

27.     The Plan does not provide for the issuance of equity or other securities by the Debtors or the Wind-Down Debtors.  Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable in these Chapter 11 Cases.

vi. **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).**

28.     The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action.  The Plan further provides for continuation of the Wind-Down Debtors and the appointment of the Plan Administrator.

vii. **Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).**

29.     The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(a)     **Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).**

30.     Upon the occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise provided in the Plan or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (c) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (d) is an Insurance Policy assumed pursuant to Article V.E of the Plan; (e) is any Sale Transaction

Document; (f) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transactions and pursuant to the Sale Transaction Documents; or (g) is identified on the Rejected Executory Contracts and Unexpired Leases Schedule.

31.     For each Executory Contract and Unexpired Lease identified in the Rejected Executory Contracts and Unexpired Leases Schedule, the rejection effective date shall be the later of (a) the Effective Date; (b) the rejection effective date specified herein with respect to such Executory Contract or Unexpired Lease (or such other date as the Debtors or the Wind-Down Debtors, as applicable, may agree or provide notice of to the applicable counterparty); or (c) solely in the case of an Unexpired Lease for nonresidential real property, the date that the Debtors or Wind-Down Debtors, as applicable, surrender possession and control of the premises to the landlord and notify the landlord of the same in writing (email being sufficient).

32.     Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to the Purchasers.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, shall have the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in Article V of the Plan and in the Plan Supplement.

33.     The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

(b)  **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

34.    **Compromise and Settlement.**  To the extent provided for by the Bankruptcy Code and Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan.  To the extent provided for by the Bankruptcy Code and Bankruptcy Rule 9019, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019 because, among other things:  (a) each such settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on the other hand; (b) absent such settlements, there is a likelihood of complex and protracted litigation involving the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' chapter 11 objectives and efforts; (c) each of the parties supporting such settlements is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) such settlements are the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) such settlements are fair, equitable, reasonable, and in the best interests of the Debtors, the Wind-Down Debtors, the Estates, and other parties in interest and are essential to the successful implementation of the Plan.  Subject to Article VI of the Plan, all Plan

Distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

35.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.B of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Releases is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

36.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy.  Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan.  The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

37.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable

consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Wind-Down Transactions and implementing the plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, the Wind-Down Debtors, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Wind-Down Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

38.     **Releases by Holders of Claims and Interests.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan (the "Third-Party Release").  The Third-Party Release is given and made after due notice and opportunity for hearing.

39.     The Third-Party Release is consensual with respect to the Releasing Parties.  The Ballots sent to all Holders of Claims and Interests entitled to vote, the Non-Voting Status Notices sent to Holders of Claims and Interests not entitled to vote, and the Confirmation Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt in to the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors (other than Excluded Parties) that voted in favor of the Plan, voted against the Plan but checked the "Opt In" box on their timely submitted Ballot, or didn't vote on the Plan but checked the "Opt In" box on their timely submitted Opt-In

Form, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties in accordance with the Plan. Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Non-Voting Status Notices. Thus, the Third-Party Release is consensual as to those Releasing Parties that either voted in favor of the Plan or otherwise opted into the Third-Party Release as described above.

40.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors, the Wind-Down Debtors, and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

41.     **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article VIII.D of the Plan (the "Exculpation"). The Exculpation is essential to the Plan. The evidence before the Bankruptcy Court demonstrates that the Plan's Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts and that these parties would not have

been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

42.     **Injunction.**  Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

**viii.     Cure of Defaults (11 U.S.C. § 1123(d)).**

43.     Article V.C of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Sale Transaction Documents shall be authorized and governed by the Bidding Procedures Order and applicable Sale Order, and, in the event of any inconsistency between the Plan, the Bidding Procedures Order, and the Sale Orders concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the applicable Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described

below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan, and applicable bankruptcy and non-bankruptcy law. Accordingly, the Plan provides that the Debtors, the Wind-Down Debtors, or the Purchasers, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

**b) The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

44.    The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

45.    The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Interim Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

46.    The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Interim Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article VIII of the Plan.

**c) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

47.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and the Plan Documents in good faith and not by any means

forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, and all the proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

48.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee and the Prepetition First Lien Agent.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

49.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e) Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

50.    Because the Plan provides for the orderly Wind-Down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Wind-Down Debtors, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Plan Administrator and the Creditor Trustee.

**f) No Rate Changes (11 U.S.C. § 1129(a)(6)).**

51.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g) Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

52.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced in these Chapter 11 Cases and the facts and circumstances of these Chapter 11 Cases establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in the Disclosure Statement and attached as <u>Exhibit C</u> thereto), and the other evidence related thereto, as supplemented by any evidence proffered or adduced in these Chapter 11 Cases, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced in these Chapter 11 Cases, are reasonable.

**h)  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

53.     The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3 (Prepetition First Lien Secured Claims) voted to accept the Plan and Class 4 (Prepetition Second Lien Secured Claims) voted to reject the Plan.  Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan.  Class 5 (General Unsecured Claims), Class 8 (Interests in SunPower), and Class 9 (Section 510(b) Claims) are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan.  To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

**i)  Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

54.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

**j) Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

55.      The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k) Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

56.      The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**l) Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

57.      The evidence proffered or adduced in these Chapter 11 Cases and in the Henry Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Wind-Down Debtors will have sufficient funds available to meet their obligations under the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

58.     Article XIII.C of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n) Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

59.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.    Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o) Only One Plan (11 U.S.C. § 1129(c)).**

60.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

61.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

62.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

63.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

### B.    Implementation

64.    The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Wind-Down Debtors, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

### C.    Good Faith Solicitation (11 U.S.C. § 1125(e))

65.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to

have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Plan Distributions and, therefore, are not, and on account of such Plan Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Plan Distributions.

### D.    Executory Contracts and Unexpired Leases

66.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan or the Sale Transaction Documents. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in these Chapter 11 Cases.

### E.    Disclosure:  Agreements and Other Documents

67.    The Debtors have disclosed all material facts regarding:  (a) the Plan; (b) the sources and Plan Distributions; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Wind-Down Debtors.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**A.    Findings of Fact and Conclusions of Law**

68.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

**B.    Final Approval of Disclosure Statement**

69.    The Disclosure Statement is hereby approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

**C.    Confirmation of the Plan**

70.    The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, is hereby confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into, execute, and perform under all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Wind-Down Debtors and the Creditor Trustee are hereby approved and authorized.  The Debtors, the Wind-Down Debtors, and the Creditor Trust, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, entry

into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan. The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

71.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**D.    Objections**

72.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record at the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**E.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

73.    The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

a.    **Liens**. The release of liens provisions set forth in Article VIII.A of the Plan are hereby approved.

b.    **Releases by the Debtors**. The Debtor Release provisions set forth in Article VIII.B of the Plan are hereby approved.

c. **Third-Party Releases**.  The Third-Party Release provisions set forth in Article VIII.C of the Plan are hereby approved.

d. **Exculpation**.  The Exculpation provisions set forth in Article VIII.D of the Plan are hereby approved.

e.  **Injunction**.  The Injunction provisions set forth in Article VIII.E of the Plan are hereby approved.

**F.  Classifications of Claims and Interests**

74.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.  Plan Supplement**

75.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, the Wind-Down Debtors, the Creditor Trustee, and their successors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Wind-Down Debtors, the Creditor Trustee, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan

Supplement that are consistent with the Plan. Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

## H.    Wind-Down Transactions

76.    On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or the Wind-Down Debtors, as applicable shall, with the consent of the Prepetition First Lien Agent, enter into any transaction and shall take any actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, including, as applicable and without limitation: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other actions and transactions that are required to effectuate the Wind-Down Transactions, including the winding down and dissolution of any direct or indirect subsidiaries of the Wind-Down Debtors; (e) all transactions necessary to provide for the purchase of some or all of the assets of, or Interests in, any of the Debtors which purchase may be structured as a taxable transaction for United States federal income tax purposes; (f) all other actions that the applicable Entities determine to be necessary or appropriate, including

making filings or recordings that may be required by applicable law; (g) abandoning any Non-Debtor Equity Interests; and (h) implementing the Installer-Dealer Settlement.

77.     This Confirmation Order authorizes, and shall be deemed to authorize, pursuant to sections 363 and 1123 of the Bankruptcy Code, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan, subject to the Wind-Down Budget.

## I.     Preservation of Causes of Action

78.     In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, all Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, and whether or not specifically enumerated in the Schedule of Retained Causes of Action, shall vest in the Creditor Trust or the Wind-Down Debtors, as applicable.  The Creditor Trustee or the Plan Administrator, as applicable, shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Causes of Action, as appropriate, in accordance with the best interests of the Creditor Trust and the Wind-Down Debtors, as applicable, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

79.     **No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or if applicable, the Creditor Trustee, will not pursue any and all available Causes of Action against it.  The Debtors and the Creditor Trustee expressly reserve all**

rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.

**J.        Installer-Dealer Settlement**

80.        On and after the Effective Date, the Debtors and the Wind-Down Debtors, as applicable, and the Consenting Installer-Dealers shall consummate and implement the Installer-Dealer Settlement on terms acceptable to the Prepetition First Lien Agent.

**K.        Abandonment of Non-Debtor Equity Interests**

81.        On or after Effective Date, the Debtors and the Wind-Down Debtors may, with the reasonable consent of the Prepetition First Lien Agent, abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

**L.        Treatment of Executory Contracts and Unexpired Leases**

82.        The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

83.        On the Effective Date, except as otherwise provided in the Plan or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (a) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (c) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (d) is an Insurance Policy assumed pursuant to Article V.E of the Plan;

(e) is any Sale Transaction Document; (f) is to be assumed by the Debtors and assigned to the Purchasers in connection with the Sale Transactions and pursuant to the Sale Transaction Document; or (g) is identified on the Rejected Executory Contracts and Unexpired Leases Schedule.

84.    For each Executory Contract and Unexpired Lease identified in the Rejected Executory Contracts and Unexpired Leases Schedule, the rejection effective date shall be the later of (a) the Effective Date; (b) the rejection effective date specified in the Plan with respect to such Executory Contract or Unexpired Lease (or such other date as the Debtors or the Wind-Down Debtors, as applicable, may agree or provide notice of to the applicable counterparty); or (c) solely in the case of an Unexpired Lease for nonresidential real property, the date that the Debtors or Wind-Down Debtors, as applicable, surrender possession and control of the premises to the landlord and notify the landlord of the same in writing (email being sufficient).

85.    Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to the Purchasers pursuant to the Sale Transaction Documents.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by this Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors.  Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of this Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully

enforceable by the Wind-Down Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of this Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

86.     Notwithstanding anything to the contrary in the Plan or the Sale Transaction Documents, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in Article V of the Plan and in the Plan Supplement.  The Debtors or the Wind-Down Debtors, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby. For the avoidance of doubt, Article V of the Plan relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Sale Orders.

## M.     Provisions Governing Distributions

87.     The procedures governing Plan Distributions contained in Article VI of the Plan are hereby approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Distributions shall be made by the applicable Disbursing Agent, or the Entity or Entities selected by the Debtors or the Wind-Down Debtors, as applicable, to make or facilitate the Plan Distributions, including the Plan Administrator, if applicable.

## N.     Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests

88.     The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan are hereby approved in their entirety.

**O.        Conditions to Effective Date**

89.        The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan are hereby approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms to the extent waivable.

**P.        The Creditor Trust**

90.        The provisions governing the Creditor Trust set forth in Article X of the Plan are hereby approved in their entirety.  The Creditor Trust has standing to pursue the Creditor Trust Claims on behalf of the Debtors.

**Q.        Retention of Jurisdiction**

91.        The provisions governing the retention of jurisdiction set forth in Article XII of the Plan are hereby approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XII of the Plan.

**R.        Immediate Binding Effect**

92.        Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## S.    Additional Documents

93.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Wind-Down Debtors, as applicable, and all Holders receiving the Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## T.    Payment of Statutory Fees

94.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Wind-Down Debtors or any entity making disbursements on behalf of any of the Wind-Down Debtors, or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Wind-Down Debtors, on behalf of themselves, or any entity making disbursements on behalf of the Wind-Down Debtors, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, the Wind-Down Debtors, and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

**U.    Provisions Related to the Texas Comptroller**

95.    Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Texas Comptroller of Public Accounts (the "Texas Comptroller") reserves the following rights: (a) any statutory or common law setoff rights in accordance with section 553 of the Bankruptcy Code; (b) any rights to pursue any non-Debtor third parties for tax debts or claims; (c) the payment of interest on the Texas Comptroller's Allowed Administrative Claims, if any; (d) to the extent that interest is payable with respect to any Allowed Administrative Claim, Priority Claim, or Secured tax claim of the Texas Comptroller, payment of the statutory rate of interest pursuant to Texas Tax Code § 111.060; and (e) the Texas Comptroller is not required to file a motion or application for payment of Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code.

96.    Allowed Priority Tax Claims owed to the Texas Comptroller shall be paid, upon allowance, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

97.    Should the Wind-Down Debtors fail to make any payments to the Texas Comptroller as required in the Plan or this Confirmation Order, or fail to remain current on tax reporting obligations to the Texas Comptroller under applicable law, the Texas Comptroller shall provide written notice of that default to the Wind-Down Debtors and their counsel advising of that default and providing the Wind-Down Debtors with a period of twenty-one Business Days to cure the default.  In the event the default is not cured within twenty-one business days, the Texas Comptroller may, without further order of this Court or notice to the Wind-Down Debtors, pursue all rights and remedies available under applicable Texas law to collect the full amount of all taxes, penalties, and interest owed.

## V.     Provisions Related to Tri Pointe, New Home, and FH II Homebuilders[3]

98.     Notwithstanding anything contained herein, nothing in this Confirmation Order or in the Plan shall be deemed to constitute a release, impairment, or modification of any recoupment rights, setoff rights, or defenses related thereto of (a) Tri Pointe, (b) New Home, or (c) FH II Homebuilders, or to prevent the foregoing parties from asserting or exercising such defenses or rights, however characterized, against any party.

## W.     Provisions Related to Surety Bonds[4]

99.     Nothing in this Confirmation Order, the Plan, the Plan Supplement, or any documents or agreements relating thereto shall be deemed to alter, limit, enjoin, or modify the Sureties' respective rights under the CS Sale Order.  Further, nothing in this Confirmation Order, the Plan, the Plan Supplement, or any other documents included in or related thereto shall authorize or permit the substitution of any principal under any Surety Bond without the applicable Surety's consent.

100.     Nothing in this Confirmation Order, the Plan, the Plan Supplement, or any documents or agreements relating thereto shall be deemed to alter, limit, enjoin, or modify the Sureties' respective rights under the Surety Agreements and/or in any collateral in respect of the

---

[3]     "*Tri Pointe*" means, collectively, Tri Pointe Homes, Inc. and its subsidiaries and affiliated entities.  "*New Home*" means, collectively, TNHC Realty and Construction Inc. and its subsidiaries and affiliated entities.  "*FH II Homebuilders*" means, collectively, FH II Homebuilders, Inc. and any subsidiaries and affiliate entities.

[4]     "*Existing Surety Bonds*" means any surety bond and/or related instruments issued by the Surety on behalf of the Debtors in connection with the Debtors' business operations prior to the Petition Date.  "*Surety*" or "*Sureties*" means, individually or collectively, The Hanover Insurance Company, Zurich American Insurance Company, Lexon Insurance Company, Endurance American Insurance Company, Argonaut Insurance Company, Arch Insurance Company, U.S. Specialty Insurance Company, American Contractors Indemnity Company, Pennsylvania Insurance Company, Siriuspoint America Insurance Company, and Applied Surety Underwriters Applied Surety Underwriters, in each case, as surety in their role as an issuer of Surety Bonds and/or party to a Surety Indemnity Agreement.  "*Surety Indemnity Agreements*" means any indemnity agreement, and any related collateral and/or other agreements executed by one or more of the Debtors and/or any non-Debtors in connection with the Existing Surety Bonds.  "*Surety Agreements*" means Existing Surety Bonds and Surety Indemnity Agreements, together.

Surety Agreements. The Sureties shall have no obligation to issue any new surety bonds on behalf of the Debtors, the Wind-Down Debtors, the Creditor Trust, and/or the Plan Administrator, and nothing herein shall limit the Sureties' rights to decline renewal of any Existing Surety Bonds to the extent not inconsistent with the terms of such Existing Surety Bonds. Additionally, nothing in the Plan, this Confirmation Order, and/or the Plan Supplement, including, without limitation, any of the provisions contained in Article VIII of the Plan, shall bar, alter, limit, impair, release, modify, or enjoin any rights of the Surety, or any claims, defenses, and rights, including without limitation, subrogation rights, with respect to any claim to which Surety may be subrogated, and any claims against non-Debtors. The Sureties have not opted in to the Third-Party Release, and the Sureties are not Releasing Parties under the Plan.

**X.      Provisions Related to the Arevon Entities[5]**

101.    Notwithstanding any other provisions to the contrary in the Plan, the Plan Supplement, this Confirmation Order, or any motion(s) or notices to reject Executory Contracts filed in the Chapter 11 Cases:

  a.    The Arevon Entities' respective rights, claims, and causes of action against any non-Debtor party, including, without limitation, any Released Parties, sureties, insurers, or insurance policies or proceeds, are neither released, waived, enjoined, nor affected by the Plan or this Confirmation Order;

  b.    The Arevon Entities' respective rights, claims, and causes of action against any sureties, insurers, or insurance policies or proceeds are preserved regardless of whether they are specifically listed or identified in the Plan, Plan Supplement, this Confirmation Order, or any other filing in the Chapter 11 Cases;

---

[5]    "***Arevon Entities***" means, collectively and individually: Arevon Energy, Inc. and any of its Affiliates, including without limitation, Solar Star Always Low Prices IL, LLC, Kern High School District Solar (2), LLC, SunPower Commercial Holding Company III, LLC, SunPower Commercial Holding Company II, LLC, SunPower Commercial Holding Company I, LLC, Solar Star California XXX, LLC, Solar Star California XXX (2), LLC, Solar Star California XXXII, LLC, and Northstar Macys Maryland 2015, LLC. "***TotalEnergies***" means, collectively and individually: TotalEnergies Distributed Generation USA LLC, TotalEnergies Renewables USA, LLC, TotalEnergies SE, TotalEnergies Holdings USA, Inc. and their respective parent companies, subsidiaries, and affiliates.

c.      The Arevon Entities may immediately upon entry of this Confirmation Order, and without violating the automatic stay or any Plan injunction, (i) liquidate the claim asserted in the pending arbitration styled *Solar Star Always Low Prices IL, LLC v. SunPower Corporation, Systems,* American Arbitration Association Case No. 01-24-0000-1643 (the "Pending Arevon Arbitration"), (ii) name any of the Debtors as defendants in any litigation or arbitration to the extent necessary to collect or recover any claims solely against any surety, insurer, insurance policy or proceeds, or other non-Debtor, and (iii) collect or recover any liquidated claims or judgment, including without limitation in the Pending Arevon Arbitration, solely against any surety, insurer, insurance policy or proceeds, or other non-Debtor. For the avoidance of doubt, the Arevon Entities shall not seek to collect or recover any liquidated claims or judgment, including without limitation in the Pending Arevon Arbitration against any of the Debtors in violation of any of the terms of the Plan;

d.      The Debtors' contracts (the "Arevon Agreements") with any of the Arevon Entities are not assumed under section 365 of the Bankruptcy Code and, to the extent not previously assigned to TotalEnergies, shall be rejected in accordance with any applicable motion(s) or notices to reject Executory Contracts filed in the Chapter 11 Cases or otherwise in accordance with the terms of the Plan, and the Arevon Entities shall have thirty days from the date of entry of this Confirmation Order to file any rejection damages claim associated with the rejection of the Arevon Agreements regardless of the effective date of the rejection of any of the Arevon Agreements;

e.      The Arevon Entities may immediately provide any notices or take any steps necessary to terminate the Arevon Agreements and take any necessary and appropriate actions to find alternative service providers to replace services formerly provided by any Debtor or non-Debtor; *provided, however*, TotalEnergies reserves all rights with respect to any notice of termination of any of the Arevon Agreements;

f.      The Arevon Entities, the Debtors, the Wind Down Debtors, Creditor Trustee, and Plan Administrator reserve all legal and factual arguments with respect to the Arevon Agreements;

g.      The Arevon Entities, Debtors, and Wind Down Debtors reserve all rights, claims, and remedies against Titan Renewables Service Group, Inc. (together with any successors or assigns, "Titan") and any other vendors, subcontractors, or agents of the Debtors arising from or relating to any of the Arevon Agreements, including without limitation, any claims relating to or arising from the Debtors' or Titan's installation, operation, maintenance, or remediation, of rooftop solar projects on Walmart store locations in Illinois;

h.      The Arevon Entities may immediately upon entry of this Confirmation Order, and without violating the automatic stay or any Plan injunction pursue all claims, causes of action, rights, or remedies against TotalEnergies, asserting

(i) that the Arevon Agreements were assigned to TotalEnergies, (ii) TotalEnergies assumed or is otherwise liable for any obligations under the Arevon Agreements, or (iii) TotalEnergies is otherwise liable for any claims the Arevon Entities may have against the Debtors or any of their affiliates relating to the Arevon Agreements;

i.      Nothing shall prejudice the rights or defenses of TotalEnergies to argue that (i) the Arevon Agreements were not assigned to TotalEnergies and/or it is not a party to any of the Arevon Agreements, (ii) TotalEnergies has no liability or responsibility to any Arevon Entities in respect of the Arevon Agreements, or (iii) TotalEnergies otherwise has no liability to any Arevon Entities of any kind, and all such rights and defenses of TotalEnergies are expressly preserved;

j.      The Arevon Entities' rights to pursue their respective claims or remedies of any kind against any non-Debtors, including without limitation any surety, insurers, insurance proceeds, or TotalEnergies: (i) are not mandatory, and the Arevon Entities are not required to exercise or pursue any such rights, (ii) are cumulative and not exclusive of any rights provided under the Plan without first pursuing or exhausting all claims or rights against non-Debtors, and (iii) may be exercised independently, concurrently, or successively in the Arevon Entities' sole discretion;

k.      The Arevon Entities' rights of setoff and recoupment are preserved and the Arevon Entities may use their respective claims defensively (including as an affirmative defense, setoff, recoupment, or otherwise) in any litigation or dispute of any kind, including without limitation against the Plan Administrator, Wind-Down Debtors, Creditor Trust, Creditor Trustee, or any other successor or transferee of the Debtors, Wind-Down Debtors, or Estates;

l.      Any of the Arevon Entities' confidential information in the possession of any of the Debtors, Plan Administrator, the Wind Down Debtors, Creditor Trust, Creditor Trustee, or any other respective affiliates, including without limitation, any solar system monitoring data, along with any compilations, reports, extractions, or copies of such data, and drawings, specifications, plans, calculations, models, and designs for the Arevon Entities' solar and storage projects (collectively, the "Arevon Confidential Information") may not be sold or transferred without the Arevon Entities' consent or consistent with the terms of the Arevon Agreements governing the use of such Arevon Confidential Information;

m.      The Arevon Entities reserve all rights and claims against any party relating to the use, transfer, or disclosure of any Arevon Confidential Information;

n.      The Arevon Entities reserve all rights to amend or supplement any Proof of Claim after the applicable bar date and Effective Date to itemize, increase, or decrease the amount of any claim or damages, including any liquidated

damages, and all parties reserve objections to any such amended or supplemented Proof of Claim; and

o.    The provisions of this paragraph 101 are without limitation or waiver of any other rights of the Arevon Entities under the Plan, Confirmation Order, and applicable law.

### Y.    Securities Litigation Claims Preserved[6]

102.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, nothing herein or in the Plan shall preclude the court-appointed lead plaintiff in the Securities Litigation (the "Lead Plaintiff") from pursuing the claims now or hereafter asserted in the Securities Litigation against the Debtors as defendants, solely to the extent of available and applicable insurance, if any.  Any such claims, solely to the extent of available and applicable insurance, if any, are preserved and not discharged or otherwise released under the Plan; *provided, however*, that all rights, privileges, and defenses of the Securities Litigation defendants with respect to any such claims and any such available and applicable insurance (if any) are preserved and reserved in all respects.

### Z.    Reservation of Rights

103.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

---

[6]    "*Securities Litigation*" means the action captioned *Piotr Jaszczyszyn, Individually and on Behalf of All Others Similarly Situated v. SunPower Corp. et al.*, Case No. 3:22-cv-00956-AMO (N.D. Cal.).

**AA.    Notices**

104.    On or after the Effective Date, the Wind-Down Debtors may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  On or after the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**BB.    Non-Severability of Plan Provisions**

105.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Prepetition First Lien Agent, consistent with the terms set forth in the Plan; and (c) non-severable and mutually dependent.

**CC.    SEC Carve Out**

106.    Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, or this Confirmation Order, no provision therein shall (a) preclude the SEC from enforcing its police or regulatory powers; or (b) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor person or non-Debtor entity in any forum.

**DD.    Governmental Approvals Not Required**

107.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the

implementation or consummation of the Plan and the Wind-Down Transactions, including any actions necessary or appropriate for such purposes.

**EE.    Recording**

108.    The Debtors and the Wind-Down Debtors, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer.

**FF.    Effect of Conflict between Plan and Confirmation Order**

109.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between this Confirmation Order and the Plan or Plan Supplement, this Confirmation Order shall control.

**GG.    Implementing Documents**

110.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized and directed to accept any and all documents necessary or appropriate to effectuate, implement, or consummate the Plan, including the Wind-Down Transactions, and this Confirmation Order.

**HH.    Authorization to Consummate**

111.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

## II.     Debtors' Actions Post-Confirmation Through the Effective Date

112.     During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

## JJ.     Notices of Confirmation and Effective Date

113.     The Wind-Down Debtors shall serve notice of entry of this Confirmation Order (the "Confirmation Notice") on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list (collectively, the "Confirmation Notice Parties") within five Business Days after the Effective Date.  As soon as reasonably practicable after the Effective Date, the Wind-Down Debtors shall file notice of the Effective Date and shall serve a copy of the same on the Confirmation Notice Parties.  The notice of the Effective Date may be included in the Confirmation Notice.  The Wind-Down Debtors may serve the Confirmation Notice and the notice of the Effective Date via email.

114.     Notwithstanding paragraph 113 above, (a) no notice of Confirmation or notice of the Effective Date shall be required to be served upon any Entity for which the Debtors (or Wind-Down Debtors) do not have a street address or e-mail address that is confirmed to be accurate and current; and (b) the Wind-Down Debtors need not serve the Confirmation Notice on any Holder who has not timely filed a proof of claim in the Chapter 11 Cases unless the Wind-Down Debtors have an accurate, current email address for such Holder.  In addition, no later than seven Business Days after the Effective Date, the Wind-Down Debtors shall cause the Confirmation Notice, modified for publication, to be published on one occasion in *The New York Times* or another similar nationally circulated news publication.

115.     The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**KK.     Return of Adequate Assurance Deposits**

116.     On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors under the order entered at Docket No. 242 shall be returned to the Wind-Down Debtors.

**LL.     Dissolution of Statutory Committees**

117.     On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve and the members thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except in connection with applications for compensation and objections thereto.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court.

**MM.   Headings**

118.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**NN.   Final Order and Waiver of Stay**

119.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

## Exhibit A

**Plan**