**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SunPower Corporation, *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 24-11649 (CTG)<br>(Jointly Administered)<br><br>RE: Docket Nos. 647, 651, 773 |

**LIMITED OBJECTION OF CIGNA TO JOINT CHAPTER 11 PLAN**
**OF SUNPOWER CORPORATION AND ITS DEBTOR AFFILIATES**

Cigna Health and Life Insurance Company ("CHLIC") and Evernorth Care Solutions, Inc. ("ECS," and jointly with CHLIC, "Cigna") hereby object on the limited basis set forth below to confirmation of the *Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 651-1] ("Plan").

**PRELIMINARY STATEMENT**

This Limited Objection is filed in an effort to assure that Employee Healthcare Claims (defined below) incurred both before and after the Petition date are processed, funded, and paid in accordance with the Debtors' employee benefits plan, which the Debtors propose to terminate on or about November 30, 2024. As discussed below, terminating a self-issued employee healthcare benefits plan in the context of a wind-down plan creates myriad issues that must be resolved through a formal process approved by the Court.

Cigna and the Debtors are working diligently to resolve those issues and are optimistic that a resolution can be reached prior to the Plan Confirmation hearing.

**BACKGROUND**

1. CHLIC and Debtors are parties to an Administrative Services Only Agreement ("ASO Agreement") that allows the Debtors to be self-insured for their employee healthcare benefits plan with CHLIC performing administrative functions. Under the ASO Agreement,

CHLIC processes medical and pharmaceutical claims of Debtors' employees ("Employee Healthcare Claims"), and the Debtors fund Employee Healthcare Claim payments to healthcare providers through a segregated bank account at Citibank that is in the name of SunPower Corporation ("Plan Bank Account").

2. CHLIC and Debtors are also parties to the following policies (collectively, the "Supplemental Benefits Policies") through which CHLIC provides dental, vision, accidental indemnity, critical illness and hospital indemnity coverage to Debtors' employees:

- Group Dental and Vision Policy (Pol001), as amended, effective 7/1/2020;
- Cigna Dental Choice Policy (Pol002), as amended, effective 7/1/2023;
- Group Dental Insurance Policy (Pol003), effective 7/1/2020;
- Cigna Vision Policy (Pol004), effective 7/1/2020;
- Group Accident Indemnity Policy, AI 111887, effective 1/1/2024;
- Group Critical Illness Policy, CI 111821, effective 1/1/2024;
- Group Hospital Indemnity Policy, HC 111502, effective 1/1/2024; and

3. ECS and the Debtors are parties to an Agreement for Employee Assistance Program Services, (collectively with the ASO Agreement and the Supplemental Benefits Policies, the "Employee Benefits Agreements").[1]

4. On September 30, 2024, the Debtors filed the Plan and the *Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and Its Debtor Affiliates* [Docket No. 651].

5. On September 30, 2024, this Court entered the *Amended and Superseding Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing and Setting Dates and Deadlines and Shortening Notice with Respect Thereto, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Forms of Ballots and Notices in*

---

[1] Including all amendments, riders, schedules, exhibits, certificates, renewal caveats and disclosures, addendums, letters of intent and banking agreements related thereto.

*Connection Therewith, and (V) Granting Related Relief* [Docket No. 647] ("Disclosure Statement Order").

6. Paragraph 28 of the Disclosure Statement Order required the Debtors to file and serve written notice ("Cigna Notice") of their irrevocable decision as to whether or not the Debtors proposed to assume, reject, or otherwise terminate, conditioned on the Effective Date of the Plan, the Employee Benefits Agreements. The Disclosure Statement Order further required that, if the Debtors proposed to reject or otherwise terminate the Employee Benefits Agreements, the Cigna Notice must state whether the effective date of such termination shall be: (i) the Effective Date of the Plan; or (ii) such other date as the Debtors may propose, upon at least 30 days' notice. Finally, if the Debtors proposed to reject or otherwise terminate the Employee Benefits Agreements, the Disclosure Statement Order required the Cigna Notice to include the Debtors' decision as to whether: (i) the payment of employee healthcare claims that were incurred, but not submitted, processed and paid prior to the effective date of termination ("Run-Out Claims") will be funded by the Debtors (or a successor thereto) for the twelve-month period following such rejection, and the source of such funding ("Run-Out Period").

7. By letter dated October 2, 2024, the Debtors formally notified Cigna of termination of the Employee Benefits Agreements effective as of "the end of the day" November 30, 2024.

8. On October 8, 2024, the Debtors filed the *Notice of Filing of Plan Supplement* [Docket No. 742] ("Plan Supplement"). The Assumption Schedule[2] filed with the Plan Supplement does not list any of the Employee Benefits Agreements. Thus, on its face, the Plan proposes that the Employee Benefits Agreements will be rejected as of the Effective Date of the Plan. *See*, Plan, Article V.A.

---

[2] Capitalized terms not defined herein have the meaning ascribed to them in the Plan.

9. On October 11, 2024, the Debtors filed the *Notice of Rejection of Certain Cigna Contracts* [Docket No. 773]. The Cigna Notice provided as follows:

> [A]ll of the Employee Benefits Agreements, including the Employee Benefits Agreements, will be rejected pursuant to the Plan, subject to the occurrence of the Effective Date (the "Proposed Rejection"). The effective date of the Proposed Rejection shall be either (a) November 30, 2024; or (b) such other date as the Debtors may designate in writing, upon at least 30 days' notice to Cigna. The Wind-Down Debtors intend to pay the Run-Out Claims for the twelve-month period following the Proposed Rejection, with such payment to be funded from the Wind-Down Debtors' Account.

10. Although the Debtors' have elected to fund Run-Out Claims, they have not yet cured the Employee Healthcare Claims funding shortfall that began in September, 2024 ("Underfunding"). Therefore, the September 10, 2024 Employee Healthcare Claim processing hold remains in place. Employee Healthcare Claims that were incurred, but not paid prior to September 10, 2024, will not be processed or paid until the Plan Bank Account is sufficiently funded.

11. As of October 10, 2024, there were approximately 1650 unprocessed, unadjudicated, and unpaid Employee Healthcare Claims pending ("Pending Claims") on hold, in the total aggregate amount of approximately $7,648,026. The number and aggregate amount of the Pending Claims will continue to increase.

## OBJECTION

12. Cigna objects to the Plan to the extent necessary to assure that the Debtors (i) sufficiently fund the Plan Bank Account to have the Pending Claims processed and paid, (ii) continue to fund the Plan Bank Account as necessary to have ongoing Employee Healthcare Claims processed and paid through the Termination Date, and (iii) meet all of their contractual obligations relating to Run-Out Claims, including the payment of Run-Out fees due and the funding of Run-Out Claims throughout the Run-Out Period ("Run-Out Claims Obligations").

13. The Debtors have advised Cigna that they want to terminate active coverage under the Employee Benefits Agreements as of 12:01 a.m., December 1, 2024 ("Termination Date"). The Debtors have further advised Cigna that they elect Run-Out Claims coverage and intend to fund the payment of Run-Out Claims.

14. Upon information and belief, the Debtors' current and former employees who have incurred and will incur healthcare claims prior to the Termination Date expect that those Employee Healthcare Claims will continue to be funded both before and after the Termination Date. However, if the Debtors do not provide sufficient funding to pay the Pending Claims and/or do not meet their Run-Out Claims Obligations, Employee Healthcare Claims incurred prior to the Termination Date may not be paid.

15. Terminating healthcare claims coverage under an ASO Agreement pursuant to a Plan after a chapter 11 debtor ceases operations creates myriad issues that must be resolved through a formal process to address, *inter alia*:

> ➤ Deposits into the Plan Bank Account to cure the Underfunding, fund Pending Claims, fund Employee Healthcare Claims that continue to be submitted for processing and payment, and fund Run-Out Claims.
> ➤ A procedure under which the Wind-Down Debtors can provide supplemental funding as necessary to pay Run-Out Claims.
> ➤ The return of any funds remaining in the Plan Bank Account after the end of the Run-Out Period to the Wind-Down Debtors.

16. So as to assure the continued processing and payment of Employee Healthcare Claims through the end of the Run-Out Period, this process must be formalized and approved by the Court through the order confirming the Plan. This is in the best interests of the Debtors' estates, and the Debtors' current and former employees.

WHEREFORE, Cigna respectfully requests that this Court enter an order that: (i) confirms the Plan only to the extent consistent with the foregoing; and (ii) grants Cigna such additional relief as this Court deems just and equitable.

| | |
|---|---|
| Dated: October 17, 2024 | CONNOLLY GALLAGHER LLP |
| | */s/ Jeffrey C. Wisler*<br>Jeffrey C. Wisler (#2795)<br>1201 North Market Street, 20th Floor<br>Wilmington, DE  19801<br>Telephone: (302) 757-7300<br>Facsimile: (302) 658-0380<br>Email: jwisler@connollygallagher.com |
| #05835392 | Counsel for Cigna Health and Life Insurance Company and Evernorth Care Solutions, Inc. |