**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>SUNPOWER CORPORATION *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11649 (CTG)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 787**<br><br>**Hearing Date: October 18, 2024 at 2:30 p.m. (ET)**<br>**Obj. Deadline: October 15, 2024 at noon (ET)** |

**UNITED STATES TRUSTEE'S SUPPLEMENTAL OBJECTION TO THE COMBINED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION AND/OR LIQUIDATION FOR DEBTORS**

The United States Trustee (the "U.S. Trustee"), by and through counsel, in furtherance of his duties and responsibilities under 28 U.S.C. § 586(a)(3) and (5), hereby submits this supplemental objection (the "Supplemental Objection") to his *Objection to the Confirmation of the Plan and Supplement to the United States Trustee's Omnibus Objection to (A) the Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and its Debtor Affiliates and (B) the Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing and Setting Dates and Deadlines and Shortening Notice with Respect Thereto, (III) Approving the Solicitation Packages and Notice*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335). The location of the Debtors' service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

1

*Procedures, (IV) Approving the Forms of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* (the "Plan") [D.I. 787],[2] and respectfully states:

## PRELIMINARY STATEMENT

1. This supplemental objection addresses the most recently-filed version of the Plan and, specifically, its objectionable financial reporting and statutory fee payment provision. The financial reporting and statutory fee payment provision fails to state that the Creditor Trust will carry out all of the standard reporting and fee payment duties required of post-confirmation entities and, as such, the Plan cannot be confirmed in its present form.

## JURISDICTION AND STANDING

2. This Court has jurisdiction under 28 U.S.C. §§ 157(a) and (b) to hear and determine this Supplemental Objection.

3. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor and comment on plans and disclosure statements filed in chapter 11 cases.

5. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard regarding this Supplemental Objection. *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia*

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or referenced document or pleading.

*Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under section 307, which goes beyond mere pecuniary interest).

## BACKGROUND

6. On September 30, 2024, the Debtors filed the solicitation version of the Plan. The deadline set for filing objections to the Plan was October 15, 2024.

7. On October 15, 2024, the U.S. Trustee filed his *Objection to Confirmation of the Plan and Supplement to the United States Trustee's Omnibus Objection to (A) the Disclosure Statement for the Joint Chapter 11 Plan of SunPower Corporation and its Debtor Affiliates and (B) the Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement, (II) Scheduling a Plan Confirmation Hearing and Setting Dates and Deadlines and Shortening Notice with Respect Thereto, (III) Approving the Solicitation Packages and Notice Procedures, (IV) Approving the Forms of Ballots and Notices in Connection Therewith, and (V) Granting Related Relief* [D.I. 787].

8. Early in the morning of October 15, 2024, the Debtors filed the *Amended Joint Chapter 11 Plan of SunPower Corporation and its Debtor Affiliates* (the "Amended Plan") [D.I. 784].

9. The Amended Plan contained a new Article X entitled "Creditor Trust" that augmented provisions concerning a creditor trust in the prior version of the Plan and outlined the creation of a new creditor trust construct. Among the provisions in Article X concerning the new Creditor Trust are that:

- After the Effective Date, neither the Debtors, Wind-Down Debtors, nor any other party shall have any interest in the Creditor Trust Assets except as expressly set forth herein. Amended Plan Art. X. A.

- The Creditor Trust shall be administered by the Creditor Trustee and governed by the Creditor Trust Agreement, and the Creditor Trustee shall

have the sole power and authority to distribute the Creditor Trust Net Assets to Holders of Allowed Claims in accordance with the Creditor Trust Recovery and treatment set forth in Article III.B of the Plan. *Id.*

- The Creditor Trust shall be established for the purpose of liquidating the Creditor Trust Assets, reconciling and objecting, if necessary, to disputed General Unsecured Claims, and distributing the Creditor Trust Net Assets to the Creditor Trust Beneficiaries in accordance with the terms of the Plan (including the Creditor Trust Recovery) and Creditor Trust Agreement. Amended Plan Art. X. B

10. In addition, as part of the Creditor Trust construct, the Amended Plan provides the following defined terms:

- "Creditor Trust" means the liquidating bankruptcy trust established on the Effective Date for the benefit of the Creditor Trust Beneficiaries in accordance with Article X of the Plan and the Creditor Trust Agreement. Amended Plan at Art. I.A.39.

- Creditor Trust Assets" means, collectively, (a) the Creditor Trust Claims; and (b) the Creditor Trust Cash. Amended Plan at Art. I.A.41.

- "Creditor Trust Beneficial Interest" means the non-certified beneficial interest in the Creditor Trust granted to each Creditor Trust Beneficiary, which shall entitle such Holder to distributions of the Creditor Trust Net Assets in accordance with the Creditor Trust Recovery. Amended Plan at Art. I.A.42.

- "Creditor Trust Beneficiary" means Holders of Allowed General Unsecured Claims and, solely with respect to the Creditor Trust First Lien Amount, Holders of Allowed Prepetition First Lien Secured Claims. Amended Plan at Art. I.A.43.

- "Creditor Trust Cash" means the sum of (a) $1,000,000 of Available Cash and (b) any remaining funds from the Wind-Down Amount or the Data Preservation Funds following the completion of the Wind-Down and dissolution of the Wind-Down Debtors. Amended Plan at Art. I.A. 44.

- "Creditor Trust Claims" means the Retained Causes of Action; provided that the Wind-Down Debtors shall retain all GUC Avoidance Actions against each Entity that owes any money to any Debtor or Wind-Down Debtor (and such GUC Avoidance Action shall not be a Creditor Trust Claim) unless and until such Entity has paid the full amount owed to the Debtor or Wind-Down Debtor in Cash (or such other amount or treatment that the Plan Administrator agrees, in the Plan Administrator's sole

4

- discretion), at which point such GUC Avoidance Action shall be a Creditor Trust Claim.  Amended Plan at Art. I.A.45.

- "Creditor Trust Fees and Expenses" means all reasonable and documented fees, expenses, and costs (including any taxes imposed on or payable by the Creditor Trust or in respect of the Creditor Trust Assets) incurred by the Creditor Trust, any professional retained by the Creditor Trust (including, without limitation, attorneys, accountants, distribution agents, experts, or otherwise), and any additional amount determined necessary by the Creditor Trustee necessary to adequately reserve for the operating expenses of the Creditor Trust.  Amended Plan at Art. I.A.46.

- "Creditor Trust Recovery" means, the allocation and payment by the Creditor Trustee of Creditor Trust Net Assets realized from the proceeds of Creditor Trust Claims (a) first, 75% to the Holders of Allowed Prepetition First Lien Secured Claims and 25% to the Holders of all Allowed General Unsecured Claims (excluding Allowed Prepetition First Lien Deficiency Claims but including any Allowed Prepetition Second Lien Deficiency Claims) until the Holders of Allowed Prepetition First Lien Secured Claims have received Cash distributions from the Creditor Trust Net Assets equal to the Creditor Trust First Lien Amount; provided further, however, that the foregoing allocation shall not apply to the proceeds of Creditor Trust Claims that are GUC Avoidance Actions, which proceeds, if any, of Creditor Trust Claims that are GUC Avoidance Actions shall be allocated and paid 100% to the Holders of all Allowed General Unsecured Claims (including Allowed Prepetition First Lien Deficiency Claims and any Allowed Prepetition Second Lien Deficiency Claims) and (b) second, following satisfaction of the Creditor Trust First Lien Amount, Pro Rata to the Holders of Allowed General Unsecured Claims (including Allowed Prepetition First Lien Deficiency Claims and Allowed Prepetition Second Lien Deficiency Claims).  Amended Plan at Art. I.A.48.

- "Creditor Trust First Lien Amount" means the sum of (a) the Post-Effective Date Funding Amount and (b) the amount, if any, of Allowed Professional Fee Claims of the Committee's Professionals in excess of $2,560,000.  Amended Plan at Art. I.A.49.

- "Creditor Trustee" means the bankruptcy trustee of the Creditor Trust appointed to administer the Creditor Trust pursuant to the Creditor Trust Agreement. The identity of the Creditor Trustee shall be chosen by the Committee in accordance with the Creditor Trust Agreement and shall be filed with the Plan Supplement.  Amended Plan at Art. I.A.50.

- "Post-Effective Date Funding Amount" means the sum of the Creditor Trust Cash, the Wind-Down Amount, and the Data Preservation Costs; provided,

however that the Post-Effective Date Funding Amount shall not exceed $4,000,000. Amended Plan at Art. I.A.104.

11. Article XIII.C. of the Amended Plan states that with respect to the payment of fees under 28 U.S.C. § 1930(a)(6) (the "Quarterly Fees") and the filing of reports under Fed. R. Bankr. P. 2015.[3]

> Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Wind-Down Debtors or any entity making disbursements on behalf of any of the Wind-Down Debtors, or making disbursements on account of an obligation of any Debtor or Wind-Down Debtor (each, a "Disbursing Entity"), shall be liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Wind-Down Debtors, on behalf of themselves, or any entity making disbursements on behalf of the Wind-Down Debtors, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Wind-Down Debtors, and the Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Plan.

Amended Plan Art. XIII.C.

## ARGUMENT

**I. Confirmation Standard**

12. A chapter 11 plan cannot be confirmed unless this Court finds the plan complies with the provisions of 11 U.S.C. § 1129(a). *See In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220-21 (Bankr. D.N.J. 2000). A plan proponent bears the burden of proof with respect to

---

[3] Fed. R. Bankr. P. 2105(a)(5) provides that "in a chapter 11 reorganization case (other than under subchapter V), on or before the last day of the month after each calendar quarter during which there is a duty to pay fees under 28 U.S.C. § 1930(a)(6), file and transmit to the United States trustee a statement of any disbursements made during that quarter and of any fees payable under 28 U.S.C. § 1930(a)(6), for that quarter; . . ."

each element of section 1129(a).  *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001).

13. Any reorganized debtor, post-effective date debtor, liquidating trust and litigating trust are required to pay U.S. Trustee Quarterly Fees until the cases are closed, converted, or dismissed.  Pursuant to 28 U.S.C. § 1930(a)(6), quarterly fees on disbursements must be paid in every open Chapter 11 case.  *See United States Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.),* 150 F.3d 1233 (10th Cir. 1998); *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.),* 402 F.3d 416, 418 (3d Cir. 2005) (where the Third Circuit affirmed the lower court holdings and held each debtor was obligated to pay quarterly fees based on the payment of its respective operating expenses regardless of whether it actually wrote the checks to pay for these expenses). See also, *In re Charter Behavioral Health Sys., LLC*, 292 B.R. 36 (Walrath J.) (Bankr. D. Del. 2003); *In re Kindred Healthcare, Inc.*, 2003 WL 22327933 (Bankr. D. Del. 2003). "Payments made on behalf of a debtor, whether made directly or indirectly through centralized disbursing accounts, constitute that particular debtor's disbursements for the purpose of quarterly fees calculations under § 1930(a)(6)." *In re Genesis Health Ventures, Inc.* 402 F. 3d 416 (3d Cir. 2005). *See also, Cash Cow Servs. of Fla. LLC v. United States Trustee (In re Cash Cow Servs. of Fla. LLC)*, 296 F.3d 1261, 1263 (11th Cir. 2002), *cert. denied,* 537 U.S. 1161, 123 S. Ct. 979 (2003) (holding by the Eleventh Circuit Court of Appeals that consumer loans made by the debtor were "disbursements" within the meaning of 28 U.S.C. § 1930(a)(6) and therefore subject to the payment of U.S. Trustee Quarterly Fees).

14. The payment of Quarterly Fees is mandatory in every case from the quarter in which the petition is filed until the quarter in which the case is closed pursuant to a final decree. *See United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 554 (3d Cir. 1999).

7

15. As the U.S. Trustee Quarterly Fee owed in a particular quarter is determined solely by operation of statute, it is not subject to the agreement of the parties, nor is it subject to adjustment by the courts. *See, e.g.*, *Walton v. Jamko, Inc. (In re Jamko, Inc.)*, 240 F.3d 1312, 1314 (11th Cir. 2001) (noting that calculation of Quarterly Fees is mandated by statute); *Jorgenson v. Schwartz (In re Wilko Machine Co.)*, No. 97-55937, 1997 WL 77963 (9th Cir. Feb. 4, 1997); *Office of the U.S. Trustee v. Hays Builders, Inc. (In re Hays Builders, Inc.)*, 144 B.R. 778, 779 (W.D. Tenn. 1992).

16. Courts have routinely rejected the argument that a liquidation trust is not responsible for paying post-confirmation quarterly fees.[4] For example, in *U.S. Trustee v. Hudson Oil Co. (In re Hudson Oil Co.)*, 210 B.R. 380, 383 (D. Kan. 1997), the district court "reject[ed] the argument that . . . the liquidating trust established under the confirmed plan has no responsibility for the fees imposed" under section 1930(a)(6). *Id*. at 383. Although the district court reversed for other reasons, it noted that the bankruptcy court had also rejected the liquidating trust's argument because, among other reasons, "the trust [was] a liquidating and disbursing agent for the debtors" and was "subject to continuing bankruptcy court supervision." *Id*. at 384, n.3.

17. Similarly, in *In re Atna Resources, Inc.*, 576 B.R. 214 (Bankr. D. Colo. 2017), the bankruptcy court was presented with "a liquidating trustee, whose sole existence flow[ed] from the debtors and their assets, liabilities, and confirmation of their Chapter 11 bankruptcy cases, [who sought] to avoid payment of post-confirmation [quarterly] fees[.]" *Id*. at. 216. The court held that the liquidating trust was liable for payment of post-confirmation quarterly fees under the

---

[4] In *In re JNL Funding Corp.*, 620 B.R. 25 (Bankr. E.D.N.Y. 2020), the bankruptcy court ordered a liquidating trustee to disgorge an amount equal to the quarterly fees he had failed to pay while the case was in chapter 11. *See id*. at 29-30.

language of section 1930(a)(6) and the provisions of the debtors' plan, "even without an express provision requiring the Trust to pay the statutory fee." *Id*. at 218-20.

18. Likewise, in *In re CSC Industries, Inc.*, 226 B.R. 402 (Bankr. N.D. Ohio 1998), the bankruptcy court held that "the Liquidation Trustee [was] responsible to pay post-confirmation quarterly fees out of the Liquidation Trust" because "Congress intend[ed] such fees be paid by Chapter 11 debtors prior to conversion or dismissal," and "the Liquidation Trust ha[d] essentially stepped into the shoes of the original debtor and [was] therefore liable for any such fees which may be imposed" post-confirmation. *Id*. at 404.

19. In *In re Home Centers, Inc.*, 232 B.R. 680 (Bankr. N.D. Ohio 1997), as here, the debtor "turned over all of its tangible and intangible assets" to a liquidating trust that was created to make distributions required by the plan. *Id*. at 683. The bankruptcy court held that, since the liquidating trust "was created solely to collect and liquidate the assets of the Debtor in order to disburse the funds to the creditors," the court "c[ould] find no other meaningful interpretation" of section 1930(a)(6) other than to hold that the liquidating trust was responsible for paying post-confirmation quarterly fees. *Id*. at 683-84.

20. All post-confirmation payments of the Creditor Trust, along with those of the Debtors and Wind-Down Debtors, must be included in calculating the quarterly fee mandated by section 1930(a)(6). In order to calculate such quarterly fees, all post-confirmation entities under the Amended Plan must file post-confirmation quarterly reports disclosing their disbursements. *See* 28 U.S.C. § 589b and 28 C.F.R. § 58.8 (2020).[5]

---

[5] In 28 U.S.C. § 589b, Congress directed the Attorney General to "issue rules requiring uniform forms for (and from time to time thereafter to appropriately modify and approve) . . . periodic reports by debtors in possession or trustees in cases under chapter 11 of title 11." 28 U.S.C. § 589b(a)(2). Congress has further directed that the information required to be reported in periodic reports filed after plan confirmation includes, "by class, the recoveries of the holders, expressed in aggregate dollar values and, in the case of claims, as a percentage of total claims of the class allowed." 28 U.S.C. § 589b(e)(7). Pursuant to 28 U.S.C.

9

21. Despite making disbursements, the Amended Plan fails to require that the Creditor Trust to pay Quarterly Fees or to file post-confirmation quarterly reports ("UST Form 11-PCR"). Although the Debtors and Wind-Down Debtors will pay Quarterly Fees, the Creditor Trust will be making disbursements but will not be required to pay a Quarterly Fee or to file the UST Form 11-PCR.

22. What is quite clear, however, is that Congress has "mandated" under 28 U.S.C. § 1930(a)(6) that such fees be paid, not only up to confirmation but also post-confirmation up to the Effective Date and beyond until such time as the Debtors' cases are dismissed, converted to another chapter, or closed by final decree. *Gryphon at the Stone Mansion,* 166 F.3d at 557.  As a result, the Plan must be amended to obligate all parties making disbursements, including the Creditor Trust for the payment of all Quarterly Fees in these cases.

23. The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Objection and reservation of rights, assert any objection, file any appropriate motion, or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

\*\*\*

---

§ 589b and the Attorney General's subsequent directive, the U.S. Trustee promulgated 28 C.F.R. § 58.8 (2020) and created UST Form 11-PCR for post-confirmation reporting.  Part 3 of UST Form 11-PCR seeks information regarding recoveries under a plan for various classes of claims.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court enter an order or orders: (i) denying final approval of the Disclosure Statement; (ii) denying confirmation of the Amended Plan; and (iii) granting such other and further relief as the Court deems just and equitable.

Dated: October 17, 2024               Respectfully submitted,

                        **ANDREW R. VARA**
                        **UNITED STATES TRUSTEE**
                        **REGIONS 3 AND 9**

By: */s/ Richard L. Schepacarter*
     Richard L. Schepacarter
     Trial Attorney
     United States Department of Justice
     Office of the United States Trustee
     J. Caleb Boggs Federal Building
     844 King Street, Room 2207, Lockbox 35
     Wilmington, DE 19801
     Tel: (302) 573-6491
     Email: Richard.Schepacarter@usdoj.gov