IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SUNPOWER CORPORATION, *et. al.*,[1] | ) | |
| | ) | Case No. 24-11649 (CTG) |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| | ) | Hearing Date: February 20, 2025 at 10:00 a.m. (EST) |
| | ) | Response Deadline: January 2, 2025 at 4:00 p.m. (EST) |

FILED 2025 JAN -2 PM 3:19 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE

**RESPONSE TO THE PLAN ADMINISTRATOR'S THIRD OMNIBUS OBJECTION TO CERTAIN RECLASSIFIED CLAIMS (SUBSTANTIVE)**

> **Request to Deny "The Plan Administrator's Third Omnibus Objection to Certain Reclassified Claims (Substantive)" as it relates to Proof of Claim Referenced in Schedule 1 at Line 58 (Poladian, Joel)**

Respondent/Creditor, Joel Poladian (the "Homeowner"), represented pro se, hereby submits the following response to "The Plan Administrator's Third Omnibus Objection to Certain Reclassified Claims (Substantive)" as it relates to Proof of Claim referenced in Schedule 1 at Line 58 (Poladian, Joel) filed by Mark Roberts, in his capacity as Plan Administrator for the Petitioner/Debtor on December 19, 2024.

On or about October 17, 2024, the Homeowner timely filed a Proof of Claim (official form 410) along with a rider to the proof of claim, and associated supplemental documentation, with the Court via the Claims Processing Center managed by Epiq Corporate Restructuring LLC. On said Proof of Claim form, the Homeowner stipulated $3,350, the maximum allowable in this context, as a secured debt and the remaining $500 was recorded on the form as unsecured.

---

[1] The Debtors in these chapter 11 cases, along with the last for digits of each Debtor's federal tax identification number, are: SunPower Corporation (8969); SunPower Corporation, Systems (8962); SunPower Capital, LLC (8450); SunPower Capital Services, LLC (9910); SunPower HoldCo, LLC (0454); SunPower North America, LLC (0194); Blue Raven Solar, LLC (3692); Blue Raven Solar Holdings, LLC (4577); BRS Field Ops, LLC (2370); and Falcon Acquisition HoldCo, Inc. (3335) (collectively, "SunPower"). The location of the Debtor's service address for purposes of these chapter 11 cases is: 880 Harbour Way South, Suite 600, Richmond, CA 94804.

On December 19, 2024, the Plan Administrator filed their Third Omnibus Objection seeking to reclassify certain claims as unsecured debt and includes Proof of Claim referenced in Schedule 1 at Line 58 (Poladian, Joel). The Plan Administrator is seeking to reclassify the entire $3,850 claimed by the Homeowner as unsecured debt.

However, "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001 (f). "Upon filing of an objection to a properly filed proof of claim, the burden going forward shifts from the claimant to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. If the claim is facially valid, the objector must bring forward evidence that undercuts at least one necessary element of the claim." In re W.R. Grace & Co, 626 B.R.217, 235 (Bankr. D. Del. 2021).

In the Plan Administrator's Third Omnibus Objection, the petitioner merely contends that the priority status for the proof of claim submitted by the Homeowner has no legal basis. In their description, they seek to recharacterize the substance of the warranty transaction underlying the claim from a necessary deposit arising from a calamity to an expense incurred by the Homeowner that could be reimbursable by SunPower, a conclusion that is inconsistent with the law and contractual Agreements in this matter.

Such a recharacterization of the substance of the transaction ignores bad faith conduct supported by the documentation provided with the Proof of Claim and suggests that SunPower was using the Homeowner's credit to discharge or eliminate debt in bankruptcy proceedings - unjust conduct that is sanctionable by this Court.

### The Plan Administrator apparently misinterprets the word "deposit" as it relates to this matter.

The Plan administrator contends that the priority status asserted for the Proof of Claim (Poladian, Joel) referenced on Line 58 of Schedule 1 (the "Proof of Claim") has no legal basis. However, under 11 U.S.C. §507(a)(7), as stated on the Proof of Claim form itself, the aggrieved Homeowner may "claim up to $3,350 of deposits toward the purchase, lease, or rental of property or services for personal, family, or household use." It appears the Plan Administrator's contention is based on a colloquial use of the word "deposit", which does not take into consideration the Legal definition of the word "deposit" and its context given the evidence offered in Exhibits B and C to the Proof of Claim form in this matter. Here, because monies placed with a third party to fulfill SunPower's contractual warranty obligations was the result of a calamity, these monies cannot be construed to be a voluntary deposit, and accordingly, the legal definition of a deposit in this matter should be considered that of a "necessary deposit." *See* https://dictionary.justia.com/necessary-deposit (The legal definition of deposit includes the

transfer of funds at issue here). Furthermore, the Homeowner would not be in this situation were it not for the unambiguous written directions of SunPower to engage a third-party and thereafter be reimbursed by SunPower, as described in further detail below and in the Proof of Claim. Therefore, SunPower's claim that Homeowner's actions did not amount to a deposit because Homeowner followed SunPower's directions is without merit. There is no mention in the SunPower Warranty documents of a transactional scenario where the Homeowner suffering damages caused by SunPower would incur an expense and then be required to request reimbursement from SunPower. The executed Agreement with SunPower (previously submitted to the Court as Exhibit A in the Proof of Claim, as the "Agreement") states in Section 4 ("Limited Warranty") that: "During the System Warranty Period or the Roof Warranty Period, as applicable (each, a "Warranty Period"), as specified in Section 4.a above, and subject to Section 4.d and Section 8 below, <u>we will repair or replace any defective part, material or component or correct any defective workmanship, at no cost or expense to you (including, without limitation, all labor costs), when you submit a valid claim to us.</u>" (Emphasis added). Furthermore, the Agreement with SunPower states in Section 15: "This Agreement contains the entire agreement of Customer and Contractor regarding the subject matter of this Agreement. Any amendment or other change to this Agreement must be in writing and signed by both parties." After this unexpected damage to the Homeowner's property, the Homeowner was unambiguously directed and required by SunPower (as described in the Proof of Claim), in amounts subject to approval by SunPower, to make the necessary deposits with a third party for repair of the damage caused by SunPower. In the context of this matter, as a necessary deposit in accordance with the legal definition of "deposit", the Homeowner's Proof of Claim meets the required elements to support the legal basis for an assertion of priority status. Additionally, the evidence proffered in the Proof of Claim filed with the Court at Exhibits C and D clearly illustrates that this warranty claim was the result of rain water damage (an unforeseeable calamity) caused by the faulty workmanship of SunPower. Therefore, based on the evidence in this matter, the assertion by the Plan Administrator that there was any sort of contractual transactional arrangement whereby the customer would be required to extend credit or incur an expense and then subsequently be reimbursed for fulfillment of SunPower's Warranty obligations and therefore not eligible for priority status is based on a fiction and wholly without merit. Therefore, the Plan Administrator's objection seeking to reclassify the Proof of Claim referenced in Schedule 1 at Line 58 (Poladian, Joel) as unsecured should be denied by this Court.

**Sustaining the Plan Administrator objection ignores conduct potentially sanctionable by this Court.**

In Section 4 ("Limited Warranty") of the SunPower Agreement with the Homeowner provided in Exhibit A of the Proof of Claim, clearly obligates SunPower to repair or replace any defective part, material, or component or correct any defective workmanship, at no cost or expense to the Homeowner (including, without limitation, all labor costs), once a valid claim has been

submitted. There can be no dispute (and indeed, there is no dispute) that damage occurred based on the defective workmanship of SunPower, a valid claim was submitted, and that SunPower is obligated to repair that damage without cost or expense to the Homeowner. As illustrated in Exhibit C to the Proof of Claim form submitted in this matter, over a four-month time period, beginning on March 27, 2024, there is evidence of correspondence with SunPower requesting they honor their obligations under a warranty claim to repair water damage to the Homeowner's interior ceiling. On April 9, 2024, there is correspondence from SunPower that states: "At this time, we have received the roof leak assessment, and the team has deemed your leak solar related along with locating some interior damage. If you could at this time, obtain a subcontractor of your choice to repair the interior damages." The Homeowner solicited a bid from a licensed third-party construction contractor for repair of the damage and provided it to SunPower and receipt of the repair estimate was acknowledged by SunPower on April 17, 2024. Ten days later, on April 27, 2024, SunPower stated: "Upon checking the claim, the approval is still in progress. I will touch base on Wednesday for any further updates." Nearly two weeks later, on May 8, 2024, the Homeowner sent correspondence indicating: "We have not received a reply to this email. You already notified us that the interior ceiling leak was caused by the installation of the solar panels. We provided an estimate as you requested and we've been waiting for SunPower's concurrence with the estimate from the contractor to begin the repair. At this point, it does not appear that SunPower is acting in good faith." SunPower's response to the May 8, 2024 email stated: "Yes, you can move forward with repairs. Everything is still pending. As soon as I get approval on your quote, I will shoot you an email with the most recent update on your quote." Almost six weeks later, on June 20, 2024, the Homeowner sent an email to SunPower stating: "We have not heard anything back from you regarding our claim since we submitted the invoice to you for reimbursement. I am attaching the email thread for you. Can you please give us a status update?" Nearly one month later, on July 18, 2024, the homeowner sent an email to SunPower stating: "At this point, I am wondering if SunPower has any intention of honoring your commitment to reimburse us for the repairs you told us to move forward with." The SunPower Chief Executive Office, Chief Financial Officer, and Chief Legal Officer were all copied on that July 18, 2024, email from the Homeowner to SunPower, which included the entirety of the previous correspondence described above. On July 24, 2024, SunPower notified the Homeowner that: "Per our conversation, your quote has been submitted with the final invoice amount of $3,850. This process does take about 6-8 weeks to process and for you to receive the check." Two weeks later, on August 5, 2024, SunPower filed for Chapter 11 bankruptcy protection.

From the documented delay and deny tactics employed by SunPower in this matter, sustaining the Plan Administrator's objection to reclassify the status of this claim would be an acknowledgement that SunPower was using the Homeowner's credit in an apparent attempt to discharge or eliminate debt in bankruptcy proceedings. This conduct of not acting in good faith

is well documented in the Proof of Claim at Exhibit C and is potentially sanctionable by this Court.

**Wherefore,** the Homeowner respectfully requests the Court deny "The Plan Administrator's Third Omnibus Objection to Certain Reclassified Claims (Substantive)" as it relates to Proof of Claim referenced in Schedule 1 at Line 58 (Poladian, Joel) and grant such other and further relief as the Court deems just and proper.

Dated: December 30, 2024
San Clemente, California

By:    <u>(s) Joel Poladian</u>
      Joel Poladian
      Pro Se
      Respondent/Creditor
      420 Camino Vista Verde
      San Clemente, CA 92673
      Email:Joel.poladian@gmail.com
      Telephone: (949) 547-1199

## Certificate of Service

The undersigned hereby certifies that on December 30, 2024, a true and correct copy of the foregoing was mailed via USPS Priority Mail Express to the Clerk of the United States Bankruptcy Court for the District of Delaware at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801 and a copy via email was sent to counsel of the Plan Administrator, Richards, Layton, Finger LLP, at collins@rlf.com, madron@rlf.com, and javorsky@rlf.com.

                                                                                (s) Joel Poladian
                                                                                Joel Poladian
                                                                                Pro Se
                                                                                Homeowner