**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNPOWER CORPORATION, | Case No. 24-11649 (CTG) |
| Wind-Down Debtor. | **Related Docket No. 1544** |

## <u>AMENDED MEMORANDUM OPINION</u>

Once a federal court enters an order, it has the authority to resolve disputes over the meaning of that order. And if a party violates the court's order, the court has the power to enforce its prior order. The Supreme Court said as much in *Travelers* and the Third Circuit underscored that point in *Essar Steel*.[1] Those points are common ground. The question now before the Court, however, is what counts as the "enforcement" or "interpretation" of the prior order. Is there a point at which the connection between the order that is allegedly being enforced, and the actual dispute between the parties, becomes too attenuated to support jurisdiction?

Consider, for example, a bankruptcy case in which, in 2024, the debtor confirmed a plan under which all estate property was vested in a reorganized debtor. What if a dispute arose over whether, in 2017 or 2018, the debtor had stolen a painting from a neighbor. Could the neighbor file a motion in bankruptcy court, in 2025, arguing that the painting was stolen, and therefore never became property of the estate, and thus never vested in the reorganized debtor? Or is such a dispute

---

[1] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *In re Essar Steel Minnesota, LLC*, 47 F.4th 193 (3d Cir. 2022).

about whether the painting was stolen in 2017 or 2018 too distant from any question about the meaning of the plan or confirmation order to bring it within the bankruptcy court's authority to enforce its confirmation order?

The facts of this case are slightly different from that hypothetical. The dispute in this case is about an alleged assignment of the lease of a solar power system rather than the theft of a painting. But the question about the scope of the court's subject-matter jurisdiction is the same. And the answer is that such a dispute is too distant from the plan or confirmation order to be fairly described as one to enforce or interpret the court's order. The Court accordingly dismisses the motion for lack of subject-matter jurisdiction.

### Factual and procedural background

Christine Kosydar leased a solar power system from SunPower Capital.[2] Kosydar contends that the parties entered into the lease in November 2017 and the solar power system was thereafter installed at Kosydar's home in Arizona.

Kosydar argues that SunPower Capital remained the counterparty to the lease up and through the filing of these bankruptcy cases in August 2024. In these bankruptcy cases, the debtors sold substantially all of their assets in a series of asset sales.[3] No one contends, however, that Kosydar's lease was, during the bankruptcy case, the subject of a motion to assume and assign it to the buyer (or anyone else). And the plan in these cases, confirmed in October 2024, and that became effective in

---

[2] Debtor SunPower Capital, LLC is referred to as "SunPower Capital."

[3] *See, e.g.,* D.I. 287, 605, 611, 859, 860, & 861.

November 2024, primarily distributed the proceeds of the sales to creditors. The plan provided that all executory contracts that remained in the estate and were not otherwise assumed under the plan are rejected.[4]

So on Kosydar's view of the world, the debtors have rejected her lease. The debtors' rejection of a lease, of course, excuses the counterparty from its future performance obligations. That would presumably mean, assuming that Kosydar's lease of the solar power system is a true lease, that unless the SunPower plan administrator wanted to come to Arizona to remove Kosydar's solar power system, the result of the bankruptcy would be that Kosydar has obtained the solar power system without being required to make further lease payments.

The plan administrator of the SunPower estate takes a different view.[5] SunPower's position in the bankruptcy case was that its regular practice in the ordinary course of business before the bankruptcy filing was to assign system leases to a separate entity. These separate entities were essentially used as financing vehicles. These entities accordingly borrowed against those leases as a way of raising capital for the enterprise. On the plan administrator's theory (which accords with the telling of events in the debtors' first-day declaration), the assignee of the leases

---

[4] D.I. 872-1 Art. V.A. ("On the Effective Date, except as otherwise provided herein or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code.") The plan became effective in November 2024. D.I. 1058.

[5] Mark Roberts, in his capacity as the plan administrator under the confirmed plan in the above-captioned bankruptcy case, is referred to as the "plan administrator."

was not itself a debtor in these bankruptcy cases.[6]   Instead, it was a non-debtor subsidiary of the debtors.  The plan administrator's position is that the debtors' equity interest in that non-debtor subsidiary was sold to the buyer.  As a result, the plan administrator's position is that the buyer now holds the leases, albeit indirectly through its ownership of the non-debtor subsidiary.[7]

And the buyer, after (for whatever reason) declining to participate in the dispute between Kosydar and the plan administrator, has now belatedly shown up saying that it has documents to prove that it is in fact the indirect owner of the lease.[8]

Kosydar filed a motion to "interpret and enforce" the plan and confirmation order.[9]  She sought an order declaring that her lease "was solely the property of the Debtor on the Effective Date of the Plan in this case," that "[n]o other entity was the lessor of the Lease as of the Effective Date of the Plan," and that the "Lease was rejected by Art. [V] of the Plan as of the Effective Date."[10]  She also seeks an express finding that the order is "binding and effective upon … all parties-in-interest in this case," which would of course include the entities affiliated with the buyer who, on the plan administrator's version of events, would be the counterparty to Kosydar's

---

[6] D.I. 9 ¶ 32.  This declaration has not been admitted into evidence in this contested matter. It is referred to only by way of setting forth the background of the dispute.

[7] D.I. 1552 at 3.

[8] *See* D.I. 1839.  The buyers to which the debtor sold the applicable assets were HA Sunstrong Capital LLC and GF Sunstrong Capital, LLC, to whom the parties refer collectively as "HASI."  The party that ultimately appeared in this bankruptcy case to respond to Kosydar's motion is Helios II Residential Solar Fund, LLC, which is referred to as "Helios," and is apparently affiliated with the buyer.

[9] D.I. 1544.

[10] D.I. 1544-2 ¶ 2.

4

lease.[11]  The plan administrator filed what it described as a "limited objection" to that motion.[12]

Kosydar's motion, after a series of adjournments, was heard at the February 25, 2026 hearing.  It was apparent to the Court at that hearing that there were serious questions about the Court's subject-matter jurisdiction to hear a dispute between two non-debtor entities that had something – but really very little – to do with an order the Court had entered.  Because Kosydar had traveled to Wilmington for the hearing, the Court permitted Kosydar to present her evidentiary case in support of her motion.  Kosydar testified on her own behalf and her counsel moved various documents into evidence without objection.

The evidentiary record is otherwise incomplete.  The plan administrator does not intend to call a witness but sought to move various documents into evidence. Kosydar raised a variety of objections to the introduction of those documents into evidence.  And Helios now seeks to participate in the hearing to present the documents that it claims show that it owns the lease.

Following the hearing, the Court set forth its preliminary observations on the question of subject-matter jurisdiction and directed the parties to submit further briefing on the issue.[13]  That order observed that the Court appreciated that a bankruptcy court always has the jurisdiction "to interpret and enforce its own prior

---

[11] *Id.* ¶ 3.

[12] D.I. 1552.

[13] D.I. 1782.

orders."[14]  It noted, however, that this dispute does not involve any ambiguity at all about the confirmed plan or this Court's confirmation order.  It is perfectly clear that all executory contracts that belonged to the debtors as of the plan's effective date and that were not otherwise addressed in the plan have been rejected.  The question here is about whether Kosydar's contract is such a contract.  That question turns on whether Kosydar's lease was conveyed by the debtors to a non-debtor entity in 2017 or 2018 – long before these bankruptcy cases were filed.[15]

The Court accordingly directed the parties to address the question whether that factual dispute is just too distant from the confirmation order to make Kosydar's motion one that truly seeks to "enforce" the Court's confirmation order.

Thereafter, the parties continued sparring on a host of ancillary matters. Kosydar opposed Helios' effort to participate in the litigation over her motion to enforce the plan.[16]  Kosydar also opposes Helios' motion to seal a declaration filed by Helios that purports to show that Kosydar's lease was assigned in 2018.[17]  In addition,

---

[14] *Travelers*, 557 U.S. at 151.

[15] The buyer now says that the evidence actually suggests that the transfer took place in 2018.  *See* D.I. 1839 at 2.  As further described below, the Court is not making any finding on this issue one way or the other, as the question of subject-matter jurisdiction is necessarily antecedent to the Court's authority to resolve a disputed question of fact.  In any event, the question of when the alleged assignment might have taken place is unrelated to the question the Court is addressing, which is focused on whether there is a sufficient connection between that question and a dispute over the terms of this Court's prior order.

[16] D.I. 1796.  Both Helios and the plan administrator opposed the motion to strike.  D.I. 1818; D.I. 1819.  This Court deferred resolution of that dispute pending this decision with respect to its subject-matter jurisdiction.  D.I. 1822.  Kosydar thereafter amended her motion to strike.  D.I. 1850.  Helios and the plan administrator both oppose that amended motion.  D.I. 1863 & 1864.

[17] D.I. 1853; D.I. 1862.

Kosydar has filed a document that she describes as a motion for an omnibus hearing on all factual issues.[18]  At a status conference held on May 20, 2026, the Court explained to the parties that it viewed its resolution of the question of subject-matter jurisdiction to be a gating question.  The Court accordingly indicated that it would first address that question and thereafter schedule a further status conference to address the various follow-on matters.[19]

## Analysis

### I.    The question of subject-matter jurisdiction must come *before* the question of the assignment of the lease.

Each of the parties has suggested that the Court needs to resolve the question of whether the lease was assigned in order to decide the question of its subject-matter jurisdiction.[20]  It is true that there are times when the question whether the court has subject-matter jurisdiction turns on a question of fact.  For example, as *Krasnov* explains, a federal district court hearing a case that purports to rest on the diversity of citizenship of the parties needs to determine whether the parties are diverse in order to decide whether the court has subject-matter jurisdiction.[21]  And the court

---

[18] D.I. 1870.

[19] May 20, 2026 Hr'g Tr. at 18-19.

[20] *See id.* at 10 (counsel for plan administrator arguing that consideration of Helios' declaration "informs whether or not Your Honor has subject[-]matter jurisdiction."); D.I. 1870 at 2 (Kosydar argues that "it is logically and legally impossible for this Court to determine whether or not it has subject matter jurisdiction without a proper adjudication of *all* the facts on which it relies for that determination").

[21] 28 U.S.C. § 1332; *Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir. 1972) (affirming district court's determination that defendant was citizen of Pennsylvania, as was the plaintiff, and as such that the court lacked diversity jurisdiction).  *See also Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974) (resolving legal question on which subject-matter jurisdiction depended).

has jurisdiction to resolve that factual question, based on the principle that a court always has jurisdiction to decide the question of its own jurisdiction.[22]

This, however, is not such a case.  One has jurisdiction to decide an antecedent factual question where the question of subject-matter jurisdiction to resolve some logically subsequent dispute depends on the answer to that factual question.  Here, there is no dispute other than the question whether the lease had been assigned before the plan became effective.  Unlike in *Krasnov*, this is not a circumstance in which the court's subject-matter jurisdiction over some *other* question depends on the answer to the question whether the lease was assigned.

The Court appreciates that there is a factual dispute between the parties about whether the lease was assigned away from the debtors at some point before the plan became effective.  Indeed, consistent with her position that the question of subject-matter jurisdiction depends on the resolution of the factual dispute, Kosydar devotes much of her response to an extensive recitation of her version of the facts, including what she describes as contradictory positions taken by the plan administrator and Helios about when the alleged assignment took place.

But in order to decide that factual question, there needs to be a basis for subject-matter jurisdiction over the question.  As described below, the only serious candidate for jurisdiction is Kosydar's argument that the determination that the lease was rejected seeks an interpretation or enforcement of the plan.  But that raises

---

[22] *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

the question the Court directed the parties to brief – whether this dispute is in fact one over the construction or enforcement of the plan. If it is not, the Court lacks the authority to address the factual question.[23]

The Court does note that the parties all seem to agree that the question of subject-matter jurisdiction turns on whether the lease was assigned. The plan administrator and Helios argue that the Court lacks subject-matter jurisdiction *because* the lease was assigned prepetition whereas Kosydar argues that those parties should not be able to deprive the Court of its jurisdiction to enforce the plan simply by asserting that the lease was assigned prepetition.[24]

The parties therefore urge the Court to answer that factual question in order to resolve the question of subject-matter jurisdiction. But as much as the Court might like to be helpful, the Court just does not see how the question of subject-matter jurisdiction would turn on the answer to that factual question. The purported basis for subject-matter jurisdiction over this dispute is *not* that the Court once had *in rem* jurisdiction over the lease because it was at one point property of the bankruptcy estate. That statement may or may not be true, but that is not the theory on which subject-matter jurisdiction rests. Rather, the purported basis of subject-matter jurisdiction is that Kosydar's motion claims to be a motion to enforce or interpret the

---

[23] To be clear, if the Court concluded that it did have subject-matter jurisdiction over that factual dispute, it would not do so based on the existing record, in which various evidentiary questions raised by the parties remain unresolved. Rather, it would re-set this matter for an evidentiary hearing after which it would resolve pertinent factual disputes based on the evidence the Court found to be admissible.

[24] D.I. 1833 at 28-29; D.I. 1841 at 2.

plan and/or confirmation order. And the Court's unease with that asserted basis for jurisdiction is that this is not a case in which the parties are bringing the Court conflicting interpretations of the plan or confirmation order that they are asking the Court to resolve. If it were, the Court would readily do so.

Rather, in this case everyone agrees exactly what the plan does. It rejects all executory contracts held by the debtors. The dispute about whether the estate held this particular contract at the time the plan became effective is simply too distant from any question about the meaning of the plan or confirmation order for this action to be one to enforce the plan or confirmation order.

Accordingly, the Court believes it must first engage the legal question that it directed the parties to brief – whether it has subject-matter jurisdiction over the dispute that the parties have put before it.[25]

## II.    Kosydar's argument in favor of subject-matter jurisdiction fails to show that the dispute she seeks to litigate involves an actual dispute over the meaning of the confirmed plan.

Kosydar contends that the Court does have subject-matter jurisdiction over her motion. Perhaps the Court could and should have been clearer in its order directing further briefing. The arguments Kosydar advances fundamentally speak to a point with which the Court agrees – that *if* the motion Kosydar has filed is in fact one to construe, interpret, or enforce the plan or confirmation order, then it is within this Court's subject-matter jurisdiction. The question on which the Court was seeking

---

[25] *See generally Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) ("federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'").

supplemental briefing was whether it was fair to characterize Kosydar's motion as one to construe or enforce the plan when none of the parties contends that there is any ambiguity about the meaning of the plan itself. The only ambiguity is about a question of fact that does not involve any construction or interpretation of the plan language or the confirmation order.

Kosydar's response mostly argues that there is jurisdiction over her action because it is an action that seeks to enforce the plan. But one cannot persuasively demonstrate a proposition by advancing an argument that begins with the premise that the proposition is correct. That is bootstrapping. And at the end of the day, that is why none of Kosydar's points is persuasive.

Her pleading begins with an extensive discussion of the facts, including allegations that the debtors and buyer have taken conflicting positions on the question whether the leases at issue (including hers) were assets held by a debtor in bankruptcy, as opposed to non-debtor subsidiaries.[26] As described above, in light of the Court's conclusion that it lacks subject-matter jurisdiction over this dispute, it makes no finding or determination one way or the other on this issue. All parties' rights on these questions are therefore preserved.

With respect to the question of subject-matter jurisdiction, the Court understands Kosydar to make four substantive points. *First*, she argues that the dispute is a core matter.[27] The Third Circuit's description of the relationship between

---

[26] D.I. 1833 at 4-18.

[27] D.I. 1833 at 18-23.

11

core/non-core and subject-matter jurisdiction in its *Essar Steel* opinion is a useful one. The three principal heads of bankruptcy jurisdiction, set forth in 28 U.S.C. § 1334(b), are matters "arising under" title 11, those "arising in" a bankruptcy case," and matters "related to" the bankruptcy case.[28]   Congress generally expected the categories of "arising under" and "arising in" to be core matters, whereas "related to" are non-core.  The difference is that bankruptcy courts may enter final judgment in core matters, whereas in non-core matters bankruptcy courts are limited to making proposed findings and conclusions that are subject to *de novo* review in the district court.[29]

As described above, if Kosydar's motion is in fact one to enforce the confirmation order, the Court has little trouble with the proposition that it falls within the Court's subject-matter jurisdiction.  Indeed, this Court has made that point in any number of cases, some of which this Court cited in its order directing supplemental briefing and that Kosydar cites back several times in her brief.[30]

It is also true, as Kosydar says, that if this is a motion seeking an interpretation or enforcement of the plan, it is a core matter.  Perhaps that is because an action to enforce a bankruptcy court's prior order can only arise in a bankruptcy case and thus bring the action within the "arising in" jurisdiction.  Alternatively, one might view an action to enforce a prior order as falling within the same jurisdictional

---

[28] *Essar Steel*, 47 F.4th at 197.

[29] *Id.* at 197-198.

[30] *See, e.g.*, D.I. 1833 at 21 (citing *In re First Guaranty Mortgage Corp.*, No. 22-10584, 2023 WL 8940688, at \*3 (Bankr. D. Del. Dec. 27, 2023); *In re TPC Group Inc.*, No. 22-10493, 2023 WL 2168045, at \*4 (Bankr. D. Del. Feb. 22, 2023)).

grant of authority as the order that is being enforced.  In the case of an action to enforce a confirmation order, that would be a matter that "arises under" the Bankruptcy Code – specifically § 1129.  In either event, if Kosydar's motion is in fact one to enforce the confirmation order, it would be a core matter within this Court's subject-matter jurisdiction.

None of this discussion, however, engages with the question whether the motion – which does not involve any dispute about the meaning of the plan or confirmation order itself – is too far removed from the enforcement or interpretation of the order to count as a motion seeking to enforce the plan or confirmation order.  Kosydar's discussion of core/non-core therefore does not persuade this Court that the motion is within the Court's subject-matter jurisdiction.

*Second*, Kosydar argues in the alternative that the matter falls within the related-to jurisdiction.[31]  Here, the argument is that the "related to" jurisdiction, on a post-confirmation basis, includes matters that have a "close nexus" to the plan.  And Kosydar asserts that motion is one to enforce the plan, thus it would fit within the "related to" jurisdiction.

The problem with this argument, again, is that it is question begging.  It is true that post-confirmation, the "related to" jurisdiction narrows from any dispute with a conceivable effect on the bankruptcy estate to those that have a "close nexus" to the confirmed plan.[32]  Kosydar argues that this matter has such a close nexus

---

[31] D.I. 1833 at 23, 30-33

[32] *In re Resorts International, Inc.*, 372 F.3d 154, 166-68 (3d Cir. 2004).

because it is a dispute over the meaning of the plan.  But *that* is the question on which the Court was asking for help in the first place.

*Third*, Kosydar argues that if the Court had subject-matter jurisdiction at the time the motion was filed, it cannot be defeated by virtue of subsequent events.[33] That point is true, as the Supreme Court's decision in *Grupo Dataflux* stands firmly for that proposition.[34]  But the point does little to help Kosydar's cause, again because the argument assumes its conclusion – that there was subject-matter jurisdiction over this motion when it was first filed.

*Finally*, Kosydar argues that plan's retention of jurisdiction provisions cover this matter.[35]   The provisions Kosydar cites do provide that the Court retains jurisdiction to resolve disputes over the meaning of the plan.  But that again does nothing to move the ball on whether this dispute is in fact one over the meaning of the plan.  For the reasons set forth above (and addressed further below), this dispute is too disconnected from any question about the meaning of the plan or confirmation order to fit within the jurisdiction on the ground that the motion seeks to enforce the plan or confirmation order.

### III.    *Travelers* and *Lazy Days* **explain why this dispute is outside the scope of the Court's subject-matter jurisdiction.**

---

[33] D.I. 1833 at 28-30.

[34] *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.") (internal quotation and citation omitted).

[35] D.I. 1833 at 33-35.

14

The case that most clearly stands for the proposition that a court may enforce its prior orders, the Supreme Court's decision in *Travelers*, also explains why this case is beyond the scope of what is authorized by that principle. To perhaps oversimplify, in 1986, when it confirmed the plan of reorganization in the *Johns Manville* bankruptcy case, the U.S. Bankruptcy Court for the Southern District of New York entered a broad injunction against the assertion of asbestos-related claims against Travelers, an insurer of Johns-Manville that resolved its insurance coverage in connection with the bankruptcy case.

Thereafter, Travelers was sued in what were described as "common law direct actions." In these cases, the theory of Travelers' liability was not its insurance policies under which it insured Manville's liabilities. Rather, the theory was that Travelers owed some sort of direct duty to the victims to protect them from the harms associated with asbestos.

In 2002, Travelers took the position that the 1986 injunction was written broadly enough to protect it from those direct-action lawsuits. After a mediation and a settlement under which Travelers paid $400 million to settle these claims, the bankruptcy court found that these lawsuits were covered by the original injunction.[36] Various parties appealed, and in a 2004 opinion, the Second Circuit reversed the district court opinion that affirmed the bankruptcy court's approval of the 2002 settlement.

---

[36] The question why Travelers would have paid an additional $400 million in 2002 to resolve claims that had been enjoined back in 1986 is not addressed in the Supreme Court's opinion.

The Second Circuit's reasoning was that the 2002 injunction entered by the bankruptcy court was not, in fact, an enforcement or construction of the 1986 order. Rather, the Second Circuit found that the common-law liability claims raised new and different issues that were not the subject of the 1986 injunction, and as a result that the bankruptcy court had no authority to enter a new and different injunction in 2002.

The Supreme Court reversed, concluding that the 2002 injunction was in fact a clarification of the 1986 injunction. Because there was an ambiguity in the 1986 injunction that needed to be addressed, the Supreme Court found that the bankruptcy court in fact did have jurisdiction to enter the 2002 injunction.

It is implicit in the Supreme Court's reasoning, then, that the jurisdiction of the bankruptcy court in 2002 *depended* on there being ambiguity in the 1986 injunction that it needed to clarify. If the actions of the bankruptcy court in 2002 were not in fact taken to construe or enforce the 1986 injunction, they would have been outside the court's subject-matter jurisdiction.[37]

The Third Circuit's decision in *Lazy Days' RV Center* is to the same effect. There, the bankruptcy court reopened a closed case when a dispute arose over the meaning of a settlement agreement that had been incorporated into a plan that the bankruptcy court had confirmed.[38] In explaining why it was appropriate for the bankruptcy court to enter an order clarifying its original confirmation order, the

---

[37] *Travelers*, 557 U.S. at 151-154.

[38] *In re Lazy Days' RV Center Inc.*, 724 F.3d 418 (3d Cir. 2013).

16

Third Circuit observed that the "issue was properly to be decided by the Bankruptcy Court after reopening because the bankruptcy court was well suited to provide the best interpretation of its own order."[39]  The point, however, was that the question the parties brought to the bankruptcy court was "a dispute regarding the Settlement Agreement it had previously confirmed."[40]

That is the critical difference between the motion Kosydar is bringing here and the ones like the question in *Lazy Days* and the question that Travelers brought in the bankruptcy court for the Southern District of New York in 2002.  In both *Travelers* and *Lazy Days*, there was language in the bankruptcy court's order that was either ambiguous or needed to be enforced.  The motions filed in those cases sought to construe and enforce the bankruptcy courts' orders.  Here, everyone agrees what this Court's confirmation order does.  It rejects every executory contract held by the debtors as of the effective date.  The relationship between that order and the factual dispute that Kosydar's motion raises – the question whether the debtors had actually assigned the lease in 2017 or 2018 such that it never came into the bankruptcy estate and therefore was never rejected – is just too far removed from any question about the meaning of the plan or confirmation order for the dispute actually to be one over the meaning of the plan or confirmation order.  For that reason, this dispute – where the only parties with an economic stake are non-debtors and in which no party is asking this Court to clarify or enforce any provision of the plan or confirmation order

---

[39] *Id.* at 423 (internal citations and quotations omitted).

[40] *Id.*

– falls outside the scope of the Court's subject-matter jurisdiction.  Kosydar's motion will accordingly be dismissed on that basis.

## Conclusion

For the foregoing reasons, Kosydar's motion will be dismissed for lack of subject-matter jurisdiction.  The Court will enter a separate order so providing.  The parties are further directed to meet and confer regarding the various follow-on matters described above.  If the parties are unable to settle an agreed order providing for the disposition of those matters, they are directed to contact chambers to set a status conference in which the Court will resolve any such remaining issues.

Dated: June 4, 2026

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE

18