CALIFORNIA
DEPARTMENT OF JUSTICE

**Rob Bonta**
*Attorney General*

300 SOUTH SPRING STREET, SUITE 1702
LOS ANGELES, CA 90013-1230

Public: (213) 269-6000
Telephone: (213) 269-6240
Facsimile: (916) 731-2144
E-Mail: Hutchison.Meltzer@doj.ca.gov

October 27, 2026

VIA ECF AND EMAIL

The Honorable Craig T. Goldblatt
United States Bankruptcy Court - District of Delaware
824 N Market Street #500
Wilmington, DE 19801

RE: Discovery Dispute (§ 502 Claim Objections), In Re SunPower Corporation
United States Bankruptcy Court - Delaware, District of Delaware
Case No. 24-11649-CTG

Dear Judge Goldblatt:

State tax creditor, California Department of Tax and Fee Administration (CDTFA), submits this unilateral letter regarding whether the Chapter 11 Plan Administrator for the Wind-Down Debtor (Plan Administrator) should be required to provide certain discovery and allow CDTFA access to certain relevant and necessary documents and information, and the currently scheduled evidentiary hearing should be continued to allow this process to be completed.

An evidentiary hearing on a tax audit is scheduled for November 3, 2026. Taxpayers have an ongoing duty to preserve business records, regardless of a litigation hold. Cal. Rev. & Tax. Code § 7053. The CDTFA is legally entitled to record production, without the need for costly discovery and attorney's fees. Cal. Rev. & Tax. Code § 7054. That business records are relevant to a tax audit and needed for the CDTFA's defense presentation is undisputed. The CDTFA cannot run tax calculations and extrapolation from inadmissible self-serving testimony. In re Renovizors, Inc., 214 B.R. 232, 238 (Bankr. N.D. Cal. 1997); see also F.R.E. 1002 (Requirement of the Original).

In September of 2024, the CDTFA requested business records to calculate its tax audit and was informed that Alvarez & Marsal (A&M) would handle the matter. See Exhibit A. However, there was no record production. In April 2025, the Plan Administrator initiated § 502 claim objections (Objection) against the CDTFA.

At the time the Objection was filed (and prior, during the audit), Sunpower claimed that limited documents related to the tax assessment were available. [D.I. 1824, Paragraph 34]. The

assertion at the time was that this was due to the filing of the bankruptcy case and the loss of employees in the tax department. [*Id.*]

Due to the expedited nature of this contested matter, the parties agreed to work cooperatively and voluntarily produce all relevant available documents and witnesses for depositions. This was memorialized in multiple scheduling orders lodged with and signed by the Court.

The parties produced what were represented as all available documents and conducted the depositions of the identified witnesses. The Plan Administrator's primary witnesses were fact witness Archibald Gabriel of A&M, and expert witness James Levinson. [D,I. 1956]. CDTFA's witnesses are CDTFA audit employees Alan Liang and William Kimsey.

During his deposition, Mr. Gabriel testified that relevant documents were not available because relevant tax records were not backed up from the cloud during SunPower's wind-down. [D,I. 2017] Exhibit C.

On September 22, 2026, the Plan Administrator belatedly identified new witnesses, not previously disclosed, in his Trial Brief, which summarized their anticipated testimony. These witnesses are former Sunpower employees Drew Johnson and William Groen. [D.I. 2010]. The Plan Administrator's counsel agreed to produce the witnesses for deposition and extend the date for CDTFA's response brief to allow the discovery to be completed. CDTFA, in an attempt to keep the trial on track despite this late disclosure, took their depositions a few days later on September 29, 2026.

At the deposition of William Groen on September 29, 2026, Mr. Groen, a former director of finance for Sunpower, testified that he had access to extensive documents and information directly relevant to this matter that had not been produced, including, but not limited to:

- The General Ledger,
- Trial Balances,
- Sales Journals,
- Purchase Journals,
- Cost Accounting Records,
- Contract files,
- Purchase and sales invoices
- Records and documents associated with transactions with Maxeon Solar Technologies.
- Intercompany sale transfer from Corporation to Systems of fixtures.

See Exhibit B.

As this information is relevant and necessary for a complete and accurate assessment of the taxes in dispute, CDTFA has been requesting this information since the audit began four years ago. Prior to this testimony, based on representations to CDTFA and the Court, CDTFA understood that limited documents and information related to the audit years at issue were available.

After the deposition, on October 1, 2026, CDFTA sent a meet and confer communication to the Plan Administrator's counsel expressing its concerns and requesting that the Plan Administrator provide CDTFA access to the relevant documents and information in the possession or control of Mr. Groen or any other person; and (2) agree to continue the evidentiary hearing to allow CDTFA to obtain, review, and incorporate this information into its analysis.

In response, the Plan Adminstrator's counsel asserted that, prior to the testimony, they did not know that Mr. Groen had any such documents and information in his possession. Counsel further asserted that, despite the testimony under penalty of perjury, Mr. Groen did not actually have access to all the documents he testified about possessing and that many of the documents were no longer available because he only had links to Sunpower's cloud server, which is no longer available because the Sunpower estate decided to reject and terminate the cloud contract effective December 1, 2026 (which, it should be noted, is approximately four months after the extended portion of the audit began.) The Plan Administrator agreed to provide all available information and documents in Mr. Groen's possession, and that Mr. Groen would be made available for another deposition regarding these issues. The second deposition was scheduled for October 14, 2026.

Prior to the second deposition, certain limited and edited documents were produced. The Plan Administrator's counsel asserted these were all the potentially relevant documents Mr. Groen possessed.

However, at Mr. Groen's second deposition on October 14, 2026, he testified that he had access to further documents that had not been produced. Counsel refused to let him testify as to what documents he was asked to look for on the basis of privilege as he is a paid consultant to the estate for the purpose of this litigation, as well as the TotalEnergies litigation, C.A. No. 2023-0136-MTZ (Del. Ch.). Nevertheless, Mr. Groen testified that he was not asked to search for Maxeon Solar Technologies transaction related documents, among others. See Exhibit C. This was surprising given that these documents had been specifically requested prior to the deposition and it was represented that all available potentially relevant documents had been produced. It is unclear what, if any of the specific categories of documents CDTFA identified he had been asked to search for. Mr. Groen generally testified that he searched for documents that, in his judgment, "seemed salient." See Exhibit C.

After Mr. Groen's deposition, on or about October 15, 2026, a few additional edited documents were produced. Counsel indicated that only easily accessible documents in the possession of Mr. Groen and A&M would be produced, implying that there were potentially additional documents that could be accessed, not only in Mr. Groen's possession, but also

A&M's, but would not be produced. This is contrary to prior representations and assurances that all potentially relevant documents that were accessible would be provided.

This is the first time CDTFA's counsel learned that there may be further relevant documents and information in the possession of not only Mr. Groen, but also A&M.

On October 20, 2026, in response to CDTFA's follow-up request, counsel further indicated that no further Maxeon manufacturing-related transaction related documents would be produced.

On October 21, 2026, as it appears that all potentially relevant documents have not been produced despite CDTFA's efforts to informally resolve the issue, CDTFA sent another meet and confer communication to the Plan Administrator's counsel. Because there appears to be further relevant documents that have not been produced, and these documents are necessary for a complete and accurate analysis, CDTFA again requested that the Plan Administrator agree to: (1) provide CDTFA access to the relevant documents and information in the possession or control of Mr. Groen, A&M, or any other person; and (2) continue the evidentiary hearing to allow CDTFA to obtain, review, and incorporate any relevant information into its analysis.

On October 22, 2026, counsel met and conferred by Zoom, and the Plan Administrator's counsel sent a follow-up written response. The Plan Administrator refused to agree to provide CDTFA access to any additional documents or information in the possession of Mr. Groen or A&M, or to continue the evidentiary hearing to allow CDTFA to obtain such access.

What categories of documents Mr. Groen was asked to search for has still not been disclosed, and the Plan administrator refuses to agree to any further investigation or discovery. The Plan Administrator's position also now appears to be that the previously undisclosed documents and information in the possession and control of A&M will not be produced because it would be too burdensome and expensive to produce those documents. With respect to the Maxeon manufacturing company's sales transaction specifically, the Plan Administrator's position now appears to be that the documents do not need to be produced, because they believe they will prevail on their legal arguments regarding the impact on the litigation of those documents, the information does not need to be produced. This is not a valid basis to refuse to produce documents and information. The Plan Administrator again refused to agree to continue the evidentiary hearing to allow CDFTA to obtain access to the relevant documents and information.

At his deposition, Mr. Groen testified that there were $50 million in assets sold to Maxeon during the pre-petition tax audit period. See Exhibit B. This sale of these assets was not reflected in Sunpower's tax returns. Since learning that the Maxeon transaction may have involved a substantial sale of taxable assets through the deposition testimony of Mr. Groen, CDTFA has been attempting to obtain relevant information and documents from third parties, including Maxeon. As discussed further in CDTFA's Trial Brief, given this new information, the CDTFA would need to conduct an in-depth analysis of the details of fabrication, pricing, and

overhead for the panel transactions among manufacturing company Maxeon, and Systems/Corporation and their intercompany structure, as well as the pricing transactions with third party Waaree, Aptos, REC, and LG vendors. This new information would be compared with the reporting in the Taxpayers' sales tax returns. To date, CDTFA has been able to obtain certain documents showing that substantial taxable transactions have occurred in California, however, CDTFA requires additional time to obtain the Maxeon records from Maxeon, Mr. Groen, and A&M, and well as other relevant documents and information.

CDTFA has made every effort to resolve these issues consensually and cooperatively. In this expedited proceeding, the parties agreed to voluntarily produce all potentially relevant documents and information that they had access to. It has been represented to CDTFA at multiple stages that all potentially relevant documents had been produced. However, during the discovery process, it has become apparent that there are additional documents available that are relevant and necessary for a fair and complete tax assessment in the possession of the estate's consultants Mr. Groen and A&M, as well as others. CDTFA's goal is to make an accurate tax assessment based on all available relevant documents and information, regardless of the outcome. The tax assessment should be based on all available records and information.

Accordingly, the evidentiary hearing should be continued and CDTFA should be allowed to obtain access to all available records, including access to all potentially relevant documents and information in the possession or control of Mr. Groen, A&M, or any other person.

The CDTFA respectfully requests that the Court convene a status conference regarding scheduling.

Sincerely,

/s/ HUTCHISON B. MELTZER
Deputy Attorney General

For ROB BONTA
Attorney General

Cc: Jason Madron, Esq.
Marty Dakessian, Esq.
Benjamin Lee, Esq

# EXHIBIT A

**From:** Huh, Joan
**To:** Hutchison Meltzer
**Subject:** FW: Audit Status
**Date:** Tuesday, September 22, 2026 4:21:00 PM

Joan S. Huh
Attorney III
**CA Dept. of Tax and Fee Administration**
Legal Division/Litigation Bureau
651 Bannon Street, Suite 100, MIC: 82, Sacramento, CA 95811
(916) 616-7978

CONFIDENTIALITY NOTICE: This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, then your reading, disseminating, copying, or distributing this email or its contents is strictly prohibited. If you received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications cannot be guaranteed to be secure or error-free since the information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. We do not accept responsibility for any errors or omissions present in this email or any attachment as a result of email transmission.

---

**From:** Jeanne Nguyen <Jeanne.Nguyen@sunpower.com>
**Sent:** Tuesday, October 29, 2024 8:31 PM
**To:** Liang, Alan <Alan.Liang@cdtfa.ca.gov>; Kristal Golubski <Kristal.Golubski@sunpower.com>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>
**Subject:** RE: [External] RE: Audit Status

Thank you Alan for your patience. We will connect with A&M.

---

**From:** Liang, Alan <Alan.Liang@cdtfa.ca.gov>
**Sent:** Tuesday, October 29, 2024 3:20 PM
**To:** Kristal Golubski <Kristal.Golubski@sunpowercorp.com>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>; Jeanne Nguyen <Jeanne.Nguyen@sunpowercorp.com>
**Subject:** [EXT] RE: [External] RE: Audit Status

**External Email -** Use caution when responding, clicking, and/or downloading attachments.

---

Hi Jeanne,

I understand the company is in the midst of difficult time. Per Kristal's email, we should hear from Alverez and Marsal by last week. However, we still have not hear from them as of today. Please

follow up with Alverez & Marsal and provide us an update.

Thanks,

Alan

---

**From:** Kristal Golubski <Kristal.Golubski@sunpower.com>
**Sent:** Wednesday, October 16, 2024 3:18 PM
**To:** Liang, Alan <Alan.Liang@cdtfa.ca.gov>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>; Jeanne Nguyen <Jeanne.Nguyen@sunpower.com>
**Subject:** RE: [External] RE: Audit Status

Hi Alan,

As you can imagine, we're in the midst of a lot of transition items. I will no longer be supporting the audit as my time with SunPower has come to an end.

Over the past couple of weeks, management has recommended that I transition this audit to the tax team from the firm, Alvarez and Marsal. At some point by the end of next week, I expect that they will be reaching out to you directly to discuss next steps. They already have your contact info and all the additional requests that you made on 09/25. I will also share your urgency as mentioned below.

Thanks,

Kristal

---

**From:** Liang, Alan <Alan.Liang@cdtfa.ca.gov>
**Sent:** Wednesday, October 16, 2024 5:49 PM
**To:** Kristal Golubski <Kristal.Golubski@sunpowercorp.com>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>; Jeanne Nguyen <Jeanne.Nguyen@sunpowercorp.com>
**Subject:** [EXT] RE: [External] RE: Audit Status

**External Email -** Use caution when responding, clicking, and/or downloading attachments.

---

Hi Kristal/Jeanne,

You still have not replied to my emails as of today. It is very important that you contact us so that we can discuss the audit status. If we do not hear from you by 10/25/2024, we will submit the audit based the audit findings from the original audit period and estimate the potential liability for the extended period. In addition, in order for us to recommend a refund of the over-payments found in the audit, a claim for refund must be filed. A claim for refund has not been filed yet.

Thanks,

Alan

---

**From:** Liang, Alan
**Sent:** Friday, October 11, 2024 10:26 AM
**To:** Kristal Golubski <Kristal.Golubski@sunpower.com>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>; Jeanne Nguyen <Jeanne.Nguyen@sunpower.com>
**Subject:** RE: [External] RE: Audit Status

Hi Kristal/Jeanne,

I still have not hear from you in regarding to my request in my email dated 9/25. As this a very high priority, please provide us an update and your availability to discuss.

Thanks,

Alan

---

**From:** Liang, Alan
**Sent:** Wednesday, September 25, 2024 5:28 PM
**To:** Kristal Golubski <Kristal.Golubski@sunpower.com>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>; Jeanne Nguyen <Jeanne.Nguyen@sunpower.com>
**Subject:** RE: [External] RE: Audit Status

Hi Kristal,

Thanks for the update. Nice to meet you Jeanne!

Thanks for your willingness to assist us to complete the audits. I understand that there is very limited resources due to the bankruptcy filing. The following is what I need in order to complete the audits:

1. SPC – The original audit period is 10/1/2016 to 12/31/2020(extend to 6/30/2024)
    - Exempt Sales: Prior audit % of error was used. We will need the sales from 1/1/2021 to 6/30/2024
    - Test of Fixed Assets: A stat sampling test was conducted. We can project to errors from the test period to the extended periods. We need the fixed assets additions from 1/1/2021 to 6/30/2024.
    - Tax reconciliation: We need the Sabrix report from 1/1/2021 to 6/30/2024.
2. SPCS – The audit has not been started. The audit period is from 10/1/2015 to 6/30/2024
    - Sabrix report from 1/1/2021 to 6/30/2024.
    - I need to have a discussion in regarding to the System operation. My understanding is that System is mainly a contractor involving residential home and reporting cost of materials and fixture. I plan to review a few quarters to make sure use tax was reported on the cost correctly.

I would like to set up a conference call to go over the above items in more detail . Please let me know your availability this week or next week.

Thanks,

Alan

---

**From:** Kristal Golubski <Kristal.Golubski@sunpower.com>
**Sent:** Thursday, September 19, 2024 9:33 AM
**To:** Liang, Alan <Alan.Liang@cdtfa.ca.gov>
**Cc:** Li, Cheng "Cody" <Cheng.Li@cdtfa.ca.gov>; Jeanne Nguyen <Jeanne.Nguyen@sunpower.com>
**Subject:** RE: [External] RE: Audit Status

Hi Alan,

First, I'd like to introduce you to Jeanne Nguyen who is SunPower's VP, Corporate Controller. After my employment with SunPower ends shortly, she would be your main contact. I have discussed your request for the additional audit years for both SPC and SPCS with her. We certainly understand that this is a high priority item for you.

As mentioned in our last conversation, unfortunately SunPower has issued layoff notices across the entire company due in part to the bankruptcy filing. Based on the amount of time and effort spent on the current SPC audit we were previously working through, we both believe it would not be possible to finish all the newly added periods on this audit by the time my employment ends. However, we don't know for certain until we see a list of all the information and documents you are requesting for the new audit periods. Therefore, please provide your updated request list for all the new periods along with information needed. Once we have received your list, we can work internally to prioritize what we can provide. Please understand that there are many high priority items within the company now.

Thanks,

Kristal

# EXHIBIT B

disputes that were being litigated between TotalEnergies, which was our parent company, which also bought the commercial and industrial business at SunPower.

So I was slated to be deposed on that because I was the transaction lead on that transaction. Subsequent to that, my involvement was pretty light. I was signing contracts or so contracts that I would see signatory on, so I would sign them on behalf of Total.

It was a process that was done while we were at SunPower, too, in the, kind of, closing period of the sale of the commercial direct business.

Q. So I believe you said you had the general -- you had access to the general ledger. Do you know for what period?

A. The entire time I was at SunPower.

Q. And what about trial balances?

A. Yeah. I would get them sent to me every time we did a close. So I was part of, like, the distribution was for that.

Q. And you still have those?

A. Yes.

Q. Saber's reports?

A. Those were used by people on my team. I wouldn't use them myself.

Q. Is that the same for Vertex reports?
A. Yes.
Q. What about sales journals?
A. Yeah. I had access to them. It was not something I would typically do manually myself, but a lot of the folks in the Philippines and such were responsible for day-to-day operations and stuff like that.
Q. Do you have access to them now?
A. I can look. I'm sure I have at least some of them. I wouldn't say I know I have a full complete population of them.
Q. What about purchase journals?
A. Same. Same answer as before.
Q. Including for access now?
A. Yeah.
Q. Grabbing access now?
A. My access is a little -- I mean, my SunPower computer is five-years-old at this point, and not everything works perfectly. But I still do have a lot of the information that was on that computer, and probably 10,000 e-mails or so.
Q. What about purchase journals?
A. I can't -- I can't say specifically "yes" or "no." I'm assuming that there would be purchase

journals on my SunPower computer.

Q. Cost-accounting records?

A. Again, that stuff would be rolled up on my team, so I would definitely have access to them. I have those files.

Q. What about purchase and sale invoices?

A. Yup.

Q. Same answer?

A. Yeah. I mean, there's a lot of stuff that -- I mean, I had pretty broad access to, you know, our financial books and records, but not everything was, kind of, part of my, like, day-to-day purview. I was running a large team. I was running a lot of operations, and things of that nature.

Q. And then what about records and documents associated with this -- the Maxeon solar record related to transactions with Maxeon?

A. I have a lot. So I worked on the spin-off of the Maxeon transaction. I did the financing for that, as well as I also completed a solvency analysis with third-party consultants as part of that deal. So I worked a lot on the Maxeon split.

As well as after the Maxeon split, we sold off several non-court assets. There was other kind of related transactions after the initial spinoff of

Maxeon, one of which was nine years. So the domestic employees that could not be moved to Maxeon because they worked in the U.S.

And because the new joint venture with Maxeon had a Chinese partner, the -- us employees were required to stay in the U.S., and they weren't part of the deal. But one thing my accounting team did was they charged the costs, including things like fixed assets to, Maxeon, and they reimbursed us.

There was, like, a $40 million a year budget where if you pay for it by SunPower, and then Maxeon would reimburse us, and there'd be reconciliations between my accounting team and the Maxeon accounting team.

And then sometime, I believe, in 2023, we did what we called a grand bargain, where a lot of those assets, once there was -- there was a lock-up period that expired -- we sold those assets to Maxeon, which included the R&D lab in San Jose. It was about a $50 million deal.

So with that, the San Jose location and the R&D lab as well as the 90-or-so employees all formally went to Maxeon.

Q. So after the -- I think you called it "the spin-off of Maxeon," did SunPower retain any interest in

# EXHIBIT C

They were already paying for the ongoing costs of that facility and then assumed those costs on a go-forward basis.

So I don't know if they paid us -- I don't believe they paid us out for the fixed assets. They may have paid the depreciated costs, which was less than the original cost. But it's been -- it's been a while; so I don't remember all of the nuances of that deal.

Q. Do you have a schedule of the assets transferred to Maxeon?

A. I do not know.

Q. You don't know if you have it?

A. That is correct.

Q. So you haven't looked for it yet?

A. No, because it wasn't listed as salient to this. So I don't know.

Q. So you previously testified there were periods you could not purchase inventory from Maxeon due to them tearing up the supply contract.

A. Yes.

Q. Why did they tear up the supply contract?

A. There was disputes over the economics.

Q. What kind of disputes?

A. I wasn't part of the negotiations around, you know, the price; but there was just a bid ask between

you -- are you familiar with what documents were produced to us?

A. If they're the documents that I have -- that I found on my computer, then, yes, they would be one in the same.

Q. Okay. Well, that's what was represented to us. I'm asking you about the documents that were produced to us.

A. Yes.

Q. Did that include the Excel reports, even if you believe they were incomplete?

A. Yes.

Q. What else does it include?

A. It includes some management-level information, some accounting policy documents, you know, a small sample of, you know, purchase orders that I had which, you know, is incomplete. So, you know, things of that nature.

Things that seemed salient to the items that were asked for, you know, what I determined is I don't have all those. But, you know, within the emails and files that live on my SunPower computer, you know, some of that data exists. And, you know, I took a look to see what was, you know, potentially relevant based on kind of the scope I was given. Like, you know, do you

have SABREX reports, do you have purchase orders.

Q. So you said what "seemed salient." So you determined for yourself what seemed salient; correct?

A. Yeah, based on the list that was provided to me. So it said look for purchase orders; so I went on my search bar and looked for purchase orders.

Q. And how did you search?

A. So I did, like, you know, a text-based search. Like, you know, purchase order, P.O. You know, went through, like, the folders that I had, you know, received information.

Q. So are you saying -- are you describing the search you did on your hard drive, what's on your hard drive?

A. Yeah.

Q. And did you also search your emails?

A. Yeah. Although, the Outlook no longer works on my SunPower computer; so I can't access my actual Outlook. But some emails -- I would say maybe about, you know, a percentage of my emails were saved.

So I can search through a hard drive that has saved copies of emails, but I can no longer access my SunPower Outlook.

Q. So you searched the emails that were saved on your hard drive?

## CERTIFICATE OF SERVICE

Case Name: **In Re SunPower Corporation** Case No. **24-11649-CTG**

I hereby certify that on October 27, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**LETTER TO HONORABLE CRAIG T. GOLDBLATT RE DISCOVERY DISPUTE**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 27, 2026, at Los Angeles, California.

| Kevin Carballo | */s/ Kevin Carballo* |
|---|---|
| Declarant for eFiling | Signature |

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. My business address is: 300 South Spring Street, Suite 1702, Los Angeles, CA 90013-1230. My electronic service address is Kevin.Carballo@doj.ca.gov. I further certify that some of the participants in the case are not registered CM/ECF users.

On October 27, 2026, I served the attached **LETTER TO HONORABLE CRAIG T. GOLDBLATT RE DISCOVERY DISPUTE** by transmitting a true copy via electronic mail, addressed as follows:

Courtroom Deputy:
**Email:**
Nickita_Barksdale@deb.uscourts.gov

Counsel:
**Email:** Madron@RLF.com
**Email:** Marty@dakessianlaw.com
**Email:** Benjamin@dakessianlaw.com

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 27, 2026, at Los Angeles, California.

| Kevin Carballo | */s/ Kevin Carballo* |
|---|---|
| Declarant for Service via Electronic Mail | Signature |

LA2026801058
68825866.docx